**Exhibit C**

**Unofficial Copy of DOS Cable on Public Charge**

***WARNING:  This is an UNOFFICIAL copy of the DOS Cable allegedly issued on or about November 6, 2025 on Visa Ineligibility on the Grounds of Public Charge.  The existence of the cable was reported by the*** [***press***] ***and AILA has obtained an unofficial and unverified copy.***

Subject:

SECSTATE WASHDC

ALL DIPLOMATIC AND

CONSULAR

POSTS COLLECTIVE Routine

13526

CMGT, CVIS

SENSITIVE

- 25 STATE 5914
- 25 STATE 59756

Visas: Properly Implementing the INA 212(a)(4) Public Charge Ineligibility

**SUMMARY**

1. (U) Aliens subject to the INA 212(a)(4) public charge ground of ineligibility must demonstrate that they are not likely to become a public charge at any time after admission to the United States. Consular officers need to keep in mind that the public charge ineligibility applies to both applicants for nonimmigrant visas and immigrant visas (IV applicants will generally need to provide considerably more evidence to overcome it). This guidance reminds consular officers to conduct a comprehensive and thorough INA 212(a)(4). CA's Visa Office (VO) will update 9 FAM to reflect this guidance and carry out webinars for the […]

 The Department is reviewing other policies and procedures related to public charge ineligibility, as well as other INA 212(a) ineligibilities, and will continue to update the field as these evolve.

**WHY ARE WE DOING THIS?**

2. (U) Self-sufficiency has been a longstanding principle of U.S. immigration policy, and the public charge ground of inadmissibility has been a part of our immigration law for more than 100 years. The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA) states that it is national policy that "aliens within the Nation's borders not depend on public resources to meet their needs." E.O. 14218, Ending Taxpayer Subsidization of Open Borders, seeks to ensure, among other things, that no taxpayer-funded benefits go to unqualified aliens.

3. (U) Robust systems to ensure that unqualified aliens do not receive public resources still are being developed and implemented, however. Further, removing foreign nationals from the United States, even when they have clearly violated our laws, is a lengthy, expensive, and difficult process.

Therefore, we must be vigilant during the visa issuance process, before aliens are admitted to the United States. This includes ensuring that applicants subject to INA 212(a)(4) are not likely to become a public charge at any time after admission.

**WHICH CASES ARE COVERED?**

4. (U) All visa applicants, except those in the specific categories described in 9 FAM 302.8-2(B)(6), are subject to the public charge ground of ineligibility.

5. (U) The public charge ground of ineligibility is most commonly considered in the IV context. However, the vast majority of NIV applicants also are subject to INA 212(a)(4), including those in classifications not subject to INA 214(b).
You must assess the public charge ineligibility each time a nonimmigrant applies for an NIV, as his circumstances may change. Even if inconsistencies or potentially derogatory information you uncover do not lead to an INA 212(al4)ineligibility, you must consider whether they undermine the applicants credibility or suggest that the applicant will not respect the terms of his admission to the United States.

6. (U) INA 214(b) requires an NIV applicant to show credibility that all activities in which he is expected to engage in while in the United States are consistent with the specific requirements of his NIV classification. That is, if you are not completely satisfied (1) that the applicant is credible and (2) that, during his time in the United States, the applicant will engage only in activities consistent with his nonimmigrant status, you should refuse the visa under INA 214(b). If any NIV applicant cannot overcome INA 214(b), you should refuse the visa under INA 214(b) and need not pursue a possible INA 212(a)(4) ineligibility.

**WHAT DOES "PUBLIC CHARGE" MEAN?**

7. (U) INA 212(a)(4) render ineligible any visa applicant who in the opinion of the

consular officer is likely at any time to become a public charge. Under current DHS regulation, this means the alien is "likely at any time to become primarily dependent on the government for subsistence, as demonstrated by either receipt of public cash assistance for income maintenance or long-term institutionalized care at government expense."

8. (U) Under current regulation, "public cash assistance for income maintenance" means the following:

- (U) Supplemental Security Income

SSI) is a U.S. government program available to people who have low or no incomes; few or no resources; and a disability, blindness, or are age 65 or older. For SSI purposes, adults are considered "disabled" if they have a disability that results in the inability to do "substantial gainful activity" or work for a year or more; people over 6not need a disability to qualify. Additional information on SSI eligibility is available at http://ssa.gov/ssi/eligibility [ssa.gov].

- (U) Temporary Assistance for Needy Families (TANF) is a federally-funded program administered by states, territories, and tribal governments that provides a variety of benefits to low-income families with children.
  These vary by location, but can include cash, food, and child care assistance, as well as employment services.
- (U) General Assistance, also known as "state aid," "general public assistance," or "cash aid," refers to a variety of state and local programs that aim to help low-income people, particularly those who do not qualify for other types of cash assistance. The names of these programs, their eligibility criteria, and the benefits they provide, vary across states and within states.

9. (U) Under current regulation, "long-term institutionalization at government expense" means government assistance for long-term institutionalization, including in a nursing facility or mental health institution. It does not include imprisonment for conviction of a crime or institutionalization for short periods for rehabilitation purposes.

**WHERE DO I LOOK?**

10. (U) To determine whether an applicant is likely to become a public charge, you must examine all aspects of the case, including but not limited to the petition, if applicable; the visa application and any supporting evidence; information you gather during the interview; the medical report, if applicable; the affidavit of support, if applicable; and any information uncovered in the course of screening and vetting (refs A and B).

AILA Doc. No. 25111400. (Posted 11/14/25)

11. (U) INA 212(a)(4) says the public charge determination is "in the opinion of the consular officer" and, under INA 291, the burden of proof is on the applicant to establish eligibility to the satisfaction of the consular officer. You may request that the applicant provide any information, including appropriate documentation, that you reasonably believe is necessary to help you determine that an applicant is not likely to become a public charge at any time. The burden of proof never shifts onto the adjudicator at any point during the adjudication.

**WHAT AM I LOOKING FOR?**

12. (U) There is no "bright-line" test in making a public charge ineligibility determination. No one factor, other than the lack of a sufficient Affidavit of Support Under Section 213A of the INA, if required, can be the sole criterion for the determination. **You must consider all aspects of the case and determine whether the applicant's circumstances, assessed in their totality, suggest that he is more likely than not to become a public charge at any time.**

13. (U) At a minimum, you must consider following factors related to the applicant:

- age
- health
- family status
- assets, resources, and financial status
- education and skills
- any current or past receipt of public cash assistance for income maintenance or long-term institutionalization at government expense
  a sufficient Affidavit of Support Under Section 213A of the INA, when required.

**AGE**

14. (U) You must consider the applicant's age in conjunction with the factors identified, particularly his health and financial status. If an IV applicant is under the age of 16, he must have the support of a sponsor. For an IV applicant who is nearing or past normal retirement age, what is the likelihood that he will secure a job in the United States that will allow him to support himself and any dependents without the need for public cash assistance? If he is able to secure such a job, will he be able to work for enough time before retirement to accumulate savings or pension benefits sufficient to support himself and his dependents over his expected lifespan without the need to seek public cash assistance or long-term institutionalization government expense? Will he be receiving retirement benefits from his

home country while in the United States? Long-term institutionalization (e.g., at a nursing facility) can cost hundreds of thousands of facility) can cost hundreds of thousands of dollars per year and should be considered.

**HEALTH**

15.   (U) You must consider an applicant's health. Certain medical conditions - including, but not limited to, cardiovascular diseases, respiratory diseases, cancers, diabetes, metabolic diseases, neurological diseases, and mental health conditions - can require hundreds of thousands of dollars' worth of care. If an applicant has one of these conditions, does he have adequate financial resources or insurance coverage for such costs over his entire expected period of stay in the United States without seeking public cash assistance or long-term institutionalization at government expense?

16. (U) You must review the applicant's medical report in cases where one is required. For any Class B condition, the CDC directs panel physicians to remark on the likely degree of disability or the need for extensive medical care or institutionalization. You must consider the conditions and physician's remarks in assessing whether any aspects of the applicant's health would hinder him from maintaining employment, which could require him to seek public cash assistance; would require extensive medical care, especially for a chronic condition, which also could require him to seek public cash assistance; or would require his long-term institutionalization.

If the physician failed to include remarks about the likely degree of disability or the need for extensive medical care or institutionalization, you must refuse the application under INA 221(g) and return the medical exam result to the panel physician so he can include the remarks.

17. (U) You should pay particular attention to any chronic conditions identified in the medical report, as these  can require expensive, long-term care or could mean an applicant is unable to support himself through employment. Does the applicant have adequate financial resources to cover the costs of such care over his entire expected lifespan without seeking public cash assistance or long-term institutionalization at government expense? If the applicant expects to rely on employer-provided health insurance to help cover those costs, what is the likelihood he will be able to get and maintain a job that provides such a benefit? Also, how does he plan to maintain such insurance after retirement?

18. (U) You also should consider aspects of the applicant's health that are not necessarily identified as Class B medical conditions but that could nevertheless lead to a public charge determination when assessed in the totality of the circumstances. For example, according to the CDC, obesity in adults increases, according to the CDC, obesity in adults increases the

risks of, among other conditions, high blood pressure; Type 2 diabetes; breathing problems, such as asthma and sleep apnea; joint problems, such as osteoarthritis; gallstones and gallbladder disease; and mental illness, such as clinical depression and anxiety. All of these can require expensive, long-term care.

**FAMILY STATUS**

19. (U) You must consider an applicant's family status. For example, if an applicant has dependent family members (including minor children and elderly parents) who will accompany him, what is the likelihood he will be able to provide for himself and them in the United States without seeking public cash assistance? Is the applicant the sole breadwinner? Do any of the dependents have disabilities, chronic medical conditions, or other special needs and require care such that the applicant cannot maintain employment? If the applicant has-no dependents, and taking into account his health and financial status, what is the likelihood he will be able to care for himself as ages and thus avoid the need for long-term institutionalization at government expense in a nursing facility?

20. (U) You must consider an applicant's assets, resources, and financial status. For example, if an IV applicant is unable to work or does not intend to work in the United States, what assets and resources does he have now that will allow him to support himself and any dependents without seeking public cash assistance? Are those assets and resources liquid, solely his, and available for use in the United States? Given his habitual lifestyle and family status, particularly his number of dependents, and considering the effect of inflation on the cost of living, would those assets last for his expected lifespan? Long-term institutionalization (e.g., at a nursing facility) can cost hundreds of thousands of dollars per year.

21. (U) Among other things, you should consider whether any applicant's assets, resources, and financial status will allow him and any dependents to withstand the likely trials of life without the need at any. point to seek public cash assistance or long-term institutionalized care at government expense. For example, prudent financial planning normally includes having some cash savings in case of an interruption in income (e.g., a job

loss) or significant unexpected expense (e.g., a major car repair). Does the applicant have adequate resources to cover these without the need to seek public cash assistance? Further, prudent planning for emergencies normally includes having appropriate medical insurance coverage for oneself and one's dependents. What are the applicant's plans to handle a medical emergency while in the United States (including during that two-week trip to the Grand Canyon)?

22. Whenever an applicant seeks to rely on his assets, resources, or financial status to help satisfy INA 212(a)(4) requirements, you should request documentary evidence of such assets, resources, insurance, and financial status. This may include, but is not limited, to statements from banks and other financial institutions that show balances in checking and savings accounts, brokerage accounts, retirement contribution plans (e.g., 401(k) or Individual Retirement Account equivalents, etc.), trust funds, annuities, or any other investments or accounts. As appropriate, you should verify such documents with the institutions that issued them.

**EDUCATION AND SKILLS**

23. (U) You must consider an applicant's education and skills. These include, but are not limited to, any formal credentials and skills acquired over his educational and employment history. You should assess whether these will help or hinder the applicant in maintaining employment in the United States such that he can provide for himself and any dependents over his expected lifespan without seeking public cash assistance or long-term institutionalization at government expense.

24. (U) First among the applicant's education and skills, you should consider his English language proficiency. Even entry-level or lower skilled job require applicant to be able to serve clients in English, get direction from supervisors in English, and read English language product instructions and warning. For an applicant who intends to support himself and his dependents through employment, lack of the necessary English language proficiency could call into question his ability to become or remain self-sufficient within a reasonable time after entry into the United States.

25. (SBU) You can assess the applicant's English-language proficiency by conducting the interview in English. If the applicant does not have at least basic English proficiency, he should have a realistic plan to acquire it and to support himself and his dependents without using public cash assistance during that time. If the applicant cannot or does not intend to acquire basic English proficiency, you should consider how he will be able to

maintain employment that will allow him to provide for himself and any dependents over his expected lifespan without becoming a public charge.

26. (U) Many aliens obtain employment that is low-skilled but physically demanding (e.g., caregiving or agriculture) or hazardous (e.g., meat processing or construction). For any applicant who intends to work in such a field, you should assess such plans in light of the applicant's age, health, and family status. You should consider whether he will be able to work for enough time before retirement or in the event of disabling injury to accumulate savings or pension benefits sufficient to support himself and his dependents over his expected lifespan without seeking public cash assistance or long-term institutionalization at government expense in a nursing facility.

27. (U) For an applicant who plans to work in a professional field, you should determine whether he has the necessary qualifications and credentials to secure and maintain employment in the state where he intends to reside. You should request documentary evidence of such qualifications and credentials (e.g., diplomas and professional certificates) and, as appropriate, you verify them with issuing institutions. Many professions in the United States are subject to state-level licensing requirements, and foreign educational or profession credentials will not necessarily be honored. Until the applicant obtains the necessary U.S. qualifications and credentials, which can be a lengthy process, you should consider how he will support himself and his dependents without seeking public cash assistance.

**CURRENT OR PAST RECEIPT OF PUBLIC ASSISTANCE**

28. (U) The public charge ineligibility is forward-looking. Nevertheless, current or past receipt of public cash assistance for income maintenance, or the need for long-term institutionalization at government expense, is an indicator that an applicant is or has been unable to provide for himself or his dependents and could become a public charge in the future. You should take into account any past receipt of such benefits in any country in considering the totality of the applicant's circumstances. Have his circumstances significantly changed such that he is not likely to rely on such benefits at any point after admission?

29. (U) Likewise, you must consider an applicant's current or past use of any other form of public assistance, social welfare, or private charity either in the United States or elsewhere intended to help low-income people. This includes but is not limited to housing assistance, food assistance (including the use of private food banks), and medical assistance.

Although the current regulatory definition of public charge does not include these, use of them indicates that an applicant is or has been unable to provide for himself fully and could become a public charge in the future.

AFFIDAVIT OF SUPPORT UNDER SECTION 213A OF THE INA

30. (U) Most family-based IV applicants and certain employment-based IV applicants must submit an Affidavit of Support Under Section 213A of the INA (AOS). **In such cases, a sufficient AOS that meets the minimum financial requirements is a threshold condition and one factor (but not the only) in the totality of circumstances you must consider to determine if an applicant is likely at any time to become a public charge.**

31. (U) In cases where an AOS is required, the sponsor normally is the petitioner. In cases where the petitioner cannot submit a sufficient AOS, someone outside the petitioner's household may be considered a joint sponsor for the purpose of executing a Form I-864. The joint sponsor must independently meet the financial requirements to support the sponsored applicant; combining the incomes of the sponsor, sponsored applicant, or joint sponsor is not permitted.

32. (SBU) The National Visa Center (NVC) reviews all AOS submissions it receives for technical completeness. Additionally, NVC screens certain cases for fraudulent joint sponsors and individuals who may be sponsoring more applicants than claimed on the Form 1 864. For electronic cases, NVC uploads a memo the Electronic Document Proce (EDP) system with any derogatory information on joint sponsors; a printed copy of the memo will be attached to the case file in paper IV cases. Even when NVC makes preliminary notes about the AOS during case processing, **NVC does not "approve" the AOS or determine whether the applicant satisfies the requirements of INA 212(a)(4) - that is your responsibility as the adjudicator.**

33. (U) You must review any AOS package, including the Form I-864 and supporting documents. In the first place, you should determine whether the sponsor or joint sponsor meets the domicile conditions outlined in 9 FAM 601.14-7(a)(3).

34. (U) You must review any AOS package to determine whether the sponsor or joint sponsor has income or assets to maintain his household and the applicant at an annual income of not less than 125 percent of the HHS Federal Poverty Guidelines of 100 percent if the sponsor is on active duty in the US armed forces). In conducting the interview view, you should consider the credibility of the information presented in the AOS. For example, are the sponsor's income and assets consistent with his claimed employment? You may request documentary evidence of the sponsor's claims - for example, letters from

employers or statements from financial institutions - and as appropriate verify such documents with the issuers

35. (U) You also should consider the credibility of the assurances provided by any sponsor, household member whose income is counted in the AOS, and joint sponsor. The I-864 creates a **legally-binding contract** between the applicant, their sponsors, and the U.S. government. Therefore, you should examine the nature of the relationship between the applicant and anyone involved in supporting him. Are you satisfied that they will readily make their incomes and assets available so the sponsored applicant does not seek public cash assistance or long-term institutionalized care at government expense?

36. (U) You also should consider whether the sponsor or joint sponsor uses or has used any public assistance, including but not limited to public cash assistance. Use of such benefits by a sponsor could indicate that he is or has been unable to provide for himself fully, thus calling into question his ability to provide for the sponsored applicant.

37. (U) **A sufficient AOS that meets the minimum financial requirements is necessary but not by itself enough to satisfy the requirements of INA 212(a) (4). In all cases, you must determine whether, considering the totality of the applicant's circumstances, such an AOS is more likely than not to prevent him from becoming a public charge.** For example, for an IV applicant who is older or has significant health concerns that might prevent him from working, you should consider whether a sponsor whose income is low or variable or whose prevent him from working, you should consider whether a sponsor whose income is low or variable, or whose employment situation is tenuous, will be able to provide enough support so that IV applicant does not seek public cash assistance or long-term institutionalization at government expense at any time over his expected lifespan.

**DIVERSITY VISA (DV) APPLICANTS**

38. (U) DV applicants may **not** use an Affidavit of Support Under Section 213A

of the INA to help satisfy the requirements of INA 212(a)(4). Consequently, many seek to use Form I-134 Declaration of Financial Support for that purpose. You should not request it from DV applicants, however, and you must not give it any weight in DV cases. Instead, as in all visa applications subject to INA 212(a)(4), you must consider the factors described above and determine whether the applicant's circumstances, assessed in their totality, suggest that he is more likely than not to become a public charge at any time.

Signature: RUBIO