**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CATHOLIC LEGAL IMMIGRATION NETWORK, INC. (CLINIC), AFRICAN COMMUNITIES TOGETHER, AGNES KYEREMAA, PATRICIA RICHARDSON, CESAR ANDRED AGUIRRE, MARU MAHMUD HASSEN, MUNTHAZ MAHMUD HASSEN, ADRIAN MITCHELL, JUAN DAVID BUITRAGO CAGUA, ALEJANDRA ALCENDRA MOSCOTE, ANDRES ALFONSO MEDINA RAMIREZ, FERNANDO LIZCANO LOSADA and LINA MARGARITA ANGULO PEÑARANDA

                                    Plaintiffs,


     -against-


MARCO RUBIO, in his official capacity as Secretary of State, and the UNITED STATES DEPARTMENT OF STATE,

                                    Defendants.

Case No. 1:26-CV-00858-JAV

**PLAINTIFFS' RULE 56 STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED, IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Plaintiffs CLINIC et al. listed above submit this statement of material facts as to which there is no genuine issue to be tried.

1.    Plaintiff Catholic Legal Immigration Network, Inc. ("CLINIC") is a national nonprofit organization that provides training, resources, and support to a network of immigration law providers to support the provision of immigration representation, including to more than 415 affiliate Catholic and community-based immigration law programs, supporting approximately 3,000 network employees in 49 states.  Declaration of Charles Wheeler ("Wheeler Decl.") ¶ 4.

2.    Approximately 79 percent of CLINIC affiliates offer consular processing services. Wheeler Decl. ¶ 6.

3.      CLINIC staff are located throughout the country with staff presence in states including California, Maryland, Virginia, Ohio, Florida, Texas, and New York. Wheeler Decl. ¶ 7.

4.      CLINIC serves 34 affiliate organizations in New York, including 17 affiliates in New York City. Wheeler Decl. ¶ 6.

5.      Among CLINIC's staff of 81 people, seventeen staff members devote their time to substantive immigration law matters including family-based immigration as members of CLINIC's Training and Technical Assistance section. Wheeler Decl. ¶ 7.

6.      Approximately 70 percent of the budget of CLINIC's Training and Technical Assistance Team is allocated to address substantive immigration law matters including family-based immigration. Wheeler Decl. ¶ 7.

7.      The Department of State (DOS) provided no opportunity to comment on its nationality-based suspension of immigrant visa adjudications or its unsubstantiated assertions regarding public benefit usage by nationals of the affected countries. Wheeler Decl. ¶ 15.

8.      If DOS had provided notice and an opportunity to comment before announcing the Blanket Visa Ban, CLINIC would have submitted comments opposing the Ban. Wheeler Decl. ¶ 16.

9.      The absence of notice, opportunity to comment, and the lack of a defined end date has prevented CLINIC organization and its affiliates from planning or taking steps to mitigate harms resulting from the Ban, which will continue to accrue the longer the Ban remains in effect. Wheeler Decl. ¶ 10.

10.     The Department of Homeland Security (DHS) provided CLINIC an opportunity to comment on both the 2025[1] DHS and the 2018[2] public charge NPRMs published by the Trump Administration. Wheeler Decl. ¶ 16.

11.     If DOS had provided CLINIC with the opportunity to comment on a proposed Blanket Visa Ban, CLINIC would have done so. Wheeler Decl. ¶ 16.

12.     Plaintiff African Communities Together (ACT) is a national not-for-profit membership-based organization headquartered in Harlem, New York City, New York, whose members are thousands of African immigrants organized into chapters in Maryland, New York, Virginia, Pennsylvania and the District of Colombia. Declaration of Amaha Kassa ("Kassa Decl.") ¶¶ 2, 4 & 10.

13. ACT's membership is diverse and includes people around the U.S. who are nationals of or descendants of immigrants from myriad African nations, as well as their family members. ACT's membership has diverse citizenship and immigration statuses and includes members who are from or who have family members from Algeria, Cameroon, Egypt, Ethiopia, Ghana, Liberia, Morocco, Nigeria, Democratic Republic of Congo, Rwanda, Tunisia, and Uganda, all of which are listed among the 75 countries in the DOS Blanket Visa Ban and DOS Blanket Visa Ban Cable.  Kassa Decl. ¶ 9.

14.     ACT's mission is to empower African immigrants to integrate socially, advance economically, and engage civically. Kassa Decl. ¶¶ 2, 3 & 11.

---

[1] *See* NPRM Public Charge Ground of Inadmissibility (2025), comment ID USCIS-2025-0304-3889, https://www.regulations.gov/comment/USCIS-2025-0304-3889
[2] *See* NPRM Public Charge Ground of Inadmissibility (2018), comment ID USCIS-2010-0012-56022, https://www.regulations.gov/comment/USCIS-2010-0012-56022; comment ID USCIS-2010-0012-43255, https://www.regulations.gov/comment/USCIS-2010-0012-43255; comment ID USCIS-2010-0012-49608, https://www.regulations.gov/comment/USCIS-2010-0012-49608.

15.    ACT provides free services to help African immigrant families unite and stabilize, including immigrant legal services such as adjustment of status applications, family-based petitions, affidavits of support, and consular processing. Kassa Decl. ¶ 3.

16.    ACT's consular processing services include helping its members who are petitioning on behalf of parents, spouses, siblings and children for their family members to adjust their legal statuses. Kassa Decl. ¶¶ 10, 11.

17.    ACT members petitioning to obtain immigrant visas through consular processing can include families from Ghana, Algeria, Cameroon, Egypt, Ethiopia, Liberia, Morocco, Nigeria, Democratic Republic of Congo, Rwanda, Tunisia, and Uganda. Kassa Decl. ¶ 10.

18.    ACT's free services also include applications for asylum, U-Visas and T-Visas, Temporary Protected Status, Employment Authorization Documents, and renewals for lawful permanent residence. Kassa Decl. ¶ 11.

19.    ACT's free services also include connecting African immigrant families to government services and benefits for which they are eligible as an additional means of support. Kassa Decl. ¶¶ 3, 31.

20.    Reuniting families through family-based immigration and connecting them to needed forms of assistance is especially important for ACT's members and clients, who are typically low-income. Kassa Decl. ¶ 3.

21. DOS has provided no notice or opportunity to comment on its new final agency actions or "public charge" directives issued and in effect since it issued the Jan. 14, 2026 Blanket Visa Ban.  Kassa Decl. ¶ 19.

22. As part of ACT's advocacy work, ACT provides public comments, and encourages ACT members to provide public comments, on policies that impact African communities.  ACT

4

recently submitted a public comment to DOS opposing changes to the Diversity Visa program and encouraged its members to do the same. Had there been an opportunity to comment on the Blanket Visa Ban, ACT could have commented on the impact of family separation on African families and the impact of categorical nationality-based refusals prohibited under the INA anti-discrimination provisions, including 8 U.S.C. § 1152(a)(1)(A). The absence of a defined end date prevents ACT members and ACT from planning or taking steps to mitigate these harms, which will continue to accrue the longer the Ban remains in effect.  Kassa Decl. ¶ 19.

23.    Plaintiff Agnes Kyeremaa is an ACT Member and U.S. Citizen who lives in New York, New York. Declaration of Agnes Kyeremaa ("Kyeremaa Decl.") ¶¶ 2, 3; Kassa Decl. ¶¶ 21, 22.

24.    Agnes Kyeremaa is petitioning on behalf of her family members who are nationals of Ghana: four adult sons and daughters, plus three derivative grandchildren. Kyeremaa Decl. ¶ 8; Kassa Decl. ¶ 22.

25.    All four relative petitions were approved for Agnes Kyeremaa's family members, who completed and submitted all necessary documents and paid their visa processing fees. After they attended their consular interviews on January 22, 2026, they received notices under 8 U.S.C. § 1201(g) advising them that their visas were refused because Ghana is one of 75 countries subject to the visa ban. Kyeremaa Decl. ¶¶ 10, 13; Kassa Decl. ¶ 22.

26.    Agnes Kyeremaa's four adult sons and daughters, plus three derivative grandchildren remain outside the U.S. Kyeremaa Decl. ¶¶ 6, 12, 15.

27.    Plaintiff Patricia Richardson is a U.S. citizen who lives in the Bronx, New York City, New York. Declaration of Patricia Richardson ("Richardson Decl.") ¶¶ 3, 4.

28. Patricia Richardson is petitioning on behalf of her sister who is a national and resident of Jamaica. Richardson Decl. ¶¶ 5, 6.

29. For Patricia Richardson's sister's immigrant visa application, all required fees have been paid, all required documents have been completed and submitted, and her visa application interview is scheduled for March 17, 2026. Richardson Decl. ¶¶ 7, 8.

30. Patricia Richardson's sister remains in Jamaica. Richardson Decl. ¶ 11.

31. Plaintiff Cesar Andred Aguirre is a U.S. citizen who lives in Shirley, Suffolk County, New York. Declaration of Cesar Andred Aguirre ("Aguirre Decl.") ¶¶ 3, 4.

32. Cesar Andred Aguirre is petitioning on behalf of his wife who is a national of Guatemala and resides in the United States. Aguirre Decl. ¶¶ 6, 7 & 10.

33. For Cesar Andred Aguirre's wife's immigrant visa application, all required fees have been paid, all required documents have been completed and submitted, and her visa application interview was held on January 21, 2026. Aguirre Decl. ¶¶ 11, 14.

34. After the interview, the consulate notified Cesar Andred Aguirre's wife that she was not eligible to receive a visa because Guatemala is one of the 75 countries subject to the visa ban. Aguirre Decl. ¶¶ 16-18.

35. Cesar Andred Aguirre's wife and two-year-old daughter remain in Guatemala. Aguirre Decl. ¶¶ 8, 21 & 39.

36. Plaintiff Maru Mahmud Hassen is a U.S. citizen who lives in Rochester, New York. Declaration of Maru Mahmud Hassen ("Maru Hassen Decl.") ¶ 2.

37. Maru Mahmud Hassen is petitioning on behalf of his wife who is a national and resident of Ethiopia. Maru Hassen Decl. ¶¶ 3, 5.

38. For Maru Mahmud Hassen's wife's immigrant visa application, all required fees have been paid, all required documents have been completed and submitted, and her visa application interview has not yet been scheduled. Maru Hassen Decl. ¶¶ 6, 7.

39. Maru Mahmud Hassen's wife's remains in Ethiopia. Maru Hassen Decl. ¶ 9.

40. Plaintiff Munthaz Mahmud Hassen is a U.S. citizen who lives in Rochester, New York. Declaration of Munthaz Mahmud Hassen ("Munthaz Hassen Decl.") ¶ 2.

41. Munthaz Mahmud Hassen is petitioning on behalf of his two minor sons who are nationals and residents of Ethiopia. Munthaz Hassen Decl. ¶¶ 3, 5.

42. For Munthaz Mahmud Hassen's sons' immigrant visa applications, all required fees have been paid, all required documents have been completed and submitted, and their visa application interviews have not yet been scheduled. Munthaz Hassen Decl. ¶¶ 6-7.

43. Munthaz Mahmud Hassen's two minor sons remain in Ethiopia. Munthaz Hassen Decl. ¶ 9.

44. Plaintiff Adrian Mitchell is a U.S. citizen who lives in Port St. Lucie, Florida. Declaration of Adrian Mitchell ("Mitchell Decl.") ¶¶ 3, 4.

45. Adrian Mitchell is petitioning on behalf of his mother, who is a national of Jamaica and resides in the United States. Mitchell Decl. ¶¶ 6, 7 & 10.

46. For Adrian Mitchell's mother's immigrant visa application, all required fees have been paid, all required documents have been completed and submitted, and she traveled to Jamaica for her visa application interview on January 12, 2026. Mitchell Decl. ¶¶ 9, 12.

47. After the interview, Adrian Mitchell's mother received a letter from the embassy stating she was ineligible for a visa because of the 75-country ban. Mitchell Decl. ¶ 15.

48. Adrian Mitchell's mother remains in Jamaica. Mitchell Decl. ¶¶ 9, 16.

49.     Plaintiff Juan David Buitrago Cagua is a citizen of Colombia who lives in Lisbon, Portugal. Declaration of Juan David Buitrago Cagua ("Cagua Decl.") ¶¶ 3, 4.

50.     Juan David Buitrago Cagua's petition for an employment-based visa was approved in February 2024. Cagua Decl. ¶ 6.

51.     After Juan David Buitrago Cagua appeared for his visa interview on January 26, 2026, in Colombia, he received a notice of ineligibility under 8 U.S.C. § 1201(g) (referred to as INA § 221(g) in the notice). Cagua Decl. ¶ 9.

52.     Juan David Buitrago Cagua remains in Lisbon. Cagua Decl. ¶¶ 4, 19.

53.     Plaintiff Mayra Alejandra Alcendra Moscote is a citizen of Colombia who lives in Spain. Declaration of Mayra Alejandra Alcendra Moscote ("Moscote Decl.") ¶ 3.

54.     Mayra Alejandra Alcendra Moscote's petition for an employment-based visa was approved in November 2023. Moscote Decl. ¶¶ 5, 6.

55.     After Mayra Alejandra Alcendra Moscote appeared for her visa interview on October 7, 2025 in Spain, she was notified on January 21, 2026, that her documents would be returned to her. Among those was a form from the U.S. Embassy in Madrid informing her that she was refused under 8 U.S.C. § 1201(g). Moscote Decl. ¶¶ 8, 9.

56.     Mayra Alejandra Alcendra Moscote remains in Spain. Moscote Decl. ¶ 3.

57.     Plaintiff Andres Alfonso Medina Ramirez is a citizen of Colombia currently residing in Panama. Declaration of Andres Alfonso Medina Ramirez ("Ramirez Decl.") ¶¶ 3, 4.

58.     Andres Alfonso Medina Ramirez's petition for an employment-based visa was approved in April 2025. Ramirez Decl. ¶ 6.

8

59.     After Andres Alfonso Medina Ramirez appeared for his visa interview on January 22, 2026, in Colombia, he received a notice of refusal under 8 U.S.C. § 1201(g) (referred to as INA § 221(g) in the notice) that mentioned the 75-country visa ban. Ramirez Decl. ¶¶ 8, 9.

60.     Andres Alfonso Medina Ramirez remains in Panama. Ramirez Decl. ¶ 4.

61.     Plaintiff Fernando Lizcano Losada is a citizen and resident of Colombia. Declaration of Fernando Lizcano Losada ("Losada Decl.") ¶ 3.

62.     Fernando Lizcano Losada's petition for an employment-based visa was approved in January 2025. Losada Decl. ¶¶ 4, 5.

63.     After Fernando Lizcano Losada appeared for his visa interview on January 22, 2026, in Colombia, he received a notice of refusal under 8 U.S.C. § 1201(g) (referred to as INA § 221(g) in the notice). Losada Decl. ¶ 7.

64.     Fernando Lizcano Losada remains in Colombia. Losada Decl. ¶ 3.

65.     Plaintiff Lina Margarita Angulo Peñaranda is a citizen and resident of Colombia. Declaration of Lina Margarita Angulo Peñaranda ("Peñaranda Decl.") ¶¶ 3, 4.

66.     Lina Margarita Angulo Peñaranda's petition for an employment-based visa was approved in January 2025. Peñaranda Decl. ¶¶ 6, 7.

67.     After Lina Margarita Angulo Peñaranda appeared for her visa interview on January 21, 2026, in Colombia, she received a notice of refusal under 8 U.S.C. § 1201(g) (referred to as INA § 221(g) in the notice). Peñaranda Decl. ¶ 8.

68.     Lina Margarita Angulo Peñaranda remains in Colombia. Peñaranda Decl. ¶ 4.

69.     On January 14, 2026, the DOS posted on its "U.S. Visa News" website a document entitled "Immigrant Visa Processing Updates for Nationalities at High Risk of U.S. Public

9

Benefits Reliance" which stated: "Effective January 21, 2026, the Department of State paused all visa issuances to immigrant visa applicants who are nationals of the following countries:

Afghanistan, Albania, Algeria, Antigua and Barbuda, Armenia, Azerbaijan, Bahamas, Bangladesh, Barbados, Belarus, Belize, Bhutan, Bosnia and Herzegovina, Brazil, Burma, Cambodia, Cameroon, Cape Verde, Colombia, Cote d'Ivoire, Cuba, Democratic Republic of the Congo, Dominica, Egypt, Eritrea, Ethiopia, Fiji, The Gambia, Georgia, Ghana, Grenada, Guatemala, Guinea, Haiti, Iran, Iraq, Jamaica, Jordan, Kazakhstan, Kosovo, Kuwait, Kyrgyz Republic, Laos, Lebanon, Liberia, Libya, Moldova, Mongolia, Montenegro, Morocco, Nepal, Nicaragua, Nigeria, North Macedonia, Pakistan, Republic of the Congo, Russia, Rwanda, Saint Kitts and Nevis, Saint Lucia, Saint Vincent and the Grenadines, Senegal, Sierra Leone, Somalia, South Sudan, Sudan, Syria, Tanzania, Thailand, Togo, Tunisia, Uganda, Uruguay, Uzbekistan, and Yemen." This document explains that "President Trump has made clear that immigrants must be financially self-sufficient and not be a financial burden to Americans. The Department of State is undergoing a full review of all screening and vetting policies to ensure that immigrants from high-risk countries do not unlawfully utilize welfare in the United States or become a public charge. " Declaration of Joanna Cuevas Ingram ("Cuevas Ingram Decl.") ¶¶ 6, 11, Pl's Exs. A & F.

70. The "Immigrant Visa Processing Updates for Nationalities at High Risk of U.S. Public Benefits Reliance" announcement informed the public that "nationals from those 75 affected countries may submit immigrant visa applications and attend interviews, but that no immigrant visas would be issued to them during the pause. DOS will continue to schedule

appointments for nationals seeking immigrant visas from those 75-affected countries."  Cuevas Ingram Decl., ¶ 6, Pl's Ex. A.

71.    On February 2, 2026, DOS updated the "Immigrant Visa Processing Updates for Nationalities at High Risk of U.S. Public Benefits Reliance" directive on its "U.S. Visa News" website to add "[c]hildren being adopted by Americans" to the list of individuals that are exempted from the pause.  It also clarified that tourist visas are nonimmigrant visas that are not impacted by the pause. Cuevas Ingram Decl., ¶ 11, Pl's Ex. F.

72.    A cable, dated January 14, 2026, was sent from "SECSTATE WASHDC" to "ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE Immediate" and entitled "Pausing Immigrant Visa Issuances for Nationalities at High Risk of Public Charge."  The cable is identified as an "action request," and states that, effective January 21, 2026, "consular officers must refuse . . . all immigrant visa applicants . . . if the applicant is a national of the [75 targeted] countries." Cuevas Ingram Decl., ¶¶ 7, 12, Pl's Exs. B and G at 4 (italics added). The cable further provides that immigrant visa applications from the targeted countries are to be categorically denied "until further notice." Pl's Exs. B and G at 4-5 ¶¶ 1, 2, 4.  The cable explains that immigrant visas will not be issued to nationals from the 75 countries because "[a]pplicants from these countries are at a high risk for becoming a public charge and recourse to local, state and federal government resources in the United States." *Id.* at 4 ¶ 2.

73.    The cable indicated that "the Department is directing consular offices to take this action based on indication of nationals from these countries having sought public benefits in the United States, and in order to allow the Department to evaluate and enhance screening and vetting procedures and guidance related to the public charge ground of ineligibility.  *Id.* at 4 ¶ 3.

11

74.    On February 26, 2026, DOS posted an announcement entitled "Preventing Public Benefits Reliance" on its U.S. Visa News website, which explained consular officials' role in determining if an immigrant visa applicant is ineligible for a visa due to public charge. Cuevas Ingram Decl., ¶ 13, Pl's Ex. H. The document states: "Consular officers are tasked with vigilant screening and vetting of visa applicants to prevent non-U.S. citizens who cannot cover their own living expenses, including medical costs, from traveling to the United States with the expectation that American taxpayers will bear those costs." *Id.*

75.    The document further states: "A public charge is a person that becomes primarily dependent on the government for subsistence, as demonstrated by accepting public cash assistance for income maintenance or long-term institutionalization at government expense." *Id.*

76..    It also provides that "[c]onsular officers adjudicate visas on a case-by-case basis. We do not issue a visa until an applicant has demonstrated to the satisfaction of the consular officer adjudicating the case that he or she is eligible to receive a visa under U.S. law." *Id.*

77.    Congress did not amend the INA to prohibit the issuance of immigrant visas to nationals from the 75-affected countries described in the DOS's January 14, 2026, and February 2, 2026 U.S. Visa News announcements (Plaintiffs' Exhibits A and F), nor the cable (Plaintiffs' Exhibits B and G).

78.    The cable from January 14, 2026, and contained in Plaintiff's Exhibits B and G, is final agency action subject to notice and comment under the APA.

79.    The immigrant visa process begins with a Form I-130 Petition for Alien Relative filed with U.S. Citizenship and Immigration Services ("USCIS") by the U.S. citizen or lawful permanent resident petitioner. Cuevas Ingram Decl., ¶ 14, Ex. I, USCIS Policy Manual, Vol. 6, Part B, Chapter 3, https://www.uscis.gov/policy-manual/volume-6-part-b-chapter-3.

80.     Upon approval of the Form I-130 Petition by USCIS, the case file is transferred by USCIS to the DOS National Visa Center ("NVC"), for the commencement of consular processing. Cuevas Ingram Decl., ¶ 15, Ex. J, USCIS Policy Manual, Vol. 6, Part B, Ch. 5, Sec. C.1, https://www.uscis.gov/policy-manual/volume-6-part-b-chapter-5.

81.     The NVC issues to the intending immigrant a welcome letter with fee bills and instructions of the steps the take, including directing the intending immigrant to submit a Form DS-260 Immigrant Visa Electronic Application and supporting documents through the Consular Electronic Application Center ("CEAC"). The supporting documents include a Form I-864 Affidavit of Support from the petitioner, as well as various biographic documents for both the petitioner and the intending immigrant. DOS Foreign Affairs Manual ("FAM") 9 FAM §§ 504.1-2(a)(1) and 504.1-3(a), https://fam.state.gov/FAM/09FAM/09FAM050401.html.

82.     Once the NVC is satisfied that all necessary documents have been submitted through CEAC, NVC notifies the family that the case is documentarily qualified, and to wait for an interview notice from the U.S. consulate with jurisdiction over the case. NVC then sends the case file to the U.S. consulate with jurisdiction over the case. 9 FAM § 504.1-2(b), https://fam.state.gov/FAM/09FAM/09FAM050401.html.

83.     The U.S. consulate with jurisdiction over the case sends an interview notice and instructions to the family. 9 FAM § 504.1-2(d), https://fam.state.gov/FAM/09FAM/09FAM050401.html.

84.     The intending immigrant completes a medical examination, conducted by a physician chosen by the consulate. 9 FAM §§ 302.2-3(A)(a) and 302.2-3(E), https://fam.state.gov/FAM/09FAM/09FAM030202.html#M302_2_3_C.

13

85. The intending immigrant attends the consular interview, during which the consular official reviews originals of all the documents previously submitted as copies through CEAC, interviews the intending immigrant as to their eligibility for a visa, reviewing among other things the various grounds of inadmissibility under 8 U.S.C. § 1182. 9 FAM § 504.1-3(f), https://fam.state.gov/FAM/09FAM/09FAM050401.html.

86. If the consular officer is satisfied that the intending immigrant qualifies for an immigrant visa, the consular officer issues an immigrant visa, which is affixed to the intending immigrant's passport. Otherwise, the consular officer issues a notice of refusal under 8 U.S.C. § 1201(g). 9 FAM §§ 504.1-3(g) and (h), https://fam.state.gov/FAM/09FAM/09FAM050401.html.

87. Intending immigrants with immigrant visas affixed to their passports must, during the validity period of the immigrant visa, travel to the U.S. for inspection by a U.S. Customs and Border Protection ("CBP") officer at a U.S. port of entry. 8 U.S.C. § 1201(e); 8 CFR § 211.1(a); 8 CFR §§ 235.1(a) and (f)(1); 9 FAM § 504.10-2(A), https://fam.state.gov/FAM/09FAM/09FAM050410.html.

88. If the CBP officer determines that the intending immigrant is admissible, he or she stamps the intending immigrant's passport, at which point the immigrant visa becomes a temporary Form I-551 evidencing proof of lawful permanent residence for a period of one year. The intending immigrant is thereafter a lawful permanent resident ("LPR"). Cuevas Ingram Decl., ¶ 16, Ex. K, U.S. Customs and Border Protection Inspector's Field Manual, Ch. 14.4, https://www.governmentattic.org/5docs/CPB-IFM_2006.pdf.

89. The LPR enters the U.S., and pays an immigrant fee to USCIS, for the issuance of the actual LPR card (commonly referred to as a "green card"). 8 CFR § 106.2(c)(3); 9 FAM § 504.10-4(D), https://fam.state.gov/FAM/09FAM/09FAM050410.html.

15

90.     Upon receiving the immigrant fee, USCIS generates the LPR card and mails it to the LPR. 8 CFR § 106.2(c)(3); Cuevas Ingram Decl., ¶ 17, Ex. L, USCIS Immigrant Fee, https://my.uscis.gov/accounts/uscis-immigrant-fee/start/overview.

//

//

Dated: March 11, 2026

Respectfully submitted,

*/s/ Joanna Elise Cuevas Ingram*
Joanna Elise Cuevas Ingram (JC 2704)
Tanya Broder
Efrén C Olivares
Elizabeth Choo**
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 34573
Washington, D.C. 20043
(213) 377-5258
cuevasingram@nilc.org
broder@nilc.org
olivares@nilc.org
choo@nilc.org

*/s/ Erez Reuveni*
Erez Reuveni*
Catherine M.A. Carroll*
Elena Goldstein
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 316-9538 (Reuveni)
ereuveni@democracyforward.org
ccarroll@democracyforward.org
egoldstein@democracyforward.org

*/s/ Hasan Shafiqullah*
Hasan Shafiqullah (HS3231)
Susan Welber
Evan Henley
Emily Lundgren
THE LEGAL AID SOCIETY
49 Thomas St., 5th Floor
New York, NY 10013
(212) 577-3300
hhshafiqullah@legal-aid.org
Sewelber@legal-aid.org
ewhenley@legal-aid.org
elundgren@legal-aid.org

*/s/ Baher Azmy*

Baher Azmy
Angelo Guisado
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
7th Floor
New York, New York 10012
(212) 614-6445

*/s/ Antionette Dozier*
Antionette Dozier
David Kane
Joy Dockter*
WESTERN CENTER ON LAW & POVERTY
3701 Wilshire Blvd. Suite 208
Los Angeles, CA 90010
(213) 487-7211
adozier@wclp.org
dkane@wclp.org
jdockter@wclp.org

*/s/ Sarah Wilson*
Sarah Wilson
David Kim*
COLOMBO & HURD
301 E. Pine Street, Suite 450
Orlando, Florida 32801
(407) 478-1111

*\*Motion for Admission Pro Hac Vice
Forthcoming*

*\*\*Petition for Attorney Admission Forthcoming*

*Attorneys for Plaintiffs*

17

## CERTIFICATE OF SERVICE

I, <u>Erez Reuveni</u>, hereby certify that on March 11, 2026, I filed the foregoing Document with the Clerk of the Court for the United States District Court for the Southern District Court of New York using the CM/ECF system. Notice of this filing is being sent by operation of the Court's electronic filing system to all counsel of record who are registered CM/ECF users.

*/s/ Erez Reuveni*
Erez Reuveni
