**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CATHOLIC LEGAL IMMIGRATION NETWORK, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 26-cv-858 (JAV) |
| | ) |
| MARCO RUBIO, Secretary of State, et al., | ) ) |
| Defendants. | ) ) |
| _____ | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................3

    A. Statutory and Regulatory Framework...................................................................3

    B. The January 14 Announcement and Implementing Cable...................................4

    C. Implementation Through Individual Consular Adjudications .............................5

STANDARD OF REVIEW....................................................................................................5

ARGUMENT .......................................................................................................................7

    A. Plaintiffs' APA Challenge Fails at the Threshold. ..............................................7

        1. The Challenged Materials Are Not Final Agency Action. .....................7

        2. Consular Nonreviewability Independently Bars Review to the Extent that Plaintiffs' Claims Are Derivative of Concrete Consular Outcomes. .....................9

    B. Even If Review Were Available, Plaintiffs' APA Merits Theories Fail...........................11

        1. Exhibits A and B Do Not Conflict with 8 U.S.C. § 1182(a)(4). ..........................11

        2. Exhibits A and B Do Not Violate 8 U.S.C. § 1152(a)(1)(A). ..............................13

        3. Exhibits A and B Are Consistent with 8 U.S.C. §§ 1104(a) and 1201(g)............15

        4. The INA's Structure Confirms that Exhibits A and B Operate Within, Not Outside, Congress's Adjudicatory Framework.....................................17

    C. The January 14 Public Announcement and Implementing Cable Did Not Require Notice and Comment. ..........................................................18

        1. Exhibits A and B Are Not Legislative Rules..........................................18

        2. Even If Exhibits A and B Were Legislative Rules, the Foreign-Affairs Exception Would Apply. ....................................................20

        3. Alternatively, Any Procedural Error Was Harmless. ...........................21

    D. Plaintiffs' *Accardi* Claim Fails.......................................................................22

E. Plaintiffs Lack Article III Standing to Obtain the Relief They Seek. ..............................24

    1. The Individual Plaintiffs' Alleged Injuries Are Not Redressable. ........................24

    2. CLINIC and ACT Lack Organizational Standing. ................................................25

    3. ACT Lacks Associational Standing....................................................................27

F. Plaintiffs Are Not Entitled to Vacatur or Other Relief.....................................................27

CONCLUSION ............................................................................................................................31

## TABLE OF AUTHORITIES

### Cases

*6801 Realty Co., LLC v. U.S. Citizenship & Immigr. Servs.*,
719 F. App'x 58 (2d Cir. 2018) ...................................................................................6

*African Communities Together v. Lyons*,
799 F. Supp. 3d 362 (S.D.N.Y. 2025) ...............................................................8, 27, 30

*Allina Health Servs. v. Sebelius*,
746 F.3d 1102 (D.C. Cir. 2014)...........................................................................21, 29

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
988 F.2d 146 (D.C. Cir. 1993).............................................................................28, 29

*Am. Acad. of Religion v. Napolitano*,
573 F.3d 115 (2d Cir. 2009)..............................................................................2, 9, 11

*Am. Mining Cong. v. Mine Safety & Health Admin.*,
995 F.2d 1106 (D.C. Cir. 1993)..........................................................................19, 21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................................................................................................6

*Bennett v. Spear*,
520 U.S. 154 (1997) .............................................................................................2, 7, 8

*Bridgeway Corp. v. Citibank*,
201 F.3d 134 (2d Cir. 2000) .......................................................................................6

*Bridgeport Hosp. v. Becerra*,
108 F.4th 882 (D.C. Cir. 2024) .................................................................................29

*Burrafato v. Dep't of State*,
523 F.2d 554 (2d Cir. 1975) .....................................................................................10

*Cacchillo v. Insmed, Inc.*,
638 F.3d 401 (2d Cir. 2011) ................................................................................26, 27

*CAIR v. Trump*,
471 F. Supp. 3d 25 (D.D.C. 2020)............................................................................26

*Califano v. Yamasaki*,
442 U.S. 682 (1979) .............................................................................................3, 31

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ..................................................................................................6

*City of New York v. Permanent Mission of India*,
618 F.3d 172 (2d Cir. 2010) .................................................................................21

*City of Port Isabel v. FERC*,
130 F.4th 1034 (D.C. Cir. 2025) ...........................................................................29

*Darby v. Cisneros*,
509 U.S. 137 (1993) ................................................................................................7

*Dep't of State v. LAVAS*,
519 U.S. 1 (1996) .................................................................................................15

*Dep't of State v. Muñoz*,
602 U.S. 899 (2024) .....................................................................................2, 9, 11

*Do No Harm v. Pfizer Inc.*,
126 F.4th 109 (2d Cir. 2025) ...............................................................................27

*Doe v. Hochul*,
139 F.4th 165 (2d Cir. 2025) ...............................................................................27

*Doe v. McAleenan*,
926 F.3d 910 (7th Cir. 2019) ...............................................................................10

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......................................................................................25, 26

*Fiallo v. Bell*,
430 U.S. 787 (1977) ................................................................................................9

*Filazapovich v. Dep't of State*,
560 F. Supp. 3d 203 (D.D.C. 2021).......................................................................17

*Garcia v. Baker*,
765 F. Supp. 426 (N.D. Ill. 1990).........................................................................10

*Gomez v. Trump*,
485 F. Supp. 3d 145 (D.D.C. 2020).......................................................................17

*Goodluck v. Biden*,
104 F.4th 920 (D.C. Cir. 2024) .............................................................................30

*Guertin v. United States*,
    743 F.3d 382 (2d Cir. 2014) ....................................................................................28

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ...............................................................................................26

*Hicks v. Baines*,
    593 F.3d 159 (2d Cir. 2010) ......................................................................................6

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ...............................................................................................27

*Int'l Union of Bricklayers & Allied Craftsmen v. Meese*,
    761 F.2d 798 (D.C. Cir. 1985)................................................................................10

*ITC Ltd. v. Punchgini, Inc.*,
    482 F.3d 135 (2d Cir. 2007) ......................................................................................6

*Jeffreys v. City of New York*,
    426 F.3d 549 (2d Cir. 2005) ......................................................................................6

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972) ...............................................................................................11

*Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*,
    104 F.3d 1349 (D.C. Cir. 1997)...............................................................................15

*Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*,
    45 F.3d 469 (D.C. Cir. 1995)..................................................................................14

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...............................................................................24, 25, 26, 27

*Make the Rd. N.Y. v. Pompeo*,
    475 F. Supp. 3d 232 (S.D.N.Y. 2020) ...............................................................13, 20

*Matushkina v. Nielsen*,
    877 F.3d 289 (7th Cir. 2017) ...................................................................................10

*Melody Pak v. Biden*,
    91 F.4th 896 (7th Cir. 2024)....................................................................................10

*Milligan v. Pompeo*,
    502 F. Supp. 3d 302 (D.D.C. 2020)........................................................................17

*Montilla v. INS*,
    926 F.2d 162 (2d Cir. 1991) ............................................................................. 2, 22, 23

*Morton v. Ruiz*,
    415 U.S. 199 (1974) ............................................................................................. 22, 23

*N.Y. Legal Assistance Grp. v. Cardona*,
    2024 WL 64220 (2d Cir. Jan. 5, 2024) ................................................................... 28

*N.Y. Legal Assistance Grp. v. Cardona*,
    2025 WL 871371 (S.D.N.Y. Mar. 20, 2025) ...................................................... 28, 29

*N.Y. State Elec. & Gas Corp. v. Saranac Power Partners, L.P.*,
    267 F.3d 128 (2d Cir. 2001) ................................................................................... 19

*New York v. Dep't of Homeland Sec.*,
    969 F.3d 42 (2d Cir. 2020) ..................................................................................... 12

*New York v. Trump*,
    767 F. Supp. 3d 44 (S.D.N.Y. 2025) ......................................................................... 8

*Nnebe v. Daus*,
    644 F.3d 147 (2d Cir. 2011) ................................................................................... 26

*Olsen v. Albright*,
    990 F. Supp. 31 (D.D.C. 1997) ............................................................................... 15

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
    465 F.3d 977 (9th Cir. 2006) ..................................................................................... 8

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) ................................................................................................. 18

*Pietersen v. Dep't of State*,
    138 F.4th 552 (D.C. Cir. 2025) .............................................................. 10, 11, 15, 17

*Purdy v. Town of Greenburgh*,
    248 F. Supp. 2d 266 (S.D.N.Y. 2003) ....................................................................... 6

*Rai v. Biden*,
    567 F. Supp. 3d 180 (D.D.C. 2021) ........................................................................ 17

*Rajah v. Mukasey*,
    544 F.3d 427 (2d Cir. 2008) .................................................................................. 2, 21

*Rasmy v. Marriott Int'l Inc.*,
    952 F.3d 379 (2d Cir. 2020) ................................................................................6

*Salazar v. King*,
    822 F.3d 61 (2d Cir. 2016) ...........................................................................8, 23

*Sangster v. Rubio*,
    2026 WL 222316 (D. Nev. Jan. 28, 2026) ...............................................13, 19, 20

*Service v. Dulles*,
    354 U.S. 363 (1957) .............................................................................................22

*Shalala v. Guernsey Mem'l Hosp.*,
    514 U.S. 87 (1995) ...............................................................................................18

*Sharkey v. Quarantillo*,
    541 F.3d 75 (2d Cir. 2008) ....................................................................................2

*Shen v. U.S. Consulate Gen.*,
    866 F. Supp. 779 (S.D.N.Y. 1994) .................................................................15, 17

*Singh v. DOJ*,
    461 F.3d 290 (2d Cir. 2006) ................................................................................23

*Sugar Cane Growers Coop. of Fla. v. Veneman*,
    289 F.3d 89 (D.C. Cir. 2002)................................................................................21

*Sweet v. Sheahan*,
    235 F.3d 80 (2d Cir. 2000) ...............................................................2, 18, 19, 21

*Tate v. Pompeo*,
    513 F. Supp. 3d 132 (D.D.C. 2021).....................................................................17

*Texas v. United States*,
    524 F. Supp. 3d 598 (S.D. Tex. 2021)...................................................................8

*Thein v. Trump*,
    2025 WL 2418402 (D.D.C. Aug. 21, 2025)..........................................................17

*Top Choice Distribs. v. U.S. Postal Serv.*,
    138 F.3d 463 (2d Cir. 1998) ..............................................................................2, 7

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017) .............................................................................................24

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ...................................................................................3, 30, 31

*Trump v. Hawaii*,
   585 U.S. 667 (2018) ...............................................................................2, 9, 13, 25

*United States ex rel. Accardi v. Shaughnessy*,
   347 U.S. 260 (1954) ...........................................................................................22

*United States ex rel. Knauff v. Shaughnessy*,
   338 U.S. 537 (1950) .............................................................................................9

*United States v. Caceres*,
   440 U.S. 741 (1979) .......................................................................................2, 22

*United States v. Yuzary*,
   55 F.3d 47 (2d Cir. 1995) ..................................................................................18

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
   578 U.S. 590 (2016) .............................................................................................8

*Vo Van Chau v. Dep't of State*,
   891 F. Supp. 650 (D.D.C. 1995) .........................................................................15

*White v. Shalala*,
   7 F.3d 296 (2d Cir. 1993) ...................................................................................18

*Xian Yong Zeng v. Pompeo*,
   740 F. App'x 9 (2d Cir. 2018) ............................................................................10

*Zhang v. Slattery*,
   55 F.3d 732 (2d Cir. 1995) ............................................................................21, 22

## <u>Statutes</u>

5 U.S.C. § 553(a)(1) ..................................................................................................2, 21

5 U.S.C. § 553(b)(A) .................................................................................................2, 18

5 U.S.C. § 704 ................................................................................................................7

5 U.S.C. § 705 .............................................................................................3, 28, 30, 31

5 U.S.C. § 706 ..............................................................................................................21

5 U.S.C. § 706(2) ..........................................................................................................28

8 U.S.C. § 1104(a) ..................................................................................................................... 15

8 U.S.C. § 1152(a)(1)(A) ..................................................................................................... 2, 13, 14

8 U.S.C. § 1152(a)(1)(B) ........................................................................................................... 15

8 U.S.C. § 1182(a)(4) ..................................................................................................... 1, 2, 11, 12, 15

8 U.S.C. § 1201(g) ..................................................................................................... 1, 5, 15, 16

8 U.S.C. § 1202(a), (b) ................................................................................................................ 5

## Regulations

22 C.F.R. § 40.6 ..................................................................................................... 1, 5, 22

22 C.F.R. § 40.41 ....................................................................................................................... 5

22 C.F.R. § 42.61 ....................................................................................................................... 5

22 C.F.R. § 42.71 ....................................................................................................................... 5

22 C.F.R. § 42.81 ..................................................................................................... 1, 5, 16, 22

## Other Authorities

9 FAM 501.1-1(c) ....................................................................................................................... 5

9 FAM 504.1-2 ............................................................................................................................ 5

9 FAM 504.1-3(g) ....................................................................................................................... 23

9 FAM 504.9-2 ............................................................................................................................ 5

9 FAM 504.11-2(A) ..................................................................................................................... 5

Fed. R. Civ. P. 56(a) ................................................................................................................... 6

**INTRODUCTION**

Plaintiffs' motion asks the Court to invalidate two State Department materials—the January 14, 2026 public announcement and implementing cable attached to the Complaint as Exhibits A and B ("Ex. A" and "Ex. B")—and to grant sweeping facial, declaratory, injunctive, and operational relief.[1] But Plaintiffs' theory depends on treating those materials as if they themselves issued or denied visas, displaced the Immigration and Nationality Act ("INA")'s existing adjudicatory structure, and effected legal consequences apart from later consular action. They do not. As the governing statutes and regulations require, immigrant-visa applications continue to be processed through ordinary consular adjudications, and any refusal is entered under existing legal authorities in the individual case. *See* 8 U.S.C. §§ 1182(a)(4), 1201(g); 22 C.F.R. §§ 40.6, 42.81; Ex. B ¶¶ 4–5, 9.

That feature is dispositive at the threshold. Under the Administrative Procedure Act ("APA"), only final agency action is reviewable, and the challenged action itself must determine rights or obligations or produce legal consequences. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); *Sharkey v. Quarantillo*, 541 F.3d 75, 88 (2d Cir. 2008); *Top Choice Distribs. v. U.S. Postal Serv.*, 138 F.3d 463, 466 (2d Cir. 1998). Exhibit A is a public announcement, and Exhibit B operates only through later case-specific refusals entered by consular officers in individual adjudications. Ex. B ¶ 4. Any operative consequence therefore arises through the ordinary visa process, not from the January 14 materials in the abstract. And because Plaintiffs' claimed injuries

---

[1] Plaintiffs' motion is limited to Counts One, Three, and Seven. *See* Mem of Law in Support of Pls.' Mot. for Summ. J. ("Pls' MSJ") at 2 & n.2. Per Plaintiffs' brief, they seek summary judgment as to the January 14, 2026 announcement and implementing cable (Exhibits A and B), not the "Consular Processing Cable" (Exhibit C). *See id.* at 2, 24–25. Defendants therefore do not address Plaintiffs' other theories and preserve all arguments as to them, including that any non-statutory ultra vires theory fails and that the INA does not furnish a freestanding cause of action.

and requested relief remain tethered to concrete refusals and non-issuances in identified visa cases, consular nonreviewability independently forecloses review. *See Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024); *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 123 (2d Cir. 2009).

Even if review were available, Plaintiffs are not entitled to judgment on the merits. Exhibits A and B do not amend the statutory definition of public charge, create a freestanding nationality-based ground of inadmissibility, establish a parallel refusal mechanism, or replace the consular officer as the statutory decisionmaker. Rather, they operate through the same issuance-or-refusal framework that Congress enacted. *See* 8 U.S.C. §§ 1152(a)(1)(A), 1182(a)(4), 1201(g); *Trump v. Hawaii*, 585 U.S. 667, 695 (2018). Nor were those materials required to undergo notice and comment: they are interpretive, policy, and procedural guidance rather than legislative rules, and, in any event, they concern a foreign-affairs function of the United States. *See* 5 U.S.C. § 553(a)(1), (b)(A); *Sweet v. Sheahan*, 235 F.3d 80, 91 (2d Cir. 2000); *Rajah v. Mukasey*, 544 F.3d 427, 437 (2d Cir. 2008). Plaintiffs' *Accardi* theory fails for the same reason: Exhibits A and B do not disregard 22 C.F.R. §§ 40.6 or 42.81 or the Department's issue-or-refuse framework; any refusal still must be entered under existing statutory authority in the individual case. *See Montilla v. INS*, 926 F.2d 162, 167–68 (2d Cir. 1991); *United States v. Caceres*, 440 U.S. 741, 752–55 (1979).

Finally, Plaintiffs' requested relief far exceeds what this case could support even on their own theory. Relief against Exhibits A and B would not itself entitle any plaintiff or family member to a visa; further individualized adjudication would still be required, and visa outcomes would still turn on applicant-specific determinations under the INA. APA section 705 does not authorize the Court to take over the operation of the immigrant-visa system, and any injunction must remain within traditional equitable limits and be tailored to provide complete relief to the plaintiffs before the Court. *See Trump v. CASA, Inc.*, 606 U.S. 831, 841–47, 852–54 (2025); *Califano v. Yamasaki*,

442 U.S. 682, 702 (1979). For these reasons, the Court should grant Defendants' motion for partial summary judgment and deny Plaintiffs' cross-motion for partial summary judgment.

## BACKGROUND

### A. Statutory and Regulatory Framework

The INA and implementing regulations govern immigrant-visa adjudications. An intending immigrant residing abroad generally applies through the ordinary consular process, under which the applicant submits the required materials and then appears before a consular officer at a designated consular post. *See* 8 U.S.C. §§ 1202(a), (b); 22 C.F.R. §§ 42.61, 42.71; 9 FAM 501.1-1(c), 504.1-2.

That framework assigns the consular officer the adjudicatory role in individual immigrant-visa cases. Once an application has been properly completed and executed before a consular officer, the officer must either issue the visa or refuse it under the governing law. *See* 8 U.S.C. § 1201(g); 22 C.F.R. §§ 40.6, 42.81(a); 9 FAM 504.9-2, 504.11-2(A). A visa may be refused only on a ground set out in the law or implementing regulations, and when a visa is not issued, that result is reflected through the existing refusal process in the individual case. *See* 22 C.F.R. §§ 40.6, 42.81(b); 9 FAM 504.11-2(A).

One such ground of inadmissibility is the public-charge provision, which applies when, "in the opinion of the consular officer," the applicant is "likely at any time to become a public charge." 8 U.S.C. § 1182(a)(4)(A). The regulations address that determination and related affidavit-of-support requirements. *See* 22 C.F.R. § 40.41.

### B. The January 14 Announcement and Implementing Cable

Plaintiffs' motion concerns two January 14, 2026 Department materials. The first, Exhibit A, is a public-facing announcement titled "Immigrant Visa Processing Updates for Nationalities

at High Risk of U.S. Public Benefits Reliance." Ex. A. The announcement states that the Department was conducting "a full review" of screening and vetting policies and that, effective January 21, 2026, the Department had "paused all visa issuances" to immigrant-visa applicants who are nationals of specified countries. *Id.*

The second, Exhibit B, is a January 14, 2026 cable from the Secretary of State to all consular posts, with the subject line "Pausing Immigrant Visa Issuances for Nationalities at High Risk of Public Charge." Ex. B. The cable identifies itself as an "action request" and directs that, effective January 21, 2026, consular officers "must refuse under Section 221(g)" immigrant-visa applicants from the listed countries who have not otherwise been refused under another ground of ineligibility. *Id.* ¶ 2. At the same time, the cable instructs that interview appointments for affected applicants "should not be canceled," that consular officers should "continue to adjudicate all immigrant visa cases," and that officers should "carefully evaluate all potentially applicable grounds of eligibility," including whether an applicant is inadmissible under INA § 212(a)(4). *Id.* ¶ 4. The cable also provides that previously issued visas are not to be revoked pursuant to the guidance and remain valid for travel. *Id.* ¶ 9.

## C.  Implementation Through Individual Consular Adjudications

Implementation of the challenged materials occurs through the ordinary consular adjudicatory process. Under the governing regulations and FAM provisions, immigrant-visa applicants continue to submit applications, appear for interviews, and receive case-specific adjudications by consular officers. *See* 22 C.F.R. §§ 42.61, 42.81; 9 FAM 501.1-1(c), 504.9-2, 504.11-2(A). Exhibit B likewise contemplates continued case-specific consular adjudication rather than a freestanding Department-level disposition. Ex. B ¶ 4.

When a visa is not issued, the operative consequence is entered through the existing refusal

mechanism in the individual case. Exhibit B instructs officers first to assess other potentially applicable grounds of ineligibility; if an officer determines that the applicant is inadmissible under the public-charge ground, the officer should refuse under INA § 212(a)(4), and if the officer has not refused the applicant under another ground, the officer should enter a refusal under INA § 221(g). *Id.* ¶¶ 4–5. The same is true for already approved but unprinted cases: the cable instructs the consular officer to reopen the case and enter a § 221(g) refusal, while providing that previously issued visas are not revoked and remain valid for travel. *Id.* ¶ 9.

The January 14 announcement and implementing cable thus function through later, case-specific action by consular officers in individual adjudications, using the existing issuance-or-refusal framework described at 22 C.F.R. § 42.81 and executed at the consular post.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if a reasonable jury could return a verdict for the nonmoving party, and it is "material" only if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party demonstrates the absence of a genuine dispute of material fact, the burden shifts to the nonmovant to identify specific facts showing a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). The nonmovant may not rely on allegations in the pleadings but must come forward with evidence sufficient to permit a reasonable factfinder to return a verdict in its favor. *Id.* at 324.

In the Second Circuit, courts must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," but "conclusory

statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." *Rasmy v. Marriott Int'l Inc.*, 952 F.3d 379, 383 (2d Cir. 2020); *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 151 (2d Cir. 2007) (citing *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 142 (2d Cir. 2000)). The obligation to credit the nonmovant's evidence does not require courts to accept speculation or unsupported assertions. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). Where the record evidence is so lacking that no reasonable jury could credit the nonmovant's version of events, summary judgment is appropriate. *Jeffreys v. City of New York*, 426 F.3d 549, 554–55 (2d Cir. 2005).

Questions of statutory interpretation and reviewability under the APA are issues of law appropriate for resolution at summary judgment. *6801 Realty Co., LLC v. U.S. Citizenship & Immigr. Servs.*, 719 F. App'x 58, 59–60 (2d Cir. 2018); *Purdy v. Town of Greenburgh*, 248 F. Supp. 2d 266, 268 (S.D.N.Y. 2003) Because Plaintiffs challenge visa-processing directives on purely legal grounds, including final agency action and reviewability, those issues may be resolved as a matter of law.

## ARGUMENT

### A. Plaintiffs' APA Challenge Fails at the Threshold.

#### 1. The Challenged Materials Are Not Final Agency Action.

Under the APA, only "final agency action" is reviewable. 5 U.S.C. § 704. In *Bennett v. Spear*, the Supreme Court held that agency action is final only if it both "mark[s] the consummation of the agency's decisionmaking process" and is an action "by which rights or obligations have been determined, or from which legal consequences will flow." 520 U.S. 154, 177–78 (1997). The Second Circuit applies that standard pragmatically, asking "whether the agency has completed its decisionmaking process, and whether the result of that process is one

6

that will directly affect the parties." *Sharkey v. Quarantillo*, 541 F.3d 75, 88 (2d Cir. 2008). But whatever the practical setting, *Bennett* still requires that the challenged action itself fix legal consequences. Where the agency has not yet "arrived at a definitive position" that "inflicts an actual, concrete injury," there is no final agency action. *Top Choice Distribs. v. U.S. Postal Serv.*, 138 F.3d 463, 466 (2d Cir. 1998) (quoting *Darby v. Cisneros*, 509 U.S. 137, 144 (1993)).

That requirement is not satisfied here. Exhibit A is a public-facing announcement. It states that the Department was conducting a review and had "paused" immigrant-visa issuances for applicants of specified nationalities. But Exhibit A does not itself adjudicate any application, issue or refuse any visa, alter any applicant's legal status, or itself enter the operative legal consequence of which Plaintiffs complain. It is a public processing update, not a case-specific adjudication.

Exhibit B likewise does not enter a refusal or conclusively determine any application. Although it contains mandatory instructions to posts, it operates through later consular action in individual cases. The cable directs officers how to proceed within ongoing adjudications, including to assess other possible grounds first and, where no other ground applies, to enter a case-specific § 221(g) refusal in the individual case. Ex. B ¶¶ 4–5, 9. The legal consequence of which Plaintiffs complain thus arises only when a consular officer records a refusal in a specific adjudication.

That feature is dispositive under *Bennett*. The relevant question is whether Exhibits A or B themselves determine rights or obligations or produce legal consequences. They do not. The January 14 announcement does not adjudicate. And the January 14 cable, while directing how posts are to proceed, still leaves the actual legal consequence to later consular action within the ordinary statutory process. Even for already approved but unprinted cases, the cable instructs the consular officer to reopen the case and enter a § 221(g) refusal. *Id.* ¶ 9. The consequence still arises through the individual adjudicatory mechanism, not from the cable itself.

Plaintiffs' finality authorities involved agency actions that themselves fixed legal consequences. In *Bennett* and *Hawkes*, the challenged actions altered the legal regime and carried immediate legal effect. *See Bennett*, 520 U.S. at 178; *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598–99 (2016). Likewise, in *Salazar v. King*, the challenged agency decision immediately left borrowers subject to collection activity and definitively denied notice. 822 F.3d 61, 82–83 (2d Cir. 2016). In *New York v. Trump*, the challenged plan granted "agreed-upon levels of access" to Treasury systems. 767 F. Supp. 3d 44, 76, 78 (S.D.N.Y. 2025), *modified*, 784 F. Supp. 3d 619 (S.D.N.Y. 2025). In *African Communities Together*, the challenged guidance purported to alter the procedures governing how Immigration Judges could dispose of pending cases. 799 F. Supp. 3d 362, 387 (S.D.N.Y. 2025). And in *Oregon Natural Desert* and *Texas*, the challenged directives put the complained-of policy into effect. *See Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 985–86 (9th Cir. 2006); *Texas v. United States*, 524 F. Supp. 3d 598, 642–43 (S.D. Tex. 2021). Here, by contrast, Exhibits A and B do not issue or refuse visas, bind the government to a changed legal position as to any identified application, or otherwise alter the legal regime apart from later consular adjudications. Because the challenged materials operate only through later case-specific consular decisions, they are not reviewable final agency action.

### 2. Consular Nonreviewability Independently Bars Review to the Extent that Plaintiffs' Claims Are Derivative of Concrete Consular Decisions.

Even if the challenged materials could be regarded as final agency action, Plaintiffs' APA challenge would still fail because it remains tethered to consular visa decisions. For more than a century, the Supreme Court has recognized that the admission and exclusion of foreign nationals is a "fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (quoting *Fiallo v. Bell*, 430 U. S. 787, 792 (1977)). When Congress delegates admission decisions to executive officers,

8

"the action of an executive officer to admit or to exclude an alien is final and conclusive." *Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024) (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)). And because the INA does not authorize judicial review of a consular officer's denial of a visa, "as a rule, the federal courts cannot review those decisions." *Id.* The Second Circuit has repeatedly applied that principle. *See Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 123 (2d Cir. 2009); *Burrafato v. Dep't of State*, 523 F.2d 554, 556–57 (2d Cir. 1975); *Xian Yong Zeng v. Pompeo*, 740 F. App'x 9, 11 (2d Cir. 2018).

That rule independently bars review to the extent that Plaintiffs' asserted injuries and requested relief derive from concrete consular refusals or non-issuances in identified visa cases. Plaintiffs' motion and supporting declarations describe completed interviews, actual refusals, and ongoing non-issuances allegedly flowing from the January 14 announcement and implementing cable. Pls.' MSJ at 8 (citing declarations). As to those plaintiffs and those claims, the requested relief would matter only because it would strip away the asserted basis on which visas have been refused or withheld. In that respect, this case is not severed from consular adjudications; it is tethered to them.

Plaintiffs cannot evade that conclusion by recasting the case as a challenge to overarching Department policy rather than to consular decisions. Courts have repeatedly rejected efforts to avoid consular nonreviewability by repackaging substantive objections to visa denials as challenges to surrounding policy or procedure. For example, in *Melody Pak v. Biden*, the Seventh Circuit held that the plaintiffs could not shield their claims from consular nonreviewability by "repackaging [their] substantive complaints as procedural objections" where the alleged injury existed only because visas had been denied. 91 F.4th 896, 900–02 (7th Cir. 2024) (quoting *Doe v. McAleenan*, 926 F.3d 910, 911 (7th Cir. 2019)). The same court described a related challenge as

9

an indirect attack on the visa denial itself. *Matushkina v. Nielsen*, 877 F.3d 289, 295 (7th Cir. 2017). And in *Garcia v. Baker*, the court rejected the plaintiffs' effort to challenge a State Department legal position rather than the refusal, explaining that courts have consistently rejected attacks on consular decisions, "whatever form they take." 765 F. Supp. 426, 427–28 (N.D. Ill. 1990). The same reasoning applies insofar as Plaintiffs seek to invalidate Exhibits A and B because those materials allegedly drove concrete refusals or non-issuances in individual visa cases. As to those claims, Plaintiffs cannot evade the consular nonreviewability doctrine by restyling an objection to visa decisions as a challenge to surrounding policy or procedure.

*Pietersen* does not compel a broader result. There, the D.C. Circuit emphasized that the plaintiffs had abandoned any challenge to prior visa denials as unreviewable and confined their appeal to the improper future application of allegedly erroneous guidance. *Pietersen v. Dep't of State*, 138 F.4th 552, 560–61 (D.C. Cir. 2025). On that understanding, the court permitted a forward-looking APA claim for prospective relief, invoking *Bricklayers*' statement that courts may review prospective challenges to policies governing consular decisions "to assure that the executive departments abide by the legislatively mandated procedures." *Id.* at 560 (quoting *Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 761 F.2d 798, 801 (D.C. Cir. 1985)). This case is different. Plaintiffs' motion is not limited to a genuinely forward-looking challenge divorced from concrete consular outcomes. Instead, substantial portions of their claims remain derivative of completed consular adjudications and ongoing non-issuances allegedly flowing from Exhibits A and B. *See* Pls.' MSJ at 8. To that extent, *Pietersen*'s narrow opening for a truly forward-looking challenge does not apply.

Nor do Plaintiffs fit within the narrow *Mandel/Muñoz* exception. That exception permits only a circumscribed inquiry when a visa denial allegedly burdens the constitutional rights of a

10

U.S. citizen, and even then only to determine whether the Executive has provided a "facially legitimate and bona fide reason" for the denial. *Muñoz*, 602 U.S. at 908; *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972); *Am. Acad. of Religion*, 573 F.3d at 125. If such a reason is given, the inquiry is at an end. *Muñoz*, 602 U.S. at 908. Plaintiffs do not seek that narrow form of constitutional review. Instead, they seek broad invalidation of the January 14 announcement and implementing cable because those materials have been and will be used in visa adjudications. That goes far beyond the limited review that *Mandel* and *Muñoz* permit. Because Plaintiffs' APA challenge remains tied to refusals and non-issuances carried out through individual consular adjudications, the consular nonreviewability doctrine independently forecloses judicial review.

## B. Even If Review Were Available, Plaintiffs' APA Merits Theories Fail.

### 1. Exhibits A and B Do Not Conflict with 8 U.S.C. § 1182(a)(4).

Section 1182(a)(4) renders inadmissible any noncitizen who, "in the opinion of the consular officer," is "likely at any time to become a public charge." 8 U.S.C. § 1182(a)(4)(A). The statute further directs that the adjudicator must consider specified factors—including the applicant's age, health, family status, assets and financial resources, and education and skills—as part of an individualized predictive judgment regarding the applicant's likelihood of becoming a public charge. *Id.* § 1182(a)(4)(B). Defendants do not dispute that statutory premise. The statute assigns the determination to the consular officer and requires a case-specific assessment based on the applicant's circumstances at the time of adjudication.

Exhibits A and B do not alter that statutory scheme. Exhibit A is a public announcement; it does not itself adjudicate any visa application. Exhibit B is the implementing cable, but it too operates through ongoing consular adjudications. It preserves the consular officer's role in applying existing inadmissibility grounds in individual cases and, where a visa is not issued,

11

channels the operative consequence through the INA's existing refusal mechanism. Ex. B ¶¶ 2, 4–5, 9. In other words, Exhibits A and B do not make the operative public-charge determinations or effect visa refusals.

Plaintiffs' contrary theory overreads the January 14 public announcement and implementing cable. Neither Exhibit A nor Exhibit B amends the statutory definition of public charge, eliminates the factors that Congress required officers to consider, changes the statutory assignment of the determination to the consular officer, or creates a freestanding self-executing refusal regime outside ordinary adjudication. Exhibit A is a public statement announcing a pause. Exhibit B is more specific and uses mandatory language, but the operative public-charge inquiry remains embedded in later, case-specific consular adjudication rather than being made automatically by Department-level documents themselves. Ex. B ¶¶ 2, 4–5, 9.

Nor do the authorities on which Plaintiffs rely establish any conflict with § 1182(a)(4). Plaintiffs invoke *New York v. DHS* and *Make the Road v. Pompeo* for the proposition that public-charge determinations must be individualized and based on a totality-of-the-circumstances analysis. Pls.' MSJ at 12-13 (citing *New York v. Dep't of Homeland Sec.*, 969 F.3d 42, 70–81 (2d Cir. 2020); *Make the Rd. N.Y. v. Pompeo*, 475 F. Supp. 3d 232, 244–45, 259 (S.D.N.Y. 2020)). Defendants do not dispute that proposition; it follows from the statute itself. The relevant question here is different—whether Exhibits A and B displace that framework. They do not. Nothing in *New York* or *Make the Road* suggests that Department-level materials violate § 1182(a)(4) when they leave the operative inadmissibility determination to later case-specific consular adjudication under ordinary INA procedures. Ex. A; Ex. B ¶¶ 2, 4–5, 9.

Plaintiffs' reliance on *Sangster v. Rubio*, 2026 WL 222316 (D. Nev. Jan. 28, 2026), fares no better. To the extent that *Sangster* accepted Plaintiffs' characterization that the challenged

12

framework effectively rendered the statutory factors irrelevant, *see id.* at *5, that conclusion requires a finding that Exhibits A and B supplanted the officer-specific inquiry required by § 1182(a)(4). But those materials do not do so. Instead, they operate through ordinary, case-specific consular adjudication under existing INA mechanisms. Ex. A; Ex. B ¶¶ 2, 4–5, 9. Plaintiffs therefore have not shown a conflict between Exhibits A and B and § 1182(a)(4).

### 2.   Exhibits A and B Do Not Violate 8 U.S.C. § 1152(a)(1)(A).

Section 1152(a)(1)(A) provides that "no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence." 8 U.S.C. § 1152(a)(1)(A). Defendants do not dispute that command. But § 1152(a)(1)(A) cannot be read in isolation from the rest of the INA. As the Supreme Court has explained, §§ 1182 and 1152 "operate in different spheres": § 1182 "defines the universe of aliens who are admissible into the United States (and therefore eligible to receive a visa)," while § 1152(a)(1)(A) "prohibits discrimination in the allocation of immigrant visas based on nationality and other traits." *Trump v. Hawaii*, 585 U.S. 667, 695 (2018). Section 1152(a)(1)(A) thus does not repeal inadmissibility grounds, displace § 1182(a)(4), or modify § 1201(g). Reading it to do so would convert an antidiscrimination rule governing visa allocation into a silent override of the INA's broader adjudicatory framework.

Properly understood, the challenged materials do not establish a freestanding nationality bar to visa issuance outside that framework. Exhibit A announces a temporary "pause," and Exhibit B directs posts how to proceed within ongoing adjudications under existing INA authorities. Ex. A; *see* Ex. B ¶¶ 2, 4–6, 9. As Sections B.3 and B.4 explain, the operative legal consequence therefore arises, if at all, only through ordinary consular adjudications under the framework that Congress enacted. Section 1152(a)(1)(A) does not transform every executive instruction bearing

13

on nationality-linked risk into an independent violation, still less into a provision that nullifies the inadmissibility and refusal provisions that Congress left in place.

*Legal Assistance for Vietnamese Asylum Seekers* ("*LAVAS*") *v. Dep't of State* does not compel a different result. There, the D.C. Circuit addressed a materially different policy: the State Department's refusal to process the visa applications of screened-out Vietnamese migrants in Hong Kong, even as nationals of other countries continued to be processed there. 45 F.3d 469, 472–74 (D.C. Cir. 1995), *vacated*, 519 U.S. 1 (1996). That case did not hold that § 1152(a)(1)(A) overrides the INA's inadmissibility provisions or forbids executive guidance that operates through existing consular adjudications and the refusal mechanism that Congress prescribed. And whatever force Plaintiffs attribute to the 1995 panel decision cannot be divorced from what followed: Congress enacted § 1152(a)(1)(B), the Supreme Court vacated the judgment, and the D.C. Circuit later held that the statutory and APA challenges to that consular-processing policy were unreviewable in light of Congress's clarification that "[n]othing in this paragraph shall be construed to limit the authority of the Secretary of State to determine the procedures for the processing of immigrant visa applications or the locations where such applications will be processed." 8 U.S.C. § 1152(a)(1)(B); *Dep't of State v. LAVAS*, 519 U.S. 1 (1996); *LAVAS v. Dep't of State*, 104 F.3d 1349, 1350 (D.C. Cir. 1997).

*Vo Van Chau* and *Olsen* are likewise distinguishable. *Vo Van Chau* involved the same Hong Kong screening-and-processing policy, later extended to Laotian and Cambodian migrants; it thus rose or fell with *LAVAS*'s treatment of a direct consular venue restriction, not with any theory that § 1152(a)(1)(A) silently cancels the INA's inadmissibility scheme or forbids executive guidance implemented through ordinary adjudication. *See Vo Van Chau v. Dep't of State*, 891 F. Supp. 650, 652–53, 655 (D.D.C. 1995). *Olsen*, for its part, involved consular "profiles" that, on

14

their face, required visa adjudication based on race, ethnicity, national origin, economic class, and physical appearance; the court held those profiles unlawful because they made generalizations "principally on the basis of race, ethnicity, and national origin." *Olsen v. Albright*, 990 F. Supp. 31, 33 (D.D.C. 1997). That is a far cry from guidance carried out through the INA's existing adjudicatory scheme. Plaintiffs thus ask the Court to make § 1152(a)(1)(A) do far more than its text or context permits. Because the challenged materials do not create a freestanding nationality-based issuance rule outside the INA framework, Plaintiffs are not entitled to summary judgment on their § 1152(a)(1)(A) theory.

### 3. Exhibits A and B Are Consistent with 8 U.S.C. §§ 1104(a) and 1201(g).

Sections 1104(a) and 1201(g) do not support Plaintiffs' effort to treat Department-level guidance as if it itself granted or refused visas. Those provisions preserve the consular officer's role in the issuance-or-refusal decision, and Defendants do not dispute that role. *See Pietersen*, 138 F.4th at 556 (explaining that the INA grants consular officers "exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations"); *Shen v. U.S. Consulate Gen.*, 866 F. Supp. 779, 780 (S.D.N.Y. 1994); *see also* 8 U.S.C. § 1202(b) ("All immigrant visa applications shall be reviewed and adjudicated by a consular officer."). But it does not follow that every Department-wide instruction bearing on visa processing is unlawful. The question here is narrower: whether Exhibits A and B themselves grant or refuse visas, or otherwise displace the consular officer from the issuance-or-refusal function that the INA assigns. They do neither.

Exhibits A and B instead operate through the existing adjudicatory framework. Exhibit A is a public announcement; it does not itself issue or refuse any visa. Exhibit B likewise contemplates continued consular adjudications. It directs that interview appointments "should not

be canceled" and that officers should continue adjudicating cases while evaluating potentially applicable grounds of eligibility. Ex. B ¶ 4. Where an officer finds public-charge inadmissibility under § 1182(a)(4), the officer should refuse on that ground; otherwise, after assessing other grounds and making case notes, officers should "then refuse the applicant 221(g)." *Id.* If an officer later concludes that a § 1182(a)(4) refusal has been overcome, the cable directs the officer to refuse the visa under § 221(g). *Id.* ¶ 5. Thus, whatever Plaintiffs' objection to the January 14 materials, the materials do not themselves effect a visa refusal; any refusal is entered in the individual case by the consular officer under the existing framework. *See* 22 C.F.R. § 42.81(a).

Plaintiffs' contrary authorities involved materially different alleged conduct: policies said to halt issuance, stop adjudication, or treat an entry suspension as itself making applicants visa-ineligible. *See Thein v. Trump*, 2025 WL 2418402, at *2–3, 14–15 (D.D.C. Aug. 21, 2025); *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 234–35 (D.D.C. 2021), *rev'd*, 104 F.4th 920 (D.C. Cir. 2024); *Gomez v. Trump*, 485 F. Supp. 3d 145, 193–94 (D.D.C. 2020); *Rai v. Biden*, 567 F. Supp. 3d 180, 194 (D.D.C. 2021), *rev'd*, 104 F.4th 920 (D.C. Cir. 2024); *Tate v. Pompeo*, 513 F. Supp. 3d 132, 144–45 (D.D.C. 2021); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 316 (D.D.C. 2020). Here, by contrast, Exhibit B directs posts to continue interviews and continue adjudicating immigrant-visa cases while evaluating other potentially applicable grounds of eligibility, and any non-issuance is still reflected through an officer-entered refusal in the individual case. Ex. B ¶¶ 4–5, 9. That system does not conflict with *Pietersen* or *Shen*. Those cases identify the consular officer as the visa decisionmaker but do not hold that supervisory guidance is unlawful when the officer continues to make the visa decision in the individual case. *Pietersen*, 138 F.4th at 556; *Shen*, 866 F. Supp. at 780. Plaintiffs therefore are not entitled to summary judgment on their §§ 1104(a) and 1201(g) theory.

### 4. The INA's Structure Confirms that Exhibits A and B Operate Within, Not Outside, Congress's Adjudicatory Framework.

As explained above in sections B.1 through B.3, the January 14 announcement and implementing cable operate within, not outside, the statutory scheme that Congress enacted. Congress specified the substantive standards governing immigrant-visa adjudication, including the public-charge ground; prohibited nationality discrimination in visa issuance; and required that visas be issued or refused through consular adjudication. Exhibits A and B do not alter that architecture. They do not create a new ground of inadmissibility, establish a parallel refusal mechanism, or substitute a different decisionmaker for the consular officer. They operate only through the individualized adjudicatory machinery that the INA supplies.

That is the structural distinction that defeats Plaintiffs' theory. Internal executive coordination about how officers should implement congressionally prescribed standards is not the same thing as displacement of the INA's adjudicatory framework. So long as the governing standards are Congress's standards and the issuance or refusal remains the consular officer's act, the congressionally prescribed framework remains intact. That is the case here.

### C. The January 14 Public Announcement and Implementing Cable Did Not Require Notice and Comment.

#### 1. Exhibits A and B Are Not Legislative Rules.

Under the APA, notice-and-comment procedures apply to legislative rules, but not "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). In this Circuit, legislative rules "create new law, rights, or duties, in what amounts to a legislative act." *Sweet v. Sheahan*, 235 F.3d 80, 91 (2d Cir. 2000); (quoting *White v. Shalala*, 7 F.3d 296, 303 (2d Cir. 1993)). Interpretive rules, by contrast, merely "clarify an existing statute or regulation." *Id.* (quoting *United States v. Yuzary*, 55 F.3d 47, 51 (2d

17

Cir. 1995)). They are issued to advise the public of the agency's construction of the statutes and rules that it administers. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015) (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995)). The D.C. Circuit's familiar *American Mining* framework, which the Second Circuit cited approvingly in *Sweet*, asks whether the agency action itself supplies the legal basis for enforcement, was promulgated as a binding legislative measure, or "effectively amends a prior legislative rule." *Sweet*, 235 F.3d at 91 (citing *Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1110–12 (D.C. Cir. 1993)).

Under those standards, Exhibits A and B are not legislative rules. They do not create a new ground of inadmissibility, establish a freestanding refusal authority, or amend any statute or regulation. The January 14 public announcement is a public processing update, and the January 14 cable, while more specific, operates only through the INA's adjudicatory framework. Ex. B ¶ 4. Whatever policy judgments Exhibits A and B reflect, they do not themselves carry the force of law independent of that framework. The operative legal consequence arises only when a consular officer, in an individual case, enters a refusal under existing statutory authority. That matters under *American Mining*: in the absence of Exhibits A and B, the legal basis for issuance, refusal, and further processing would still come from the INA and its implementing regulations, not from the January 14 materials themselves. *See Am. Mining Cong.*, 995 F.2d at 1112. Nor did the Department purport to invoke general legislative authority or promulgate any new rule in the Code of Federal Regulations. Plaintiffs' disagreement is thus with the Department's interpretation and administration of existing law, not with a new lawmaking act.

Plaintiffs' contrary theory depends on treating Exhibits A and B as if they displaced the ordinary adjudicatory regime and suspended regulations such as 22 C.F.R. §§ 40.6 and 42.81. But that premise simply repackages Plaintiffs' merits theory. As Section B explains, Exhibits A and B

18

operate through preexisting statutory and regulatory channels, with any refusal entered under existing INA authorities in the individual case. Guidance does not become legislative merely because it is framed in mandatory terms to agency subordinates. The relevant question is whether it has legal effect—whether it effectively amends prior law or, absent the guidance, there would be no adequate legislative basis for agency action. *Sweet*, 235 F.3d at 91. An ordinary dispute over whether guidance is consistent with existing law is not enough to transform guidance into a legislative rule.

The cases on which Plaintiffs rely do not compel a different result. *Sweet*, *Saranac*, and *American Mining* all recognize the same basic distinction between rules that create binding legal obligations and rules that interpret or implement existing law. *Sweet*, 235 F.3d at 91; *N.Y. State Elec. & Gas Corp. v. Saranac Power Partners, L.P.*, 267 F.3d 128, 131 (2d Cir. 2001); *Am. Mining Cong.*, 995 F.2d at 1112. And to the extent that *Make the Road* or *Sangster* treated different agency actions as likely substantive or contrary to law, those decisions turned on the premise that the challenged measures there altered the governing legal standard or supplanted the statutory framework. *Make the Rd.*, 475 S. Supp. 3d at 263–64; *Sangster*, 2026 WL 222316, at *5, *7. Here, by contrast, Exhibits A and B do not create a new legal standard; they operate within the existing one. Because the challenged materials are interpretive, policy, and procedural guidance rather than legislative rules, they were not subject to notice and comment.

### 2. Even If Exhibits A and B Were Legislative Rules, the Foreign-Affairs Exception Would Apply.

Even if Exhibits A and B could be characterized as legislative rules, the APA's foreign-affairs exception independently defeats Plaintiffs' claim. Section 553(a)(1) exempts matters "to the extent that there is involved . . . a military or foreign affairs function of the United States." 5 U.S.C. § 553(a)(1). The Second Circuit has cautioned that the exception should be construed

narrowly and not be allowed to swallow immigration rulemaking merely because immigration often implicates foreign affairs. *Zhang v. Slattery*, 55 F.3d 732, 744 (2d Cir. 1995). But the exception applies where public rulemaking would provoke "definitely undesirable international consequences." *Id.*; *Rajah v. Mukasey*, 544 F.3d 427, 437 (2d Cir. 2008).

That standard is satisfied here. The January 14 public announcement and implementing cable concern overseas visa screening and processing, country-specific consular treatment, and the timing and coordination of the United States' screening and vetting of foreign nationals abroad. Public notice-and-comment rulemaking on those measures would risk precisely the kinds of "undesirable consequences" that *Rajah* identified: it could reveal sensitive screening or vetting rationales, impair relations with foreign governments by forcing public debate over country-specific risk judgments, and delay implementation of measures tied to ongoing external screening and vetting concerns. 544 F.3d at 437. This case therefore presents more than a rule that merely touches foreign affairs in some indirect way; Exhibits A and B concern the conduct of visa operations abroad and the United States' dealings with foreign nationals and foreign states in the consular context.

To be sure, the Court should not read the foreign-affairs exception so broadly that every immigration-related measure is exempt from § 553. *See Zhang*, 55 F.3d at 744; *City of New York v. Permanent Mission of India*, 618 F.3d 172, 202 (2d Cir. 2010). But even under that narrower approach, the exception applies here. Exhibits A and B are directed to consular posts abroad, govern the handling of visa applications by foreign nationals outside the United States, and implicate country-specific screening, vetting, and diplomatic consequences of the sort that the foreign-affairs exception exists to protect. For that independent reason as well, Plaintiffs' notice-and-comment claim fails.

20

### 3.    Alternatively, Any Procedural Error Was Harmless.

Finally, even assuming notice and comment was required, the APA directs reviewing courts to take "due account . . . of the rule of prejudicial error." 5 U.S.C. § 706. Courts are rightly reluctant to treat a total evasion of § 553 as harmless where an agency has in fact used binding rulemaking without the required process. *See Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 96–97 (D.C. Cir. 2002); *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014). But that principle does not help Plaintiffs here. Although Plaintiffs say they were deprived of the opportunity to comment, they identify no concrete factual submission, technical comment, or alternative proposal that plausibly could have changed the Department's interpretation of existing visa statutes and regulations or its foreign-affairs judgments and vetting determinations. Because any operative consequence turns on subsequent individual adjudications under existing law, Plaintiffs cannot show that the absence of notice and comment caused the sort of prejudice that would warrant vacatur. Any procedural error was therefore harmless.

### D.  Plaintiffs' *Accardi* Claim Fails.

The *Accardi* doctrine requires an agency to follow its own binding regulations and mandatory procedures. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954); *Service v. Dulles*, 354 U.S. 363, 388 (1957). The Second Circuit has likewise recognized, relying on *Morton v. Ruiz*, 415 U.S. 199 (1974), that the doctrine can extend to agency procedures affecting individual rights even when the relevant command is not a formal regulation published in the Code of Federal Regulations. *See Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991); *Morton*, 415 U.S. at 235. But the doctrine is not a free-standing mechanism for enforcing every internal manual, every generalized agency practice, or every litigant's preferred reading of agency guidance. *See United States v. Caceres*, 440 U.S. 741, 752–55 (1979). The relevant question is

21

whether Plaintiffs have identified a binding regulation or mandatory procedure affecting their rights or interests, rather than merely internal agency operations, that the Department failed to follow. *Montilla*, 926 F.2d at 167–68; *Caceres*, 440 U.S. at 755.

They have not. Plaintiffs principally invoke 22 C.F.R. §§ 40.6 and 42.81, but when properly read, Exhibits A and B do not conflict with those regulations. Section 40.6 provides that a visa may be refused only on a ground set out in law or implementing regulations. That is how the January 14 announcement and implementing cable operate: any refusal is entered under existing INA authorities, including § 221(g). Section 42.81 likewise requires the consular officer to issue or refuse a visa once the application is properly completed and executed. Exhibits A and B do not establish a third legal status outside that issue-or-refuse framework; they contemplate continued adjudication and, where no visa is issued, a refusal under existing law. An ordinary disagreement about whether those refusals are substantively justified is not an *Accardi* violation.

The same is true of the FAM provisions on which Plaintiffs rely. The cited provisions do not create an independently enforceable bar on Department-level guidance. To the contrary, the FAM's issue-or-refuse instructions are fully consistent with officer-entered refusals under § 221(g) when a visa is not issued at the close of the ordinary issuance window. The FAM language stating that an officer may not "temporarily refuse, suspend, or hold the visa for future action" does not prohibit the officer from entering a formal refusal under existing statutory authority while additional review continues; it confirms that there is no informal third status outside issuance or refusal. 9 FAM 504.1-3(g). Exhibits A and B preserve that binary structure by directing that the legal consequence be recorded through a formal refusal.

Nor do Exhibits A and B themselves identify any binding mandatory command that displaces the ordinary adjudicatory role of consular officers or contradicts the mandatory

22

provisions that Plaintiffs invoke. Exhibit A is a public announcement or processing update. Exhibit B, while directing posts to refuse certain cases under § 221(g), still contemplates continued case-specific adjudication by consular officers. Ex. B ¶ 4. Plaintiffs may contend that those instructions are inconsistent with the INA, the regulations, or the FAM. But that is a merits dispute over whether the January 14 announcement and implementing cable are lawful, not a showing that the Department ignored a separate mandatory procedure cognizable under *Accardi*.

Plaintiffs' reliance on *Montilla*, *Singh*, *Salazar*, and *Morton* is therefore misplaced. *Montilla*, *Singh*, and *Morton* involved alleged departures from specific regulations or mandatory procedures governing the claimant's adjudication or rights. *Montilla*, 926 F.2d at 169–70; *Singh v. DOJ*, 461 F.3d 290, 296–97 (2d Cir. 2006); *Morton*, 415 U.S. at 235–36. *Salazar v. King*, meanwhile, involved an asserted failure to comply with mandatory regulatory duties, not a disagreement over the meaning of internal guidance. 822 F.3d 61, 82–83 (2d Cir. 2016). Here, by contrast, Plaintiffs point to no comparable mandatory command that the Department ignored. Instead, they repackage their substantive disagreement with the Department's administration of the visa statutes and regulations as an *Accardi* claim. That is not what *Accardi* addresses.

At bottom, Plaintiffs seek to treat internal executive guidance and manual provisions as if they were freestanding sources of enforceable law untethered to the underlying statutory and regulatory framework. *Accardi* does not go that far. Because Plaintiffs do not identify a binding regulation or mandatory procedure that Exhibits A and B contravene, and because much of what they invoke consists of internal guidance or merits disagreements rather than enforceable procedural commands, their *Accardi* claim fails as a matter of law.

**E.  Plaintiffs Lack Article III Standing to Obtain the Relief They Seek.**

    **1.  The Individual Plaintiffs' Alleged Injuries Are Not Redressable.**

Plaintiffs' principal standing problem is redressability. Article III requires a plaintiff to show not only injury and traceability, but also that the particular relief sought is likely to redress the asserted injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). And standing is relief-specific: "[a]t least one plaintiff must have standing to seek each form of relief requested." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). Here, Plaintiffs seek facial relief against Exhibits A and B, not review of any particular consular adjudication. That framing matters, because visa issuance turns on further, individualized consular decisionmaking under the INA.

The gap defeats redressability. As explained above, Exhibits A and B do not issue visas; they operate only through later consular adjudications. Thus, even if the challenged materials were set aside, no plaintiff—or plaintiff's relative—would thereby become entitled to a visa. At most, vacatur would remove one asserted constraint from the current processing posture and require renewed, case-specific adjudications under the INA's ordinary framework. Whether any particular applicant would then receive a visa would still depend on officer-level application of existing statutory standards to the facts of that case.

That is true for both sets of individual plaintiffs. The U.S.-citizen plaintiffs allege family-separation injuries arising from non-issuance to relatives abroad, while the employment-based plaintiffs allege that approved petitions and completed interviews should have led to issuance. Compl. ¶¶ 27–31. Even assuming those asserted harms suffice for injury in fact, the relief sought here would not likely redress them. The Court could not, on this facial APA challenge, order the issuance of any particular visa. Further adjudication would remain necessary, and nothing in the requested relief would eliminate the possibility of additional case-specific questions, requests for

evidence, or refusals under the INA. The asserted chain from vacatur to visa issuance to family reunification is therefore too contingent to satisfy Article III. *See Lujan*, 504 U.S. at 560–61.

Plaintiffs' authorities do not establish otherwise. *Trump v. Hawaii* addressed whether family separation could qualify as a concrete injury, not whether facial relief against Department-level guidance would likely redress a given applicant's non-issuance. 585 U.S. 667, 698–99 (2018). And where, as here, any concrete benefit from judicial relief depends on the reactions of third-party decisionmakers not before the Court, Plaintiffs must show a predictable—not speculative—chain from relief to redress. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383–85 (2024). Plaintiffs have not done so. Their own formulation confirms the problem: they say vacatur would restore "individualized adjudications." Pls.' MSJ at 22. But a return to individualized adjudication is not the same thing as likely visa issuance. Where additional discretionary, applicant-specific decisions stand between judicial relief and the concrete outcome that Plaintiffs seek, redressability is missing. Plaintiffs therefore have not established standing to obtain the relief that they request.

### 2. CLINIC and ACT Lack Organizational Standing.

CLINIC and ACT likewise have not shown organizational standing in their own right. At this stage, Plaintiffs must support standing with "specific facts" in affidavits or other evidence, not with general assertions. *Lujan*, 504 U.S. at 561; *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). To be sure, an organization may show injury through a concrete diversion of resources that perceptibly impairs its activities. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Nnebe v. Daus*, 644 F.3d 147, 156–57 (2d Cir. 2011). But that doctrine does not allow an organization to "spend its way into standing" by choosing to devote money and effort to gathering information, educating the public, and advocating in opposition to government action affecting

others. *FDA*, 602 U.S. at 394–96. The required showing is a concrete, defendant-caused interference with the organization's own operations, not merely a setback to abstract policy interests or a voluntary reordering of priorities.

Plaintiffs' showing does not meet that standard. They principally assert that CLINIC and ACT have received more questions, expect additional consultations, intend to develop trainings and materials, and would have submitted comments had notice-and-comment occurred. *See* Pls.' MSJ at 9, 23. But Exhibits A and B regulate visa adjudications by consular officers; they do not require CLINIC or ACT to do anything, forbid them from doing anything, or otherwise alter the legal rules governing their own operations. Unlike in *Havens*, Defendants did not directly impair the organizations' ability to provide counseling or referral services by giving them false information or otherwise interfering with their core activities. 455 U.S. at 379. At most, Plaintiffs describe mission-consistent responses to a policy that they oppose and that affects third-party visa applicants and their relatives. That is not enough. *See FDA*, 602 U.S. at 394–96.

Plaintiffs invoke *CAIR v. Trump*, 471 F. Supp. 3d 25, 42 (D.D.C. 2020), for the proposition that a denied opportunity to comment can be linked to an organization's concrete interests. *See* Pls.' MSJ at 23. But *CAIR* does not relieve Plaintiffs of the need to show a concrete organizational injury. Here, for the reasons already explained, CLINIC and ACT have not shown that the challenged materials concretely impaired their own operations rather than merely prompting mission-consistent responses to a policy affecting third parties. That conclusion is reinforced by *African Communities Together v. Lyons*, where one of the same plaintiffs failed to establish organizational standing based on similarly generalized assertions about services and resource demands. 799 F. Supp. 3d 362, 382 (S.D.N.Y. 2025). The same is true here: the record

does not establish the concrete, defendant-caused operational impairment required for organizational standing.

### 3. ACT Lacks Associational Standing.

ACT also lacks associational standing. An association must show, among other things, that at least one identified member "would otherwise have standing to sue in [her] own right." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 118 (2d Cir. 2025). And representative-standing theories do not relax that requirement. *See Doe v. Hochul*, 139 F.4th 165, 181–82 (2d Cir. 2025). At this stage, that showing must be supported with the manner and degree of evidence required on summary judgment. *Lujan*, 504 U.S. at 561; *Cacchillo*, 638 F.3d at 404.

ACT identifies Agnes Kyeremaa as the member through whom it seeks to proceed. Pls.' MSJ at 23. But for the reasons explained in Section E.1, Ms. Kyeremaa has not shown that the facial relief sought here would likely redress the injury she alleges. That failure is enough to defeat *Hunt*'s first requirement. ACT therefore lacks associational standing.

## F. Plaintiffs Are Not Entitled to Vacatur or Other Relief.

Because Defendants are entitled to summary judgment on Plaintiffs' APA claims, Plaintiffs are not entitled to vacatur, declaratory relief, a stay under 5 U.S.C. § 705, injunctive relief, or any affirmative operational order. Remedies do not arise in the abstract. And where, as here, Plaintiffs have not established a reviewable APA violation, there is nothing for the Court to "set aside," enjoin, or declare unlawful. 5 U.S.C. § 706(2).

Even if the Court were to identify some APA defect, however, the sweeping relief that Plaintiffs seek still would not follow automatically. It is true that, "[i]n the usual case," a successful APA challenge results in vacatur and remand. *Guertin v. United States*, 743 F.3d 382, 388 (2d Cir.

27

2014). But *Guertin* makes clear that the rule "is not absolute." *Id.* And Plaintiffs overread *N.Y. Legal Assistance Group v. Cardona*. The Second Circuit in that case remanded so that the district court could consider the available remedial options for the invalid provision, including whether severance and partial vacatur were warranted. *See N.Y. Legal Assistance Grp. v. Cardona*, 2024 WL 64220, at *4 (2d Cir. Jan. 5, 2024). On remand, the district court explained that courts in this Circuit apply the familiar *Allied-Signal* framework and consider both the seriousness of the deficiency and the disruptive consequences of vacatur. *N.Y. Legal Assistance Grp. v. Cardona*, 2025 WL 871371, at *2–3 (S.D.N.Y. Mar. 20, 2025); *see Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993).

That framework forecloses Plaintiffs' all-or-nothing remedial theory. Plaintiffs seek wholesale facial relief against the January 14 public announcement and cable, plus related implementing actions. But those materials do not do the same thing, and the record does not support treating them as an indivisible object for remedy purposes. Exhibit B contemplates continued case-specific adjudication and confirms that previously issued visas are not to be revoked pursuant to the guidance and remain valid for travel. Ex. B ¶¶ 4, 9. Even on Plaintiffs' view, then, this case does not involve a single self-contained rule whose invalidity would require nullification across the board. At minimum, Plaintiffs have not shown that any defect would require vacatur of both January 14 materials as a unit, rather than relief limited to the particular challenged material or instruction, or remand without vacatur.

*City of Port Isabel* reinforces that point. Applying *Allied-Signal*, the D.C. Circuit explained that not every procedural omission points toward vacatur with the same force and that the seriousness inquiry depends on context, including whether the agency bypassed a truly "fundamental" procedural step or instead omitted something more discrete and potentially

28

curable. *City of Port Isabel v. FERC*, 130 F.4th 1034, 1038–39 (D.C. Cir. 2025). That distinction matters here. Plaintiffs say that any defect is categorically incurable because the challenged materials are unlawful on their face. Pls.' MSJ at 25. But that simply restates Plaintiffs' merits position. It does not establish the remedial consequence. Nor do Plaintiffs' principal authorities compel their requested result. *Bridgeport Hospital* involved the proposition that remand without vacatur is unavailable where the agency lacked authority to take the action at all. *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 890 (D.C. Cir. 2024). And *Allina* and the district court's remand decision in *N.Y. Legal Assistance Group* addressed a fundamental notice problem in a different regulatory setting. *See Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014); *N.Y. Legal Assistance Grp.*, 2025 WL 871371, at *3–4. Here, by contrast, Defendants' position is that the challenged materials operate within the INA's existing adjudicatory framework, and any defect that Plaintiffs identify would not necessarily require wholesale facial nullification of both January 14 materials and all related implementation.

Plaintiffs' requests for declaratory, injunctive, and affirmative operational relief fail for the same reason. The Complaint seeks not only vacatur and set-aside, but also declarations of unlawfulness, a stay under APA § 705, a permanent injunction, and an order directing Defendants to "resume case-by-case adjudications, processing approvals and issuance" under Plaintiffs' preferred interpretation of the INA. Compl. Prayer for Relief. But even assuming some defect, this facial APA challenge could not support an order requiring the issuance of any particular visa or otherwise collapsing the distinction between Department-level guidance and individual consular adjudications. Further individualized adjudication would still be required, and visa outcomes would still turn on applicant-specific determinations under the INA. As explained in Section E.1, relief against Exhibits A and B would not itself entitle any plaintiff or family member to a visa.

29

That mismatch is especially important for equitable relief. Section 705 authorizes a preservative process pending judicial review; it does not authorize the Court to take over the operation of the immigrant-visa system and direct approvals or issuances. *See Afr. Cmtys. Together v. Lyons*, 799 F. Supp. 3d 362, 372 (S.D.N.Y. 2025) (section 705 permits a reviewing court to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings"); *Goodluck v. Biden*, 104 F.4th 920, 928 (D.C. Cir. 2024) (courts lacked authority to order the State Department to continue processing applications and issuing diversity visas beyond statutory limits, and equity does not permit courts to override congressionally prescribed limits on visa administration). And to the extent that Plaintiffs seek a nationwide injunction against the enforcement of the challenged materials, that request is overbroad. The Supreme Court has emphasized that equitable relief must remain within the traditional bounds of federal equity and be tailored to provide complete relief to the plaintiffs before the Court. *CASA*, 606 U.S. at 841–47, 852–54; *see also Califano*, 442 U.S. at 702. Whatever relief might be available in an APA case, Plaintiffs are not entitled to a sweeping operational decree that would effectively supervise visa adjudications nationwide or require the Executive branch to process, approve, and issue visas on Plaintiffs' terms.

In short, Plaintiffs are not entitled to any remedy because they are not entitled to judgment on the merits. And even if the Court found some defect, Plaintiffs have not shown that the proper relief would be wholesale vacatur of the January 14 announcement and cable, much less the nationwide declaratory, injunctive, stay, and affirmative operational relief that they request. The Court should therefore deny Plaintiffs' request for vacatur and all other relief.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for partial summary

judgment. And the Court should grant Defendants' cross-motion for summary judgment on Counts One, Three, and Seven insofar as those counts challenge the January 14 announcement and implementing cable, Exhibits A and B, and seek vacatur, declaratory relief, relief under 5 U.S.C. § 705, injunctive relief, or affirmative operational relief based on those materials.

Alternatively, if the Court concludes that Plaintiffs have identified some defect in the January 14 announcement or implementing cable, it should decline Plaintiffs' request for wholesale vacatur or nationwide operational relief and limit any remedy to the relief necessary to provide complete relief to the plaintiffs before the Court. *See CASA*, 606 U.S. at 841–47, 852–54; *Califano*, 442 U.S. at 702.

Dated:  March 26, 2026

JAY CLAYTON
United States Attorney

ALYSSA O'GALLAGHER
Assistant U.S. Attorney

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANTHONY NICASTRO
Acting Director
Office of Immigration Litigation
General Litigation and Appeals Section

MATTHEW SEAMON
Acting Assistant Director

*/s/ Julian Kurz*
JULIAN KURZ
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 598-7283
julian.m.kurz@usdoj.gov

ANGEL FLEMING
Trial Attorney

31

## CERTIFICATE OF SERVICE

I, Julian Kurz, hereby certify that on March 26, 2026, I filed the foregoing brief with the Courts's electronic court filing system, which electronically served this brief on all counsel of record.

*/s/ Julian M. Kurz*
JULIAN M. KURZ
Trial Attorney
U.S. Department of Justice

## CERTIFICATE OF COMPLIANCE

I, Julian Kurz, hereby certify that this brief complies with the 12,000-word limit that the Court set in its March 19, 2026 Text Order. This brief contains 9,608 words.

*/s/ Julian M. Kurz*
JULIAN M. KURZ
Trial Attorney
U.S. Department of Justice