# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SHARIOT ULLAH and NUR ULLAH, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil No. 25-12804-LTS |
| HELEN LAFAVE and MARCO RUBIO, | ) | |
| Defendants. | ) | |

ORDER ON MOTION FOR PRELIMINARY INJUNCTION (DOC. NO. 22)
AND MOTION TO DISMISS (DOC. NO. 18)

June 2, 2026

SOROKIN, J.

Shariot Ullah is an elderly United States citizen who has petitioned for his adult son, Nur

Ullah, to join him in the United States.[1]  After Nur—a citizen of Bangladesh—completed his

visa application and interview, his application was placed into administrative processing.  In

January 2026, the State Department instituted a "pause" on the issuance of immigrant visas for

the nationals of seventy-five countries, including Bangladesh (the "Nationality-Based Pause").

Nur was subsequently notified that, "[a]s a result of this pause," his "case ha[d] been found

ineligible."  Doc. No. 15-1 at 2.[2]

Pending before the Court are the defendants' motion to dismiss the amended complaint,

Doc. No. 18, and the Ullahs' motion for a preliminary injunction precluding the defendants from

---

[1] Because the plaintiffs share a last name, the Court refers to them by their first names for clarity.
[2] Citations to "Doc. No. __" reference items appearing on the Court's electronic docketing system ("ECF"); pincites are to the page numbers in the ECF header or, for documents enumerated by paragraph, to paragraph numbers.

applying the Nationality-Based Pause to Nur's application, Doc. No. 22.  The motions are fully briefed, and the Court heard oral argument on May 21, 2026.  For the reasons explained below, the motion to dismiss is ALLOWED IN PART and the motion for preliminary injunction is ALLOWED IN PART.

I.   BACKGROUND

A.   Statutory and Regulatory Context

This case concerns the family-based immigration process under the Immigration and Nationality Act ("INA").  "A noncitizen must have a visa to be admitted to the United States as an immigrant."  Ghannad-Rezaie v. Laitinen, 757 F. Supp. 3d 148, 150 (D. Mass. 2024).  The INA establishes two broad categories of family-based immigrant visas: visas for the immediate family members of U.S. citizens (including spouses, parents, and unmarried children under age twenty-one), which are unlimited in number; and "family-sponsored" immigrant visas for certain "more distant or independent relatives" of citizens and close relatives of lawful permanent residents ("LPRs"), which are subject to annual caps.  Scialabba v. Cuellar de Osorio, 573 U.S. 41, 46–47 (2014) (plurality opinion).  Relevant here is a subset of the latter category: family-sponsored immigrant visas for the adult children of U.S. citizens.  8 U.S.C. § 1153(a)(1), (3).

"The road to obtaining any family-based immigrant visa begins when a sponsoring U.S. citizen or LPR files a petition on behalf of a foreign relative . . . ."  Cuellar de Osorio, 573 U.S. at 47.  Specifically, the sponsoring U.S. citizen must file a Form I-130 with U.S. Citizenship and Immigration Services ("USCIS") on behalf of, in this case, their noncitizen adult child.  See 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. §§ 204.1(a)(1), 204.2(d).  USCIS reviews the petition and, if all requirements are met, approves it and forwards the case to the State Department's National Visa Center ("NVC").  8 U.S.C. § 1154(b); 8 C.F.R. § 204.2(d)(3); see also Teles de Menezes v. Rubio, 156 F.4th 1, 3–4 (1st Cir. 2025).

2

At that point, the noncitizen beneficiary begins the immigrant-visa application process by submitting a Form DS-230.  Ghasemi v. Rubio, 812 F. Supp. 3d 129, 133 (D. Mass. 2025) (discussing process under applicable statutes, regulations, and State Department's Foreign Affairs Manual ("FAM")).  The NVC gathers additional documentation and collects a fee.  Id. Once NVC processing is complete, the State Department schedules an interview for the applicant with a consular officer at an appropriate embassy.  Id.  It is the policy of the State Department that family-sponsored immigrant visas are to be processed within sixty days of receipt of the necessary information from the applicant and the Department of Homeland Security.  9 FAM § 504.7-2(b).

"The authority to grant a visa rests exclusively with the consular officer."  Ghannad-Rezaie, 757 F. Supp. 3d at 151; see also 8 U.S.C. § 1201(a)(1)(A) ("[A] consular officer may issue . . .  to an immigrant who has made proper application therefor, an immigrant visa . . . .").  Under INA § 221(g), no visa shall be issued if:

> (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law.

8 U.S.C. § 1201(g).[3]  One ground for ineligibility is the consular officer's determination that the applicant is likely to become a public charge.  8 U.S.C. § 1182(a)(4).  To make such a determination, the INA directs the consular officer to consider specific factors, including the applicant's age, health, family status, financial assets and resources, education and skills, and any

---

[3] INA § 221 is codified at 8 U.S.C. § 1201.  INA § 212 is codified at 8 U.S.C. § 1182.  The Court generally cites to the codified statutes in the United States Code.  Because the administrative record and the parties' briefs largely use INA citations, the Court occasionally references INA section numbers, too.

affidavit of support.  Id. § 1182(a)(4)(B); see also id. § 1183 (bond); id. § 1183a (affidavit of support).  As the defendants acknowledge, this provision "requires a case-specific assessment based on the applicant's circumstances at the time of the adjudication."  Doc. No. 24 at 7.

After an applicant's interview, the consular officer generally must either "issue the visa" or "refuse the visa under INA 212(a) or 221(g) or other applicable law."  22 C.F.R. § 42.81(a).  "A visa can be refused only upon a ground specifically set out in the law or implementing regulations."  Id. § 40.6.  The applicant bears the burden of proof to establish visa eligibility.  Id.  If a consular officer refuses a visa, the officer generally must inform the applicant of the legal grounds for the refusal, including providing a citation to the statute under which the decision was made.  See Dep't of State v. Muñoz, 602 U.S. 899, 904 (2024); 8 U.S.C. § 1182(b)(1).

"The consular officer 'may then conclude that the applicant could perhaps still receive a visa eventually if circumstances change' and may 'place an officially refused application in administrative processing.'"  Ghannad-Rezaie, 757 F. Supp. 3d at 151 (quoting Karimova v. Abate, No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024) (per curiam)).  A refusal under INA § 221(g) may be overcome "when additional evidence is presented, or administrative processing is completed."  9 FAM § 306.2-2(A)(a).  "If a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered."  22 C.F.R. § 42.81(e).  If the refusal is overcome, the consular officer "re-open[s] and re-adjudicate[s] the case" and "determin[es] whether the applicant is eligible for a visa."  Ghannad-Rezaie, 757 F. Supp. 3d at 151 (alterations in original) (quoting 9 FAM § 306.2-2(A)(a)(1)).  A "refusal under INA 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome."  9 FAM § 302.1-8(B)(c).

4

B.    Nationality-Based Pause[4]

Effective January 21, 2026, the State Department "paused all visa issuances to immigrant visa applicants who are nationals of" one of seventy-five specified countries, including Bangladesh.[5]  Doc. No. 14-2 at 1.  The Department publicly announced that it "is undergoing a full review of all screening and vetting policies to ensure that immigrants from high-risk countries do not unlawfully utilize welfare in the United States or become a public charge."  Id.  It advised affected applicants that they "may submit visa applications and attend interviews," and that "the Department will continue to schedule visa interviews."  Id.

Secretary of State Marco Rubio announced the Nationality-Based Pause via a January 14 cable to all diplomatic and consular posts entitled "Pausing Immigrant Visa Issuances for Nationalities at High Risk of Public Charge."[6]  Doc. No. 23-5 at 3.  The policy was not issued with an accompanying presidential proclamation.  The cable decreed that, as of January 21, 2026, "consular officers must refuse under Section 221(g) of the Immigration and Nationality Act to **all immigrant visa applicants** who have not been refused under another ground of eligibility, if the applicant is a national of" one of the specified countries.  Id. (emphasis in original).  It stated, "Immigrant Visa issuance to applicants from these countries is paused until further notice."  Id. at 4.

---

[4] The plaintiffs refer to this policy as the "Visa Ban."  Doc. No. 23 at 2.  The defendants refer to it as the "January 14 guidance."  Doc. No. 24 at 6.  The Court uses the term "Nationality-Based Pause," or "Pause," because it is a more descriptive moniker that borrows the policy's verbiage.
[5] The policy announcement is available online.  Immigrant Visa Processing Updates for Nationalities at High Risk of U.S. Public Benefits Reliance, U.S. Dep't of State (Feb. 2, 2026), https://travel.state.gov/content/travel/en/News/visas-news/immigrant-visa-processing-updates-for-nationalities-at-high-risk-of-public-benefits-usage.html [https://perma.cc/WG4A-3UUM].
[6] In support of their motion for preliminary injunction, the plaintiffs submit the administrative record for the Nationality-Based Pause as it was publicly filed in Catholic Legal Immigration Network, Inc. v. Rubio, No. 26-cv-00858-JAV (S.D.N.Y. Apr. 10, 2026), Dkt. No. 63.  Doc. No. 23-5.  The defendants raise no objection to the Court's consideration of these materials.

The cable directs consular officers to continue adjudicating all immigrant-visa applications from nationals subject to the Pause. Officers are to "carefully evaluate all potentially applicable grounds of ineligibility," including assessing "whether an applicant is likely to become a public charge" within the meaning of § 1182(a)(4)(A). Id. If any grounds for ineligibility apply, the officer should refuse the application on those grounds. Id. But if the consular officer identifies no grounds for ineligibility, the officer must nevertheless "refuse the applicant 221(g)" pursuant to the Pause. Id. at 4–5.

Secretary Rubio's cable explained that the State Department was "directing consular officers to take this action based on indication of nationals from these countries having sought public benefits in the United States, and in order to allow the Department to evaluate and enhance screening and vetting procedures and guidance related to the public charge ground of ineligibility." Id. at 4. The cable did not specify an endpoint for the Pause, noting only that it would be in place "until further notice" and "while the Department develops additional screening and vetting tools, polices [sic], and operations to more accurately identify any [immigrant-visa] applicant likely to become a public charge." Id. at 4–5. The Pause remains in place now, more than four months later. At oral argument on May 21, 2026, counsel for the defendants stated he had no further information regarding the Pause's progress or timeline.

    C.    Facts[7]

Shariot Ullah is a United States citizen who lives with his wife in Lynn, Massachusetts. Doc. No. 14 ¶ 8. Shariot is elderly and suffers from several medical conditions for which he

---

[7] The following factual allegations are taken from the amended complaint, Doc. No. 14, which the Court accepts as true at this stage. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Umuoji Improvement Union (N. Am.), Inc. v. Umuoji Improvement Union (N. Am.), Inc., 537 F. Supp. 3d 79, 84 (D. Mass. 2021) (noting that when deciding a preliminary-injunction motion, a court "may accept as true well-pleaded allegations in the complaint and uncontroverted affidavits" (citation modified)). Where appropriate, the Court may also draw on "documents the

receives medical treatment, including type 2 diabetes, Alzheimer's, arthritis, cardiomyopathy, and anemia. Id. ¶ 22. Shariot and his wife are unable to work, and Shariot relies on Social Security benefits and assistance from his daughter. Id. ¶ 24.

Shariot's adult son, Nur Ullah, is a citizen and resident of Bangladesh. Id. ¶ 9. Shariot's separation from his son exacerbates his medical conditions. Id. ¶ 22. Shariot seeks to have Nur join him in the United States to assist with Shariot's activities of daily living, household management, medical appointments, emotional support, and to generally help "stabilize the household."[8] Id. ¶¶ 22, 25.

The Ullahs' efforts to secure approval for Nur to immigrate to the United States began more than a decade ago. On April 6, 2015, Shariot filed a Form I-130 petition on Nur's behalf. Id. ¶ 16. On July 27, 2015, USCIS approved the petition and forwarded the case to the State Department for consular processing. Id. On June 4, 2020, Nur submitted a DS-260 immigrant-visa application. Id. ¶ 17. On January 8, 2025, Nur appeared for his visa interview at the United States Embassy in Dhaka, Bangladesh.[9] Id. ¶ 18. Initially, Nur was informed that his visa application was approved. Id. ¶ 19. But the consular section subsequently retained the case for

---

authenticity of which are not disputed by the parties," "official public records," "documents central to plaintiffs' claim[s]," and "documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Here, this includes the administrative record, see supra note 6, and the plaintiffs' consular communication, see infra note 11.

[8] Shariot submitted a declaration in support of the motion for a preliminary injunction. Doc. No. 23-6. In it, Shariot reiterates that he suffers from multiple medical conditions and adds that his vision has recently been worsening. Id. ¶¶ 4–9. He also attests that he suffers from emotional distress because he believes he may not be able to see his son, and that his emotional distress has caused his physical health conditions to worsen. Id. ¶ 10. The Court considers this declaration in assessing the preliminary-injunction factors but not in evaluating the motion to dismiss.

[9] The record does not reveal what caused the two five-year gaps (1) between USCIS approval and Nur's DS-260 application submission and (2) between Nur's submission and interview. At oral argument, counsel for the plaintiffs suggested that Nur had completed two interviews, but the amended complaint does not identify a second interview, and the Court does not rely on or consider a second interview to resolve the pending motions.

additional checks and placed it in § 221(g) administrative processing.  Id.; see also Doc. No. 14-1 (correspondence notifying Senator Ed Markey's office that Nur's visa application was "undergoing administrative processing" as of September 24, 2025).

In February or March 2026,[10] the consular section of the Dhaka Embassy notified Nur that his case was deemed ineligible under INA § 221(g) due to the Nationality-Based Pause, writing:

> Effective January 21, 2026, the Department of State paused immigrant visa issuances to nationals of 75 countries, including Bangladesh, whose immigrants have a high rate of collecting public assistance at the expense of the U.S. taxpayer.
>
> As a result of this pause, your case has been found ineligible for an immigrant visa under Section 221(g) of the Immigration and Nationality Act.  This decision cannot be appealed.  Please be advised that for U.S. visa purposes, . . . this decision constitutes a denial of a visa.
>
> Additionally, your case remains refused under Section 221(g) of the INA because the validity of your medical examination report expired.  You will need to complete another medical examination with one of our panel physicians before your visas can be issued.  You also need to submit new bio-metric photograph.
>
> You may choose to complete your medical examination now or wait until the pause on immigrant visas has ended. . . .
>
> Please note that even if you address this issue, your case will remain ineligible under Section 221(g) until the pause is lifted.
>
> The Department will provide updates when the pause on immigrant visa issuances ends.  We appreciate your patience and understanding.

Doc. No. 15-1 at 2 (emphasis omitted).[11]

---

[10] It is unclear from the record exactly when the Embassy sent this notice to Nur.  The Nationality-Based Pause took effect on January 21, 2026.  The plaintiffs' amended complaint, filed February 16, 2026, challenges the Nationality-Based Pause but makes no mention of the policy having been applied to Nur's case.  Doc. No. 14.  The plaintiffs notified the Court about this communication on March 2, 2026.  Doc. No. 15.  The Court therefore draws the reasonable inference that the Embassy's notice was sent to Nur in late February or early March.

[11] The defendants lodge no objection to the Court considering the contents of this notice; indeed, the defendants' mootness argument relies in part on it.  See Doc. No. 19 at 5, 7–8.

D.     Procedural History

On September 28, 2025, Shariot and Nur filed suit against Helen LaFave, Chargé d'Affaires at U.S. Embassy Dhaka, and Marco Rubio, U.S. Secretary of State, in their official capacities.  Doc. No. 1.  At that point, more than eight months had elapsed since Nur's visa interview.  After the State Department announced its Nationality-Based Pause in immigrant-visa issuance, the parties agreed to a schedule for plaintiffs to file an amended complaint addressing the Pause.  Doc. Nos. 12, 13.

On February 16, 2026, the plaintiffs filed an amended complaint in which they assert six claims: violation of the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), via the unlawful withholding of or unreasonable delay in adjudicating Nur's immigrant-visa application (Count I); violation of the APA, § 706(2), via defendants' maintenance of "indefinite administrative processing" (Count II); a writ of mandamus, pursuant to the Mandamus and Venue Act ("MVA"), 28 U.S.C. § 1361 (Count III); declaratory judgment, pursuant to 28 U.S.C. § 2201 (Count IV); violation of Shariot Ullah's due process rights under the Fifth Amendment (Count V); and violation of the APA, § 706(2), via the Nationality-Based Pause, which the plaintiffs allege is arbitrary and capricious, not in accordance with law, in excess of statutory authority, and adopted without observance of required procedure (Count VI).  See Doc. No. 14. At bottom, the plaintiffs seek an order enjoining the defendants from applying the Pause to Nur's application, declaring the Pause and the delay in adjudicating Nur's application unlawful, and compelling the defendants to adjudicate Nur's application.  Id. at 17–18.  On March 2, 2026, the plaintiffs notified the Court that U.S. Embassy Dhaka had refused Nur's application due to the Nationality-Based Pause, as discussed above.  Doc. Nos. 15, 15-1.

On March 27, 2026, the defendants moved to dismiss the amended complaint under Rules 12(b)(1) and 12(b)(6).  Doc. No. 18.  First, the defendants argue that Counts I through V

9

were rendered moot when Nur's application was originally placed in administrative processing and/or when he was notified that his application was refused under the Nationality-Based Pause. Id. at 7–8. They also contend that, to the extent the plaintiffs challenge the propriety of the refusal, that challenge is barred by the consular-nonreviewability doctrine.[12] Id. at 8–9. Finally, they argue the plaintiffs have not stated a due-process claim, declaratory judgment claim, or valid APA claim regarding the Nationality-Based Pause. Id. at 10–15. The defendants did not, by contrast, challenge the plaintiffs' unreasonable-delay claims on Rule 12(b)(6) grounds—e.g., by challenging the plaintiffs' allegations as to the TRAC factors.[13] Contrast Doc. No. 19, with Doc. No. 14 ¶¶ 53–58. The Ullahs opposed the motion to dismiss. Doc. No. 21.

On April 13, 2026, the Ullahs moved for a preliminary injunction, seeking an order enjoining the Pause as to Nur's immigrant-visa application and directing the defendants to complete adjudication of his application by a date certain. Doc. No. 22. The preliminary-injunction motion is fully briefed. Doc. Nos. 23–25. The Court held oral argument on May 21, 2026. After careful consideration, the Court now resolves both pending motions.

II.    LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (citation modified). To secure a preliminary injunction, the plaintiffs must show:

---

[12] "[T]he doctrine of consular nonreviewability is not jurisdictional." Muñoz, 602 U.S. at 908 n.4. The parties appropriately treat the plaintiffs' APA and MVA unreasonable-delay challenges as coextensive. "Courts in this circuit . . . construe the APA and the MVA to be coextensive to the extent that the APA creates a nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay." Durrani v. Bitter, No. 24-cv-11313-FDS, 2024 WL 4228927, at *6 (D. Mass. Sep. 18, 2024) (citation modified).

[13] To determine whether agency delay has been unreasonable within the meaning of the APA, courts generally use the six-factor test laid out in Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"). See Ghannad-Rezaie, 757 F. Supp. 3d at 154 (citing Towns of Wellesley, Concord & Norwood v. FERC, 829 F.2d 275, 277 (1st Cir. 1987)).

"(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020) (citation modified). The third and fourth factors "merge when the [g]overnment is the opposing party," Does 1–6 v. Mills, 16 F.4th 20, 37 (1st Cir. 2021) (alteration in original) (quoting Nken v. Holder, 556 U.S. 418, 435 (2009)), while the first factor—likelihood of success on the merits—"normally weighs heaviest in the decisional scales," Coquico, Inc. v. Rodríguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009); accord US Ghost Adventures, LLC v. Miss Lizzie's Coffee LLC, 121 F.4th 339, 347 (1st Cir. 2024) ("Likelihood of success on the merits is the sine qua non of the preliminary injunction analysis."). The same four-part framework applies to motions for "traditional, prohibitory preliminary injunction[s]" and "mandatory preliminary injunction[s], which require[] affirmative action by the non-moving party." Braintree Lab'ys, Inc. v. Citigroup Glob. Mkts. Inc., 622 F.3d 36, 40–41 (1st Cir. 2010) (noting that while mandatory injunction "normally should be granted only in the circumstances when the exigencies of the situation demand such relief," court's focus "always must be on prevention of injury by a proper order, not merely on preservation of the status quo" (citation modified)).

When a defendant moves to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), a court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, as a general matter, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). With respect to APA claims, however, the "focal point . . . is the existing

11

administrative record," not the complaint's factual allegations.  Atieh v. Riordan, 727 F.3d 73, 76 (1st Cir. 2013).  The general "plausibility" standard is therefore inapplicable to an APA claim; instead, a motion to dismiss may be granted when the "underlying premise of the complaint is legally flawed (rather than factually unsupported)."  Id. at 76 & n.4.

III.   DISCUSSION

The Court begins by considering the plaintiffs' preliminary-injunction motion.  Doc. No. 22.  At oral argument, counsel for the plaintiffs conceded that the plaintiffs do not press their request for an order directing the defendants to resume and complete adjudication of Nur's application within twenty-one days.  With respect to that request, the preliminary-injunction motion is DENIED WITHOUT PREJUDICE.  The Court's analysis thus focuses on the plaintiffs' request to enjoin the defendants from applying the Nationality-Based Pause to Nur's immigrant-visa application based on their APA challenge to the Pause.  The Court then turns to the motion to dismiss.

A.   Enjoining the Nationality-Based Pause as to Nur's Application

The plaintiffs contend that they are likely to succeed on the merits of their claim that the Nationality-Based Pause is contrary to law, is arbitrary and capricious, and was adopted without requisite notice and comment—all in contravention of APA § 706(2)(A) and (D)—as stated in Count VI of their amended complaint.  They seek a preliminary injunction barring the defendants from applying the Pause to Nur's application.[14]

_____

[14] The plaintiffs here challenge the lawfulness of the State Department's Nationality-Based Pause, not the merits of a consular officer's substantive visa-application adjudication, and the consular-nonreviewability doctrine thus does not bar their APA claim.  "[I]t is well settled that when plaintiffs pursue forward-looking challenges to the lawfulness of regulations or policies governing consular decisions, courts may review them 'to assure that the executive departments abide by the legislatively mandated procedures.'"  Pietersen v. U.S. Dep't of State, 138 F.4th 552, 560 (D.C. Cir. 2025) (quoting Int'l Union of Bricklayers & Allied Craftsmen v. Meese, 761 F.2d 798, 801 (D.C. Cir. 1985)).  The plaintiffs' APA claim is such a "forward-looking"

12

1. *Likelihood of Success on the Merits*

a. Final Agency Action

Under the APA, judicial review is limited to "final agency action[s]."  5 U.S.C. § 704. The APA authorizes courts to "hold unlawful and set aside" final agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Determining whether an agency action is "final" requires a two-pronged inquiry. First, the action "must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature."  U.S. Army Corps of Eng'rs v. Hawkes Co., 578 U.S. 590, 597 (2016) (quoting Bennett v. Spear, 520 U.S. 154, 177–78 (1997)).  Second, the action "must be one by which rights or obligations have been determined, or from which legal consequences will flow."  Id. (quoting Bennett, 520 U.S. at 177–78).  The finality inquiry is a "pragmatic" one.  Id. at 599 (citation modified).  Here, that pragmatic inquiry leads the Court to conclude that the Nationality-Based Pause is a final agency action.

First, the Nationality-Based Pause is not of a "merely tentative or interlocutory nature." Although labeled a "pause," a practical assessment of the policy demonstrates that it is not merely "an interim step in the agency's decisionmaking process" but a final one.  Doe v. Trump, No. 1:25-cv-13946-JEK, 2026 WL 1170971, at *6 (D. Mass. Apr. 30, 2026) (noting agency's labeling of action as interim or temporary is not dispositive); see also Louisiana v. Biden, 622 F. Supp. 3d 267, 291–92 (W.D. La. 2022) ("[A] 'final agency action' does not have to be defined as permanent to be considered final." (collecting cases)).  The agency has specified no timeline for lifting the Pause.  The January 14 cable announces that the Pause will remain in place "until further notice."  Doc. No. 23-5 at 4.  Although the administrative record contains an action

challenge; the Pause poses an ongoing barrier to adjudication of Nur's application, and the plaintiffs seek prospective injunctive and declaratory relief against the Pause.  See id.

memo for Secretary Rubio from the Assistant Secretary of State for Consular Affairs indicating that the Assistant Secretary "anticipate[s] this [review] will take about 60 days," Doc. No. 23-5 at 7, the policy does not incorporate that deadline—and, in any event, the 60-day period has come and gone with no apparent changes or progress. Cf. Doe, 2026 WL 1170971, at *6 (concluding that, although memoranda required government to "issue operational guidance within 90 days," memoranda were nevertheless final agency action because "the 90-day period . . . came and went without" substantive policy modification).

The agency has not articulated or identified any progress it is making or plans to make toward lifting the Pause. Secretary Rubio's cable stated that the Pause would "allow the Department to evaluate and enhance screening and vetting and procedures and guidance related to the public charge ground of ineligibility." Doc. No. 23-5 at 4. But the defendants have not identified any steps taken as part of the review, specified what actions must be taken before review is complete, or otherwise indicated that the end is in sight. Indeed, more than four months have passed since the Pause was announced, and the record before the Court reveals no substantive revisions to the policy—nor that the defendants have taken any steps to further (or even begin) their review. In other words, the defendants have presented no "reasonable timeframe for, or indeed any end on the horizon" to, the Pause. Massachusetts v. Trump, 790 F. Supp. 3d 8, 26 (D. Mass. 2025) (collecting cases). Under these circumstances, the Court concludes that the Nationality-Based Pause represents the consummation of the agency's decisionmaking process.[15]

---

[15] The defendants do not meaningfully contest this first prong. See generally Doc. No. 24. Instead, their argument focuses on the second prong—that the Nationality-Based Pause is not an agency action that determines rights or obligations. Id. at 6–7.

14

Second, the Nationality-Based Pause is an agency action that "has 'direct and appreciable legal consequences' on—or determines the rights or obligations of—the relevant actors or regulated bodies." Doe, 2026 WL 1170971, at *7 (quoting Hawkes Co., 578 U.S. at 598). Review of the January 14 cable and the consular section's communication to Nur demonstrate that the Pause is "dictating the actions of [consular officers] and affecting the rights of the plaintiffs." Id. (citing Bennett, 520 U.S. at 178). The cable tells "consular officers" that they "must refuse under [INA § 221(g)] to **all immigrant visa applicants**" who are not otherwise refused if the applicant is a national of an enumerated country. Doc. No. 23-5 at 3 (first emphasis added, second in original). The consular section of U.S. Embassy Dhaka notified Nur that, "[a]s a result of this pause, [his] case has been found ineligible for an immigrant visa under [INA § 221(g)]." Doc. No. 15-1. A consular officer has, at the Secretary of State's direction, applied the Pause to Nur's case, and the Pause thus both "dictat[es]" the consular officer's action and has "direct and appreciable legal consequences" for Nur. Doe, 2026 WL 1170971, at *7. In short, the Nationality-Based Pause is a final agency action.

The defendants resist this conclusion by arguing that the Nationality-Based Pause "leaves the determination of actual legal consequence to later consular actions within the ordinary statutory process," such that the "legal consequence—a refusal—flows only when the officer applies § 221(g) in a specific adjudication." Doc. No. 24 at 6. The defendants draw a distinction without a material difference.

The policy unambiguously states that consular officers "must refuse" "all immigrant visa applicants" who are nationals of specific countries. Doc. No. 23-5 at 3. It is true that the policy largely leaves the mechanisms of the ordinary process in place: it directs consular officers to continue conducting interviews and determining whether any grounds of ineligibility apply. Id.

15

at 4. But the policy dictates the <u>outcome</u> of the process for (virtually) all applicants from the seventy-five countries: even if the consular officer identifies no grounds of ineligibility, the officer still must "refuse the applicant 221(g)." <u>Id.</u> at 4–5. That the policy's implementation is distributed across consular officers does not mean that the policy itself is not a final agency action. <u>See</u> <u>Nat'l Env't Dev. Assoc.'s Clean Air Project v. EPA</u>, 752 F.3d 999, 1007 (D.C. Cir. 2014) (concluding agency's "firm guidance to enforcement officials" that "compel[led] agency officials to apply different permitting standards in different regions of the country" was final agency action).

Because the Nationality-Based Pause constitutes a "final agency action" within the meaning of the APA, it is subject to judicial review. The Court turns now to the plaintiffs' likelihood of success on the merits of their APA challenge.

### b. Contrary to Law

On the merits, the plaintiffs are likely to succeed on their claim that the Nationality-Based Pause is contrary to law and in excess of statutory authority.[16] Doc. No. 14 ¶ 71 (citing 5 U.S.C. § 706(2)). Specifically, the plaintiffs are likely to show that the Pause contravenes the individualized process by which consular officers (and not the Secretary) are required to evaluate an immigrant-visa applicant's eligibility.

Under the INA, "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). "[A] consular officer may issue" an immigrant visa to individuals who have "made proper application therefor." <u>Id.</u> § 1201(a)(1). No visa shall be issued if "it appears to the consular officer . . . that [an immigrant-visa **applicant**] is ineligible to

---

[16] Because the Court concludes that the plaintiffs are likely to succeed on their claim that the Pause is contrary to law and in excess of statutory authority, it need not reach the plaintiffs' other APA theories under Count VI.

16

receive a visa . . . under [8 U.S.C. § 1182], or any other provision of law," if "the application fails to comply with the provisions of this chapter, or the regulations issued thereunder," or if "the consular officer knows or has reason to believe that [the applicant] is ineligible to receive a visa . . . under [8 U.S.C. § 1182], or any other provision of law." Id. § 1201(g). Section 1182(a), in turn, sets out specific and detailed grounds for ineligibility. Id. § 1182(a); see also Sangster v. Rubio, No. 3:25-cv-00447-ART-CSD, 2026 WL 222316, at *5 (D. Nev. Jan. 28, 2026) ("Congress set out a detailed statutory scheme that tasks consular officers with conducting a searching analysis of prospective immigrants' medical status, criminal history, financial affairs, and other personal details before admitting them."). "A visa can be refused only upon a ground specifically set out in the law or implementing regulations." 22 C.F.R. § 40.6.

The defendants do not persuasively identify a basis in law for the Nationality-Based Pause. They point to no authority allowing the Secretary of State to direct consular officers to categorically deem ineligible all immigrant-visa applicants based on their nationality. Secretary Rubio's cable purports to rely on 8 U.S.C. § 1201(g) (i.e., INA § 221(g)) as the statutory authority for refusing immigrant visas pursuant to the Pause. Doc. No. 23-5 at 3–4. But § 1201(g) contemplates an individualized assessment of an immigrant-visa applicant's eligibility under § 1182(a) and other provisions of law. 8 U.S.C. § 1201(g). Section 1201(g) does not provide an independent basis for visa ineligibility. Cf., e.g., Tate v. Pompeo, 513 F. Supp. 3d 132, 144–46 (D.D.C. 2021) (concluding § 1201(g) not basis for visa refusal when purported grounds—presidential proclamation under § 1182(f)—did not render applicants "ineligible to receive a visa"); Gomez v. Trump, 485 F. Supp. 3d 145, 190–94 (D.D.C. 2020) (noting that "[s]ubsection 1182(a) does not provide . . . the State Department any authority to supplement the listed categories of dual ineligibility and inadmissibility" and concluding that, absent basis for

17

ineligibility, § 1201(g) does not "empower the State Department to suspend the processing and issuance of visas").

The public-charge provision is a basis for visa ineligibility. 8 U.S.C. § 1182(a)(4). But the Nationality-Based Pause cannot be fairly read as implementing the public-charge provision, and the defendants do not argue that it does. The Secretary's cable directs consular officers to determine (per their typical practice) whether an applicant is "likely to become a public charge and ineligible under [§ 1182(a)(4)(a)]" and, if so, to "refuse the applicant under that ground." Doc. No. 23-5 at 4. But after the consular officer has conducted that review and determined that the applicant is not ineligible under § 1182(a)(4)—that is, not likely to become a public charge— and is also not ineligible under any other ground, the consular officer must nevertheless "refuse the applicant 221(g)" pursuant to the Pause. Id. at 4–5. This mandatory refusal, despite a consular officer's determination that no grounds for ineligibility apply, appears contrary to law. 8 U.S.C. § 1201(a)(1), (g); see also 22 C.F.R. § 40.6.

Secretary Rubio's cable declares that "[a]pplicants from [the affected] countries are at a high risk for becoming a public charge" and directs consular officers that they "must refuse" all applicants from these countries. Doc. No. 23-5 at 4. The defendants do not identify authority empowering the Secretary to make such a categorical, nationality-based proscription of immigrant-visa eligibility. The defendants' motion to dismiss purports to locate the Secretary's authority in INA § 104(a). Doc. No. 19 at 11–13. But that section of the INA specifically "deprives the Secretary of State of 'those powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas.'" Gomez, 485 F. Supp. 3d at 194 (emphasis added) (quoting 8 U.S.C. § 1104(a)). The defendants do not explain how the

18

Secretary's cable directing consular officers that they "must refuse" visas squares with this express statutory limitation on his authority.

The defendants argue that the Nationality-Based Pause is not contrary to the INA because it "does not amend the statutory definition of public charge, eliminate the factors that Congress required consular officers to consider, change the statutory assignment of the determination to the consular officer, or create a freestanding self-executing refusal regime outside ordinary adjudication." Id. at 7–8. These formalistic distinctions obfuscate the practical import of the Pause. Consular officers may apply the ordinary mechanisms of adjudication, but they are permitted to reach only one result: refusal. At a risk of redundancy, the defendants' arguments are directly undermined by the text of the Secretary's cable, which states: "[C]onsular officer must refuse under [INA § 221(g)] to **all immigrant visa applicants** who have not been refused under another ground of ineligibility, if the applicant is a national of the [specified] countries[.]" Doc. No. 23-5 at 3 (emphasis in original). The cable directs consular officers to consider whether any grounds for ineligibility exist, to refuse applicants on those bases if they exist—and then, if no other ground for ineligibility exists, to refuse the applicant anyway due to the Nationality-Based Pause. Id. at 4–5. The policy plainly countermands consular officers' case-specific adjudication of immigrant-visa applications from the specified countries (at least, to the extent the officers do not identify any grounds to deem the applicants ineligible).

Because the defendants have not identified any statutory authority that would permit this usurpation of consular officers' individualized eligibility assessments, the Court concludes the plaintiffs are likely to succeed on their claim that the Nationality-Based Pause is "not in accordance with law" and "in excess of statutory . . . authority." 5 U.S.C. § 706(2).

19

### 2. *Significant Risk of Irreparable Harm*

"'Irreparable injury' in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 76 (1st Cir. 2005). "[T]he measure of irreparable harm is not a rigid one; it has been referred to as a sliding scale, working in conjunction with a moving party's likelihood of success on the merits." Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 485 (1st Cir. 2009).

The significant risk of irreparable injury is obvious here. Indeed, the government does not meaningfully contest that the plaintiffs have shown a risk of irreparable harm.[17] Doc. No. 24 at 9. Shariot is an ailing, elderly man who seeks to be reunited with—and to receive caregiving support from—his adult son, Nur. See Doc. No. 23-6. Shariot submits a declaration in which he avers that he fears "losing irreplaceable time with" Nur, and that the "emotional distress" of being separated from his son has worsened his health conditions. Id. ¶¶ 10, 12. These harms are not adequately compensable through money damages. See, e.g., Doe, 2026 WL 1170971, at *19 (concluding that declarations attesting to risk of loss of ability to work, of immigration detention or removal, and of significant delay or cancelation of trips to "see elderly or ill family members" present the "sorts of harms [that] are not measurable and not adequately compensable by money damages"). Shariot has shown that time is of the essence given his declining health; neither

---

[17] Instead, the defendants argue that the plaintiffs' "decision not to seek a preliminary injunction for more than six months after the filing of this case" undercuts their irreparable-harm showing. Doc. No. 24 at 1–2, 9. This argument falls short for two reasons. First, the relevant timeframe before plaintiffs moved for a preliminary injunction is not the six months since the plaintiffs filed suit but the less than six weeks since the Embassy communicated the Pause to Nur. Second, the plaintiffs' risk of irreparable harm has increased with time in light of Shariot's worsening health, Doc. No. 23-6 ¶¶ 10, 12, and the fact that, on the record before the Court, no progress has been made toward the termination of the Pause.

money damages nor a permanent injunction following a trial on the merits would adequately redress the harm imposed by the application of the indefinite Pause to Nur's case.

### 3. *Balance of Equities and Public Interest*

As noted above, when the government is the party opposing a preliminary injunction, the third and fourth factors "merge." Does 1–6, 16 F.4th at 37. These factors also favor preliminary relief. The plaintiffs have demonstrated they are likely to succeed on the merits of their claim that the challenged agency action is unlawful and that they face significant hardships without preliminary injunctive relief.

The defendants identify two public interests on the other side of the scale. Doc. No. 24 at 10. First, they contend that the government and the public "have a strong interest in 'ensur[ing] that immigrants from high-risk countries do not unlawfully utilize welfare in the United States or become a public charge.'" Id. (alteration in original) (quoting Doc. No. 14-2 at 1). True enough. But that proposition does not help the defendants here, because they do not explain why the individualized public-charge assessment established by Congress—and to which Nur's application would be subject if the Pause were enjoined against him—fails to adequately advance this public interest. Second, the defendants argue that the "government's equities include preserving the integrity of the visa adjudication process, maintaining consistent visa adjudication standards, and avoiding ad hoc judicial carveouts that risk inconsistent treatment across similarly situated applicants." Id. It is beyond dispute that there is a substantial public interest in the integrity of the visa-application process. But the Court has concluded (as a precondition to preliminary injunctive relief) that the defendants' policy likely violated the law. The defendants' invocation of process integrity and consistent standards, in this context, rings hollow. There is, of course, "a substantial public interest in having governmental agencies abide

21

by the federal laws that govern their existence and operations." League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016) (citation modified).

In summary, the plaintiffs have satisfied the familiar four-factor test as to their motion for a preliminary injunction enjoining the application of the Nationality-Based Pause as to Nur's application. Below, the Court orders such an injunction.

### B.     Motion to Dismiss

As the foregoing illustrates, the plaintiffs' APA challenge to the Pause (Count VI) is not "legally flawed" such that dismissal is appropriate at the pleadings stage. Atieh, 727 F.3d at 76 n.4. The motion to dismiss is DENIED as to Count VI.

The defendants argue that plaintiffs' unreasonable-delay claims (Counts I through III) are moot or barred by the doctrine of consular nonreviewability. Doc. No. 19 at 7–9. At the pleading stage, the plaintiffs have shown that their delay claims are neither moot nor barred by the doctrine of consular nonreviewability.[18] The motion to dismiss is DENIED as to Counts I through III.

Count IV asserts a claim under the Declaratory Judgment Act. Doc. No. 14 ¶ 69. The Declaratory Judgment Act creates a remedy, not a cause of action. Buck v. Am. Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (citing 28 U.S.C. § 2201(a)). The motion to dismiss is

---

[18] On the record before the Court, the consular section has communicated to Nur that it seeks specific additional information related to his medical examination and biometrics. Doc. No. 15-1 at 2 (citing 8 U.S.C. § 1201(g)). It has also advised Nur that it will "provide updates when the pause on immigrant visa issuances ends" and that it "appreciate[s] [Nur's] patience and understanding." Id. The Court herein orders the defendants not to apply the Pause to Nur's application, removing one of the barriers to the administrative processing of Nur's application. As a functional matter, then, the Ullahs' delay claims continue to present live controversies, and the Court's consideration of those claims involves not the "judicial review of a consular officer's denial of a visa," Muñoz, 602 U.S. at 907, but assessment whether the defendants have satisfied their "nondiscretionary duty to adjudicate visa applications" without an unreasonable delay, Order on Motion to Dismiss at 11, Sanadgol v. Rubio, No. 24-cv-11822-LTS (D. Mass. June 12, 2025), Dkt. 28; see also Ghasemi, 812 F. Supp. 3d at 137.

therefore ALLOWED as to Count IV. This dismissal does not affect the plaintiffs' request for declaratory relief, Doc. No. 14 at 16–18.

Finally, as pleaded in the amended complaint, it is unclear whether Shariot's due process claim (Count V) is substantive or procedural. Doc. No. 14 ¶ 70. In his opposition to the motion to dismiss, Shariot explains that Count V is a procedural due process claim stemming from the defendants' "substituting indefinite nonaction and then a blanket pause-based refusal regime" in place of required individualized adjudication. Doc. No. 21 at 17. But "[i]ndividuals do not possess a procedural due-process right 'in someone else's legal proceeding.'" Durrani, 2024 WL 4228927, at *7 (emphasis in original) (quoting Muñoz, 602 U.S. at 916). Harmed as Shariot is by the delay and (likely improper) procedures employed with respect to Nur's application, "that harm does not give [Shariot] a constitutional right to participate in [his noncitizen son's] consular process." Id. (quoting Muñoz, 602 U.S. at 917). And the complaint does not establish a constitutionally protected interest belonging to Shariot himself. The complaint thus fails to state a procedural due process claim, and the motion to dismiss is ALLOWED as to Count V.

IV.   CONCLUSION

For the foregoing reasons, the motion to dismiss (Doc. No. 18) is ALLOWED as to Counts IV and V and otherwise DENIED. The motion for preliminary injunction (Doc. No. 21) is ALLOWED IN PART and DENIED WITHOUT PREJUDICE IN PART as described herein.

The Court hereby ORDERS as follows:

1.  The defendants (and their agents) are ENJOINED from applying the Nationality-Based Pause to Nur Ullah's immigrant-visa application. The defendants are ORDERED to immediately lift the Pause as to him.

2.  No security under Federal Rule of Civil Procedure 65(c) is necessary or warranted under the circumstances of this case.

23

3. Within fourteen days of this Order, the defendants shall answer the amended complaint.

4. Within fourteen days of this Order, the parties shall file a joint status report setting out their joint or separate positions as to: (1) a proposed schedule for the case and (2) any other matter the parties wish to bring to the Court's attention.

SO ORDERED.

    /s/ Leo T. Sorokin

United States District Judge