**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

CATHOLIC LEGAL IMMIGRATION NETWORK, INC. (CLINIC), et al.,

*Plaintiffs*,

v.

MARCO RUBIO, in his official capacity as Secretary of State, and the UNITED STATES DEPARTMENT OF STATE,

*Defendants*.

Civil Action No. 1:26-cv-00858-JAV

**EXPEDITED RELIEF REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF**
**EMERGENCY MOTION TO ENFORCE AND FOR STATUS CONFERENCE**

## PRELIMINARY STATEMENT

Five days ago, this Court entered an order granting Plaintiffs partial summary judgment, vacating and declaring unlawful the Department of State's (DOS) indefinite suspension of the issuance of immigrant visas to nationals of 75 countries (the "Visa Ban"). *See* ECF 83. Final judgment was formally entered on August 24. *See* ECF 84. Yet the government, on the present record, continues to treat the vacated and unlawful policies as operative and has taken no steps whatsoever to implement the Court's order. Indeed, the Visa Ban announcement and guidance remain on the government's website without any acknowledgment of the order.[1] Instead, the government has taken numerous steps that appear to perpetuate the suspension of immigrant-visa processing the Court recently vacated and declared unlawful, including canceling immigrant visa interviews worldwide in the days following the Court's order;[2] directing consular officers to pause all visa adjudications;[3] and informing visa applicants[4] "that the decision regarding the visa pause

[1] *See, e.g.*, Immigrant Visa Processing Updates for Nationalities at High Risk of U.S. Public Benefits Reliance (last updated Feb. 2, 2026), *at* https://travel.state.gov/content/travel/en/News/visas-news/immigrant-visa-processing-updates-for-nationalities-at-high-risk-of-public-benefits-usage.html; U.S. Visas News, *at* https://travel.state.gov/content/travel/en/News/visas-news.html (last update August 18, 2026).

[2] *E.g.*, Trump Administration Aims to Revoke Visas of Foreign Citizens Applying for Asylum (Aug. 24, 2026), *available at* https://www.nytimes.com/2026/08/24/us/politics/trump-mass-visa-revocation-asylum.html; Kanishka Singh, *Trump administration issues pause on immigrant visa appointments for applicants worldwide*, Reuters (Aug. 25, 2026, 8:21 P.M.), https://www.reuters.com/legal/government/trump-administration-issues-pause-visa-appointments-applicants-worldwide-2026-08-26; *see also, e.g.*, u/Aron_Shallot7772, *All Immigrant visa Appointments Cancelled*, REDDIT (Aug. 25, 2026); u/irinpini, *Has anyone had an interview today?* REDDIT (Aug. 24, 2026), https://www.reddit.com/r/NationalVisaCenter/comments/1vx6u0k/has_anyone_had_an_interview_today; https://www.reddit.com/r/NationalVisaCenter/comments/1vxrwet/all_immigrant_visa_appointments_cancelled; u/WorkingTradition5022, *Currently crashing out*, REDDIT (Aug. 23, 2026), https://www.reddit.com/r/NationalVisaCenter/comments/1vwh7x5/currently_crashing_out.

[3] *Id.*

[4] Curtis Morrison (@curtismorrison), X, (Aug. 24, 20256, 12:25 P.M.), https://x.com/curtismorrison/status/2091924964735942799?s=46.

has not yet been formally approved or implemented" by the U.S. Department of State, thus leaving the Visa Ban "in effect at this time."[5]

As a result, individual Plaintiffs and the organizational Plaintiffs' clients, as well as hundreds of thousands of would-be immigrants around the world, remain in essentially the same position they were in before this Court's judgment: their immigrant-visa processing remains suspended. The Court's order documents the significant harms the Visa Ban has caused and continues to inflict on immigrant communities. *See* ECF 83 at 19–22. With each day that passes, those harms continue to accumulate and compound.

In light of the government's egregious and unexplained conduct, the Court should enforce its August 21, 2026 order and final judgment as described below and hold an emergency status conference by videoconference or phone as soon as practicable. Plaintiffs have conferred with Defendants, who indicate that they oppose this motion.

## LEGAL STANDARD

District courts have broad authority to enforce their own orders. *See, e.g.*, *In re Lafayette Radio Elec. Corp*., 761 F.2d 84, 93 (2d Cir. 1985) (explaining the "court's inherent power to prevent its judgments and orders from being ignored or avoided with impunity"); *Hunt v. Enzo Biochem, Inc*., 904 F. Supp. 2d 337, 344 (S.D.N.Y. 2012) ("Courts have inherent power to enforce their orders."). Accordingly, "[w]here a court possesses authority in the first instance to issue an order, it necessarily retains the inherent authority to effectuate that order." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, No. 09-CIV-9783, 2013 WL 2322678, at *11 (S.D.N.Y. May 21,

[5] Plaintiffs conferred with the government's counsel, first by email on Monday August 24, and Tuesday August 25, and then by phone on Wednesday, August 26, requesting information confirming the government's compliance with the Court's order and its actions described herein taken after the Court's order. As of this filing, Defendants have not responded to Plaintiffs requests or provided any evidence of compliance.

2013). Moreover, "[a] court can take 'any reasonable action . . . to secure compliance [with a court order], and the scope of a district court's equitable powers to remedy past wrongs is broad." *In re Tronox Inc*., 855 F.3d 84, 112 (2d Cir. 2017) (citations and internal quotations omitted). A "court's choice of how to enforce the order is reviewed for abuse of discretion," *id.*, meaning the court retains broad discretion in issuing enforcement orders.

## ARGUMENT

### I. The Court Should Enforce Its August 21, 2026 Order.

This Court should enter an order directing Defendants to immediately implement and effectuate the Court's order and final judgment because: (a) the Court's order vacated and declared unlawful the Visa Ban challenged in this litigation; (b) the U.S. Department of State, as documented below, has continued to apply and enforce the Visa Ban since the Court's order was entered and indeed has taken numerous unexplained actions that appear on their face to directly contravene the Court's order; and (c) the extraordinary harms the Visa Ban continues to inflict on individual Plaintiffs and the organizational Plaintiffs' clients weigh in favor of prompt enforcement.

a. The Court's vacatur order declared the Visa Ban unlawful in violation of 8 U.S.C. §§ 1152(a)(1)(A), 1201(g), and 22 C.F.R. § 40.6 and in excess of the Secretary of State's authority under 8 U.S.C. § 1104(a) and set aside and vacated the Visa Ban under the Administrative Procedure Act (APA). ECF 83 at 60; *see also* ECF 84 (formal entry of final judgment). By vacating the Visa Ban and declaring it unlawful, the Court intended not only to "restore the prior status quo," but also to establish "why the Policy was unlawful under the APA in this case" and "why any similarly defective agency action would be unlawful under the APA." *Id.* at 59. As the Court made clear, such relief would "avoid ambiguity regarding the respective rights and obligations of the parties" and mitigate the "significant risk that this dispute will return in substantially the same

form, requiring issues already thoroughly briefed and resolved to be revisited by this Court or another" *id.* (cleaned up). Because the Court's vacatur and declaratory order was effective and enforceable upon issuance, the order immediately invalidated the Visa Ban and should have had the immediate effect of providing reprieve to affected individuals.

b. It is now clear that Defendants are refusing to comply with the Court's order. First, as of this filing, five days after the Court's order, Plaintiffs are not aware, and the government has thus far not identified, any public-facing action acknowledging, let alone implementing, the Court's order and judgment. Indeed, the Visa Ban remains published, unaltered, on DOS's website, communicating to the public that the Ban remains operative. *See* Immigrant Visa Processing Updates for Nationalities at High Risk of U.S. Public Benefits Reliance (last updated Feb. 2, 2026), https://travel.state.gov/content/travel/en/News/visas-news/immigrant-visa-processing-updates-for-nationalities-at-high-risk-of-public-benefits-usage.html. Moreover, in communications sent to applicants after the Court issued its summary judgment order, the Department has taken the extraordinary position "that the decision regarding the visa pause has not yet been formally approved or implemented by the U.S. Government or the U.S. Department of State" and that "[t]herefore, the visa pause remains in effect at this time." Curtis Morrison (@curtismorrison), X, (Aug. 24, 20256, 12:25 P.M.), https://x.com/curtismorrison/status/2091924964735942799?s=46. In other words, it appears that the government has arrogated to itself the authority to second-guess this Court's order and judgment and decide whether and when it will comply with it.

On top of that, there have been widespread media and social media reports that just hours after the Court's order, DOS began canceling scheduled immigrant visa interviews *en masse* across the globe. *See* Edward Wong, *Trump Administration Aims to Revoke Visas of Foreign Citizens Applying for Asylum*, N.Y. Times (Aug. 24, 2026),

https://www.nytimes.com/2026/08/24/us/politics/trump-mass-visa-revocation-asylum.html; *see also supra* n. 2. The New York Times has reported that the cancellations were tied to additional training, stating that interviews would be postponed "until consular officers complete training sessions . . . on what the [D]epartment calls a public charge rule, in which consular officers are supposed to deny immigrant visas to applicants who might rely on public assistance when they are in the United States." *Id.*; *see also id.* ("When asked about the pause or postponement of visa interviews worldwide, the State Department issued a statement through an official[:] . . . 'To accommodate this in-depth training, appointments for visa services will be adjusted.'"). But DOS's public charge cable, also challenged in this lawsuit but not part of the summary judgment order, was issued nearly ten months ago, on November 6, 2025, ECF 1, ¶ 3, and has been operative during that entire period for all countries that were not subject to the 75-country visa ban. Defendants have not explained why a policy that has been operative for nearly ten months now requires the worldwide cancellation of scheduled interviews, what the new training will entail, or how long that interruption will last. The timing and scope of these actions—taken immediately after this Court vacated the Visa Ban—raise significant concerns that the government is not complying with this Court's order and taking actions to circumvent that order under the guise of a pretextual explanation.

At bottom, despite this Court's clear vacatur and declaratory order, Defendants appear to have taken multiple actions that, absent any explanation, appear to prevent this Court's order and judgment from taking practical effect.

c. Even were the government to contend that mass cancellation of interviews and suspension of adjudications is necessary to "train" for adoption of DOS's existing public-charge framework in order to comply with this Court's order, that contention fails for multiple reasons.

First, a new, suspiciously timed global training initiative does not constitute compliance or explain the government's failure to comply with the Court's order. That order requires the government to treat the challenged policy as vacated and no longer in effect. The government's ability to do so is not implicated in any way by any purported training initiatives. Whatever additional training may be required on the applicable public-charge standards going forward, it does not prevent Defendants from giving effect to the Court's order.

Second, pausing all immigrant-visa adjudications, whether for training or any other purpose, does not constitute compliance with the Court's order. Even assuming such a pause does not implicate the INA's non-discrimination requirements in the same way as a nationality-based pause, it does not avoid any of the other legal defects the Court identified and thus cannot be a valid method of complying with the Court's order. Just like the Visa Ban, pausing all adjudications "displaces consular officers from the role Congress assigned them in the visa issuance process, to make the final determination as to whether to refuse or grant immigrant visas to applicants in accordance with the INA and its implementing regulations." ECF 83 at 42. That statutory role is frustrated not only when the Department dictates the outcome of an adjudication, but also when it categorically prevents consular officers from completing adjudications at all. *See* 8 U.S.C. § 1202(b) (directing that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer"); *see also* 22 C.F.R. § 42.81(a) (directing that when a visa application has been properly completed and executed "the consular officer *must* issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa.") (emphasis added.); 9 FAM 504.1-3 (foreign affairs manual) ("[a] consular officer cannot temporarily refuse, suspend, or hold the visa for future action."). Moreover, a categorical pause "exceeds the statutory authority that the INA vests in the

Secretary of State" which "preclud[es] . . . the Secretary of State from controlling [consular officers'] determinations" relating to the granting or refusal of visas." *Id.* at 42–43 (alternation in original); *see* 8 U.S.C. § 1104(a), 1202(b). The Secretary cannot avoid that statutory limitation by stopping consular officers from adjudicating applications altogether. *See Ivanov*, slip op. at 18–19. And Defendants cannot use "training" as a substitute legal ground for preventing otherwise lawful visa adjudication or issuance. Section 1201(g) and 22 C.F.R. § 40.6 permit refusal only on a ground supplied by statute or regulation and, as this Court held, do not authorize the Secretary to interpose a blanket ban where the consular officer has identified no such ground. *See* ECF 83 at 38–41, 51. To the extent Defendants are continuing to prevent officers from completing adjudications or granting visas to otherwise eligible applicants solely because Department-wide training remains pending, it erects the same extra-statutory barrier under the guise of compliance.

Finally, the government's claim—that its extraordinary actions are the result of a routine training initiative—rings hollow. An asserted need for training would not itself supply authority to impose a categorical suspension of immigrant-visa processing for an unspecified period, let alone justify effectively ignoring the Court's order for now five days. *See Afghan & Iraqi Allies v. Rubio*, 824 F. Supp. 3d 64, 76–78 (D.D.C. 2026) (rejecting reliance on general administrative authority to justify a blanket suspension of statutorily required visa processing), appeal pending, No. 25-5480 (D.C. Cir.); *see also Ivanov*, slip op. at 21–23 (recognizing the government's discretion over visa-processing priorities, but holding categorical processing pauses unlawful where the agencies failed to explain their breadth, identify a meaningful limiting principle or endpoint, or explain why less drastic alternatives would not suffice). The reports of mass cancellations surfaced over the weekend, within hours after the Court's order was issued. There is no public record of the government's prior plans for this training initiative, and it was put into

effect only hours before the canceled interviews were scheduled to take place on Monday, August 24, 2026. If the government had a genuine need to train before implementing the Court's order, it should have filed a motion with this Court explaining that need and formally requesting relief from the order to that effect. It has not done so.

d. Plaintiffs cannot wait for Defendants to come into compliance on their own terms and schedule. Plaintiffs have repeatedly raised their concerns with Defendants, both in writing and through telephonic conferral. To date, Defendants have offered no assurances of actual or imminent compliance. As the Court thoroughly documented in its vacatur order, the Visa Ban is unlawful many times over on multiple statutory grounds, and Plaintiffs have been and continue to be significantly harmed by the Ban. With each day that passes, these harms accumulate and compound, denying Plaintiffs and other injured visa applicants the practical relief of vacatur without remand that the Court's judgment was meant to secure.[6] Yet the government blithely takes the position that it may choose whether and when to implement the Court's order. That is not the law, and the Court should not abide the government's wanton disregard of this Court's order and final judgment.

**II. The Court Should Direct Defendants to Demonstrate Full Compliance with Its Order.**

[6] The consequences of even a temporary suspension are especially acute for diversity-visa applicants. FY2026 selectees remain eligible to receive diversity visas only through September 30, 2026, after which their eligibility expires. In a recent decision, the U.S. District Court for the District of Columbia described that deadline as "unforgiving" and directed the State Department to take reasonable steps during the remainder of the fiscal year to reconsider the applications of the diversity-visa plaintiffs and their derivative beneficiaries that had been refused solely under the challenged State Department pauses. *Ivanov*, slip op. at 2-3, 33. Even a relatively short suspension at this stage therefore risks permanently depriving diversity-visa applicants of the opportunity to receive visas for which they were selected. The approaching end of the fiscal year also heightens the consequences for applicants in numerically limited immigrant-visa categories, where visa-number availability is recalculated at the start of the new fiscal year and cutoff dates may retrogress or categories may become unavailable.

Accordingly, Plaintiffs respectfully request that the Court enforce its August 21, 2026, order by ordering Defendants to immediately effectuate it through the following actions and any other forms of compliance the Court deems appropriate:

1. Within 24 hours of the enforcement order, circulate a copy of the vacatur and declaratory judgment order to all DOS personnel and instruct all DOS personnel to comply with the order by immediately ceasing application of the Visa Ban and returning to the status quo ante, including by instructing all DOS personnel that no training or implementation measure may be applied to continue or recreate the suspension of immigrant-visa processing imposed by the vacated 75-country Visa Ban.
2. Within 24 hours of the enforcement order, update the DOS website to indicate the Visa Ban has been vacated and is no longer operative.
3. Immediately cease sending correspondence to visa applicants suggesting that the decision regarding the visa pause has not yet been formally approved or implemented by the U.S. Government or the U.S. Department of State or that the visa pause remains in effect.
4. Within 24 hours of the enforcement order, file with the Court a written status report that:
    a. advises the Court as to what specific steps Defendants have taken to comply with the August 21 order and explains if no such steps have been taken why the government has failed to do so;
    b. provides copies of any guidance and instructions circulated to DOS personnel on how to comply with the August 21 order and describes any verbal guidance provided to DOS personnel by phone or in person, including any directive,

guidance, or instruction to pause visa processing for "training" or to cancel visa interviews;

c. explains the factual and legal basis for Defendants' cancellation or postponement of visa interviews following the August 21 order; identifies the scope and anticipated duration of any resulting suspension of visa processing, including whether the suspension applies to FY2026 diversity-visa applicants; identifies the training or other implementation activity said to require that suspension; explains why such a suspension is necessary to accomplish that activity; and provides a chronology of when any directive to cancel interviews and engage in "training" was first given; and

d. explains on what legal basis the Department communicated to visa applicants after the August 21 order "that the decision regarding the visa pause has not yet been formally approved or implemented by the U.S. Government or the U.S. Department of State," and "[t]herefore, the visa pause remains in effect at this time."

5. File weekly status reports with the Court thereafter until further order of the Court.

In addition, Plaintiffs respectfully request that the Court hold an emergency status conference as soon as practicable under the Court's schedule.

## CONCLUSION

Plaintiffs respectfully submit that the Court should enforce its August 21, 2026, order as described above, and further order the parties to appear for an emergency status conference by videoconference or phone as soon as practicable given the Court's schedule.

//

//

Dated: August 26, 2026

Respectfully submitted,

*/s/ Joanna Elise Cuevas Ingram*
Joanna Elise Cuevas Ingram
Tanya Broder*
Efrén C Olivares*
Elizabeth Choo**
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 34573
Washington, D.C. 20043
(213) 377-5258
cuevasingram@nilc.org
broder@nilc.org
olivares@nilc.org
choo@nilc.org

*/s/ Erez Reuveni*
Erez Reuveni*
Catherine M.A. Carroll*
Elena Goldstein
Jonathan H. Hurwitz
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 316-9538 (Reuveni)
ereuveni@democracyforward.org
ccarroll@democracyforward.org
egoldstein@democracyforward.org
jhurwitz@v.democracyforward.org

*/s/ Hasan Shafiqullah*
Hasan Shafiqullah
Susan Welber
Evan Henley
Emily Lundgren
THE LEGAL AID SOCIETY
49 Thomas St., 5th Floor
New York, NY 10013
(212) 577-3300
hhshafiqullah@legal-aid.org
sewelber@legal-aid.org

ewhenley@legal-aid.org
elundgren@legal-aid.org

/s/ Baher Azmy
Baher Azmy
Angelo Guisado
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
7th Floor
New York, New York 10012
(212) 614-6445
bazmy@ccrjustice.org
aguisado@ccrjustice.org

/s/ Antionette Dozier
Antionette Dozier*
David Kane*
Joy Dockter*
WESTERN CENTER ON LAW & POVERTY
3701 Wilshire Blvd. Suite 208
Los Angeles, CA 90010
(213) 487-7211
adozier@wclp.org
dkane@wclp.org
jdockter@wclp.org

/s/ Sarah Wilson
Sarah Wilson*
David Kim*
COLOMBO & HURD
301 E. Pine Street, Suite 450
Orlando, Florida 32801
(407) 478-1111
swilson@colombohurd.com
dkim@colombohurd.com

* *Admitted Pro Hac Vice*

** *Petition for Attorney Admission Pending*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Erez Reuveni, hereby certify that on August 26, 2026, I filed the foregoing Document with the Clerk of the Court for the United States District Court for the Southern District of New York using the CM/ECF system. Notice of this filing is being sent by operation of the Court's electronic filing system to all counsel of record who are registered CM/ECF users. I have also emailed counsel of record for Defendants.

*/s/ Erez Reuveni*
Erez Reuveni

**CERTIFICATE OF COMPLIANCE**

I, Erez Reuveni, hereby certify that this document complies with the word count limitations imposed by the Court's local rules.

*/s/ Erez Reuveni*
Erez Reuveni