**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

CATHOLIC LEGAL IMMIGRATION NETWORK, INC. (CLINIC), et al.,

*Plaintiffs*,

v.

MARCO RUBIO, in his official capacity as Secretary of State, and the UNITED STATES DEPARTMENT OF STATE,

*Defendants*.

Civil Action No. 1:26-cv-00858-JAV

**REPLY MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION TO ENFORCE AND FOR STATUS CONFERENCE**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ................................................................................................................ 2

CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

**CASES** Page(s)

*Action on Smoking & Health v. Civ. Aero. Bd.*,
713 F.2d 795 (D.C. Cir. 1983) ..... 4

*Batalla Vidal v. Wolf,*
No. 16-CV-4756, 2020 WL 7121849 (E.D.N.Y. Dec. 4, 2020) ..... 11

*Bautista v. Santacruz*,
820 F. Supp. 3d 1016 (C.D. Cal. 2026) ..... 11

*Dolan v. Fed. Emergency Mgmt. Agency*,
824 F. Supp. 3d 1215 (D.N.M. 2026) ..... 12

*Donovan v. Fall River Foundry Co., Inc.*,
696 F.2d 524 (7th Cir. 1982) ..... 12

*Harrison Baking Co. v. Bakery & Confectionery Workers, Local No. 3*,
777 F. Supp. 306 (S.D.N.Y. 1991) ..... 11

*Hebert v. Exxon Corp.*,
953 F.2d 936 (5th Cir. 1992) ..... 12

*Indep. U.S. Tanker Owners Comm. v. Dole*,
809 F.2d 847 (D.C. Cir. 1987) ..... 4

*Maness v. Meyers*,
419 U.S. 449 (1975) ..... 4

*N.L.R.B. v. Westphal*,
859 F.2d 818 (9th Cir. 1988) ..... 12

*Nat'l TPS Alliance v. Noem*,
2025 WL 2639214 (N.D. Cal. Sept. 11, 2025) ..... 11, 12

*Rivera Perez v. Mass. Gen. Hosp.*,
193 F.R.D. 43 (D.P.R. 2000) ..... 12

*Tri Cnty. Wholesale Distributors, Inc., v. Labatt USA Operating Co., LLC*,
311 F.R.D. 166 (S.D. Ohio 2015) ..... 12

## STATUTES

8 U.S.C.

§ 1151(c) .......... 10

§ 1151(d) .......... 10

## FEDERAL RULES

Fed. R. Civ. P.

Rule 54(b) .......... 11

Rule 62 .......... 9, 10, 11,

Rule 62(a) .......... 9, 10, 11

Rule 62(c) .......... 10, 11

Rule 62(d) .......... 10, 11

## OTHER AUTHORITIES

Gisela Salomon & Matthew Lee, *How the Trump Administration Is Expanding Its Immigration Crackdown to People Entering Legally*, Associated Press, https://perma.cc/J9H6-7MYH .......... 6

U.S. Dep't of State, *Immigrant Visa Processing Updates for Nationalities at High Risk of Public Benefits Usage*, https://perma.cc/MQM2-2QUG (last updated Aug. 28, 2026) .......... 2

Kanishka Singh, *Trump Administration Issues Pause on Immigrant Visa Appointments for Applicants Worldwide*, Reuters, https://perma.cc/ZC83-P5GF (last updated Aug. 26, 2026) .......... 6

u/MrUsRa, *Immigrant Visa Interview Reschedule*, r/NationalVisaCenter, REDDIT (Aug. 26–28, 2026), https://perma.cc/RXM8-NZ96 (last visited Aug. 30, 2026) .......... 7

u/Nickybarbosa, *Anyone with Interviews Getting Canceled for This Month of September?*, r/NationalVisaCenter, REDDIT (Aug. 30, 2026), https://perma.cc/6QY68NAD .......... 6

## PRELIMINARY STATEMENT

In the nine days since this Court entered what Defendants concede is a "clear" order vacating the Department of State's (DOS) indefinite suspension of the issuance of immigrant visas to nationals of 75 countries (the "Visa Ban"), Defendants have taken two concrete steps: (1) a full week after the Court's order, after filing their response to this motion, they posted a one-sentence acknowledgment of the vacatur online,[1] and (2) they stopped a contractor sending false information about the status of the Ban several days after its vacatur. ECF 90 at 2; 90-1, ¶ 8. Defendants defend their compliance effort in a conclusory and evasive declaration that fails to offer any specifics on their efforts or timeline. The response notably fails to explain why, during Plaintiffs' efforts to meet and confer days after the order, Defendants were unable to answer simple questions like "whether the 75-country visa pause is presently being treated by the State Department as no longer operative," or "when the government will update its public-facing websites . . . to reflect the court's ruling."[2] It does not address the widespread reports that Defendants canceled visa processing services worldwide after the vacatur, including interviews scheduled further out than the August 31 date suggested in their brief (though omitted from the sworn declaration), or their own public assertions that that they were immediately pausing global visa processing in the aftermath of the Court's order for "training."[3] Nor do Defendants state clearly when visa processing will re-commence. Critically, Defendants do not explain when individuals subject to the Ban who are in administrative processing because of the Ban and do not require any subsequent interviews will have their visas adjudicated. And Defendants admit that they have still not circulated relevant guidance to consular officers.

---

[1] *See* https://perma.cc/MQM2-2QUG (updated August 28, 2026).
[2] *See* Ex. 1, Emails Between Counsel (Aug. 24-26).
[3] *See* ECF 86, 5-6.

This is not good-faith compliance. To date, all Plaintiffs remain in the same status as they were prior to the Court's order. Full compliance with the order—and returning to the status quo—is simple. All individuals whose visa applications were refused pursuant to the Ban were fully vetted for every other inadmissibility ground prior to being placed in administrative processing status, and tagged "#4AIVPause" to wait for the end of the Ban. ECF 63 at 3-4. The Ban was therefore implemented with a built-in unwind process that allows impacted visas to be readily identified and reopened. With this fiscal year's visa-number allocations set to expire on September 30 and new policies on the horizon, this Court should not allow Defendants to feign compliance in a vague declaration that does not address any of the issues raised by Plaintiffs. Visa applicants subject to this "patently unlawful" policy, ECF 83 at 18, family and employment petitioners, and the organizations that serve them are entitled to a clear understanding of when processing will resume and what actions the government has—or has not—taken to end its unlawful policy.

## ARGUMENT

### I. The Court Should Enforce Its August 21, 2026 Order.

#### A. Defendants Have Not Demonstrated Actual Compliance with the Court's Order.

Defendants do not and cannot dispute that they were required to immediately comply with the Court's vacatur order. "[A]ll orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, [they] must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." *Maness v. Meyers*, 419 U.S. 449, 458 (1975).

Nor do Defendants dispute the effect of the Court's order, which restored the "*status quo ante,* before the [vacated policy] took effect." *Indep. U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847, 855 (D.C. Cir. 1987) (emphasis in original); *see, e.g.*, *Action on Smoking & Health v. Civ.*

*Aero. Bd.*, 713 F.2d 795, 797 (D.C. Cir. 1983) ("To 'vacate,' as the parties should well know, means 'to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside.'"). Thus, the moment the Court vacated the Visa Ban, the preexisting legal regime requiring visa processing sprung back into legal effect. *See id.* That status quo requires consular officers to adjudicate visa applications presented to them and to issue, refuse, or deny them on a statutorily enumerated legal ground. ECF 83 at 38-39 (discussing controlling law).

The government's response does not come close to demonstrating actual, prompt compliance with the Court's order. It fails to grapple with most of Plaintiffs' arguments and instead indicates that DOS did not begin taking steps toward compliance until Friday, August 28, a full week after the Court's decision, and only in response to Plaintiffs' motion and on the day their response was due—and even then, DOS took only minimal measures. While DOS's website now finally includes one sentence acknowledging the order, and Defendants claim to no longer be actively disseminating false information about the status of the vacated policy, Defendants fall woefully short in demonstrating that an enforcement order is not appropriate here.

To start, on the critical issue of disseminating guidance on the Court's order, the Armstrong Declaration states only that the Bureau of Consular Affairs "received notice" of the Court's order on August 21. ECF 90-1 ¶ 4. It does not say that the order has been communicated to U.S. embassies and consulates, let alone that consular officers received notice of the order or guidance on how to implement it. Instead, one week later, DOS states it is "coordinating guidance" concerning applicants whose refusals were vacated. *Id.* ¶ 6. Nothing in the declaration states that this guidance has actually been disseminated or what its contents or scope are or will be.

Defendants' explanation for the worldwide disruption is similarly problematic. Defendants

say DOS is rescheduling immigrant-visa appointments in part "to allow time for appropriate coordination on guidance to implement the Court's order." *Id.* ¶ 7. But the Court's order concerned a policy applicable only to nationals of 75 countries. It did not require DOS to devise a new adjudicatory scheme. It simply required the Department to stop applying the vacated Visa Ban, revert to the status quo, and accordingly to proceed in the normal course with cases that had been held or refused solely because of the Ban. Indeed, the Visa Ban directed consular officers to conduct a full interview and adjudication, collecting all relevant information, including on public charge issues, and then, if the applicant was otherwise still eligible for a visa, to refuse the visa under section 1201(g) and place the application in administrative processing. ECF 63 at 3-4. No training whatsoever is required to direct officers to simply remove such applicants from administrative processing and issue visas consistent with controlling law. Nothing about those obligations explains why DOS needed to halt immigrant-visa appointments around the world, including for applicants in countries not targeted by the Visa Ban. The sweeping scope of the disruption is especially difficult to reconcile with Defendants' characterization of it as merely a step in the normal course toward implementing this Court's ruling. *See* ECF 90 at 3.

In the days between the Court's order and the government's response to this motion, DOS publicly attributed its current blanket pause on visa appointments to a "global training initiative." "Kanishka Singh, *Trump Administration Issues Pause on Immigrant Visa Appointments for Applicants Worldwide*, Reuters, https://perma.cc/ZC83-P5GF. The Associated Press separately reported that the pause was tied to the Department's application of the public-charge ground of inadmissibility. *See* Gisela Salomon & Matthew Lee, *How the Trump Administration Is Expanding Its Immigration Crackdown to People Entering Legally*, Associated Press, https://perma.cc/J9H6-7MYH. The public statement reported by Reuters did not identify any timeline for completing the

training, indicating only that appointments were being adjusted to accommodate it. Singh*, Trump Administration Issues Pause*, *supra* p. 4. Meanwhile, the Armstrong Declaration makes no mention of any training. It refers only to "updated procedures in applying the public charge ground of inadmissibility." ECF 90-1 ¶ 7. Nor does it explain why a sudden pause on visa appointments around the world to allow for training would be necessary now when DOS has been applying its November 2025 public-charge guidance for nearly a year. DOS does not cite any guidance or changes to the Foreign Affairs Manual (FAM) or identify any intervening statutory or other relevant authority necessitating training. DOS's failure to resume visa processing in accordance with the vacatur order thus cannot be explained by some intervening new policy or change in the regulatory framework, and neither the government's response nor the Armstrong Declaration contends otherwise. Indeed, those filings do not even acknowledge DOS's public statements made earlier in the week, let alone endorse them.

Defendants' response instead characterizes the worldwide disruption as simply a "temporary rescheduling of immigrant-visa appointments through August 31." ECF 90 at 3. But that raises more questions than it answers, and appears to be false. That characterization does not appear in the Armstrong Declaration, leaving unclear the source of that date or whether it carries any authority. It is also unclear what "through August 31" means. If Defendants mean that ordinary processing will resume September 1, neither the declaration nor the public record supports that, let alone that nationals of the 75 countries covered by the Ban are being scheduled for interviews or processing. The Associated Press reports that August interviews are being pushed out into September, October, and November. *See Salomon & Lee*, *supra*. CLINIC affiliates report that two Central African Republic applicants' September 10, 2026 visa interviews at the U.S. Embassy in Cameroon and an Albanian applicant's August 27, 2026 interview were canceled on August 24

and 25, 2026, shortly after the 75-Country Ban was vacated, with no rescheduled dates listed. *See* Charles Wheeler Decl. ¶10, Exs. A & B. Other contemporaneous applicant reports show the disruption is not confined to interviews originally scheduled in August. For example, a September 3 interview in Ciudad Juarez has been slated for rescheduling, as was a September 9 interview in London. *See* u/MrUsRa, *Immigrant Visa Interview Reschedule*, r/NationalVisaCenter, REDDIT (Aug. 26–28, 2026), https://perma.cc/RXM8-NZ96. And just today multiple applicants report cancellations without rescheduling of September appointments including September 16 in Guatemala, September 23 in Manilla, September 29 in Madrid, and September 30 in Juarez and London, among others. *See* u/Nickybarbosa, *Anyone with Interviews Getting Canceled for This Month of September?*, r/NationalVisaCenter REDDIT (Aug. 30, 2026), https://perma.cc/6QY6-8NAD.

Nor is "rescheduling" necessarily the same thing as providing applicants with a new appointment. Both CLINIC affiliates and Reuters reported that applicants were told only that they would receive a new date in the future. *See* Wheeler Decl. ¶¶10-11, Exs. A & B. Singh, *Trump Administration Issues Pause*, *supra* p. 4. And Defendants themselves acknowledge that applicants were incorrectly told after the Court's decision that the Visa Ban "remains in effect," while DOS is still "in the process" of updating its public-facing materials. ECF 90-1 ¶¶8–9. Plaintiffs' own experiences bear this out: none has received any communication, instructions, or other concrete indication that processing of their applications has resumed or that they have been removed from administrative processing. *See infra* Arg. § B. Defendants might now, more than a week after the Court's order, be taking tentative steps toward compliance, but they still have not told the Court when the pause will end or when adjudications not subject to the Visa Ban will resume.

In short, Defendants' submission and sworn statement do not demonstrate actual, prompt

compliance with the Court's order. Instead, they raise more questions than answers and suggest that Defendants only began even attempting to comply after they were caught not complying. The Court should thus enforce its order as outlined in the Plaintiffs' opening brief and proposed order.

**B. Plaintiffs' Own Experiences Demonstrate Noncompliance and Significant Harms.**

Tellingly, the government's submission says nothing about what, if any, communications DOS has made to Plaintiffs or when their applications will be removed from the limbo of administrative processing. Indeed, Plaintiffs' experiences since the Court's order further demonstrate non-compliance. Wheeler Decl., ¶¶10-12, Exs. A & B; Decl. of Agnes Kyeremaa ("Kyeremaa Decl.") ¶¶11-12; Decl. of Amaha Kassa ("Kassa Decl.") ¶¶17, 33. To date, no Plaintiff has received any communication or information from consular posts in light of the August 21 order, despite their attorneys' and in some instances, Plaintiffs' themselves having requested information concerning their applications. Kyeremaa Decl. ¶¶11-12; Decl. of Cesar Andred Aguirre ("Aguirre Decl.") ¶¶27-28; Decl. of Maru Mahmud Hassen ("Maru Hassen Decl.") ¶¶13-15, Decl. of Munthaz Mahmud Hassen ("Munthaz Hassen Decl.") ¶¶15-17; Decl. of Adrian Mitchell ("Mitchell Decl."), ¶¶20-22; Decl. of Patricia Richardson ("Richardson Decl.") ¶¶16-18; Decl. of Andres Alfonso Medina Ramirez ("Medina Ramirez Decl.") ¶¶10-12; Decl. of Fernando Lizcano Losada ("Losada Decl.") ¶¶10-12; Decl. of Juan David Buitrago ("Buitrago Decl.") ¶¶11-13; Decl. of Lina Margarita Angulo Penarada ("Penaranda Decl.") ¶¶7-8. The lack of any communication from DOS to Plaintiffs further supports the conclusion that DOS had not even begun to implement the Court's order until at least August 28, when it updated its public-facing website. That is on top of the significant ongoing harms caused to Plaintiffs by uncertainty and delay in vindicating their rights under the judgment, *e.g.*, Aguirre Decl., ¶¶ 27-44; Munthaz Hassen Decl., ¶¶18-25; Maru Hassen Decl., ¶¶15-25; Mitchell Decl. ¶¶22-34; Buitrago Decl., ¶¶14-19;

Penaranda Decl., ¶¶10-16; Losada Decl., ¶¶12-17; Richardson Dec., ¶¶18-30,; Kassa Decl., ¶¶25-34, and the significant time and resources CLINIC and ACT must devote to responding to ongoing noncompliance. *E.g.*, Wheeler Decl., ¶¶12-16; Kassa Decl., ¶¶ 37-39.

The fast-approaching end of the fiscal year creates an additional and concrete risk for immigrant visa applicants. Congress makes a limited number of employment-based immigrant visas available each fiscal year, and unused numbers from that annual allotment are not carried forward for employment-based issuance in later years. Although unused employment-based numbers are taken into account in calculating the following year's family-sponsored limit, the relevant statutory calculation has effectively limited family-sponsored preference immigration to 226,000 each year for more than two decades. *See* Cong. Rsch. Serv., R45020, *Primer on U.S. Immigration Policy* 5 n.20 (Mar. 31, 2025). As a result, unused employment-based numbers ordinarily do not increase the following year's family-sponsored allocation and are "effectively lost." 89 Fed. Reg. 24.628, 24.642 n.158 (Apr. 8, 2024). For applicants whose cases could otherwise be completed this fiscal year, continued delay thus risks allowing visa numbers available for their cases to disappear from the employment-based pool altogether on September 30. Fiscal-year underuse can also have consequences beyond the applicants immediately affected, altering the number of visas available across preference categories in later years and affecting priority-date movement. *See* 8 U.S.C. § 1151(c), (d).

**C. At Minimum, the Court Should Require a Prompt and Focused Status Report.**

Defendants argue that Plaintiffs seek unnecessary ongoing supervision of DOS. ECF 90 at 3–5. But Plaintiffs seek only the information necessary for the Court to determine whether Defendants have actually implemented the judgment they admit is "fully operative" or have instead engaged in pretextual actions to delay or avoid implementing that order. Defendants rely on their

implementation efforts as the principal reason the Court should deny enforcement, yet their account of those efforts is vague and inconsistent at best. Even assuming Defendants have in fact begun implementation, they should be required to say specifically what implementation has in fact occurred, what steps remain, and when those further steps will be taken. A status report should state whether the August 21 order and any implementing guidance have been sent to consular posts and when. It should explain what posts have been told to do with refusals that were based only on the Visa Ban and when those adjudications will resume. And because Defendants themselves have made the broad rescheduling of immigrant-visa appointments and the alleged need for public charge training part of their public justification for the delay in implementing the Court's order, they should provide a straightforward chronology of those decisions and any associated training or "updated procedures."

That is not judicial management of ordinary consular operations, but the minimum information necessary to determine whether Defendants are complying with this Court's order.

**D. Rule 62 Does Not Bar the Court from Enforcing Its Judgment.**

Rule 62(a) provides no basis to deny relief. Courts routinely enforce their vacatur or declaratory judgment orders pursuant to their inherent authority, without any impediment from Rule 62, and without waiting 30 days to do so. *See, e.g.*, *Bautista v. Santacruz*, 820 F. Supp. 3d 1016 (C.D. Cal. 2026) (issuing coercive relief directing DHS to take numerous actions after DHS responded to court order vacating a policy by issuing a similar decision); *Batalla Vidal v. Wolf,* No. 16-CV-4756, 2020 WL 7121849 (E.D.N.Y. Dec. 4, 2020) (supplementing a prior vacatur order where the government implemented a substantially similar policy hours after the court's prior vacatur order by declaring those actions unlawful and directing affirmative compliance and reporting obligations).

Moreover, Rule 62(a) has no application to the vacatur and declaratory relief at issue here. Rule 62(a) provides that, "[e]xcept as provided in Rule 62(c) and (d), execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise." Fed. R. Civ. P. 62(a). Rule 62(c), in turn, exempts "an interlocutory or final judgment in an action for an injunction" from that automatic stay. Fed. R. Civ. P. 62(c)(1). The Rule 62(a) stay, both in its current and prior iterations, has thus long been understood as limited to "proceedings to enforce" monetary judgments and similar orders and does not otherwise reach vacaturs or declaratory orders. *See, e.g.*, *Hebert v. Exxon Corp*., 953 F.2d 936, 938 (5th Cir. 1992) (explaining rule turns "on whether the judgment involved is monetary or nonmonetary," whether declaratory or not); *Donovan v. Fall River Foundry Co., Inc.,* 696 F.2d 524 (7th Cir. 1982) (rule does not cover "an order to do" something, but "rather than an order to pay").[4] That makes good sense. Rule 62(a)'s automatic stay rule, together with its rule requiring a bond pending appeal, is concerned with "protect[ing] the prevailing plaintiff from the risk of a later uncollectible judgment." *N.L.R.B. v. Westphal*, 859 F.2d 818 (9th Cir. 1988). The requirements make no sense in the context of a vacatur that requires immediate compliance and raises no concern a judgment might be uncollectible later. *Id.* ("When applied to a subpoena compliance order, this protection is largely meaningless"); *see, e.g.*, *Dolan v. Fed. Emergency Mgmt. Agency*, 824 F. Supp. 3d 1215, 1226 (D.N.M. 2026) (rejecting application of Rule 62(a) to final judgment vacating an agency rule compelling certain agency actions).

Defendants stress Rule 62(a)'s reference to "proceedings to enforce," but they disregard

---

[4] These cases address a prior version of Rule 62 that is substantively identical. However, the prior version of Rule 62(a) was at the time codified at as Rule 62(d). *See* 2018 Committee Notes, Rule 62 ("Subdivisions (a), (b), (c), and (d) of former Rule 62 are reorganized and the provisions for staying a judgment are revised.").

the express exception for judgments governed by Rule 62(c), which covers orders that are not "a monetary judgment or its equivalent." *Tri Cnty. Wholesale Distributors, Inc., v. Labatt USA Operating Co., LLC*, 311 F.R.D. 166, 173 (S.D. Ohio 2015); *see, e.g.*, *Rivera Perez v. Mass. Gen. Hosp*., 193 F.R.D. 43, 44 (D.P.R. 2000) ("Where an appeal is taken from an order or judgment that is neither directly nor indirectly monetary in nature, the courts have found Rule 62(d)'s [(the predecessor rule to now Rule 62(a))] automatic stay provision inapplicable"). This action sought multiple forms of non-monetary relief, including a permanent injunction barring enforcement of the Visa Ban, an order requiring Defendants to resume immigrant-visa adjudications and issuance, vacatur, and declaratory relief. *See* Compl., ECF 1, at 1 (captioned "Complaint for Vacatur, Declaratory and Injunctive Relief"); *id.* ¶¶ 8, 23, 161, 165, 170, 178, 184, 188, 193, 199, 206, 210, 215, 220; *id.* Prayer for Relief ¶¶ f–g. Although the Rule 54(b) judgment grants vacatur and declaratory relief rather than an injunction, as explained above, the distinction in labels does not resolve the Rule 62 question. It is indisputable that the order and this case do not involve a monetary judgment or its equivalent.

Indeed, this Court has applied that very principle in the Rule 62 context. In *Harrison Baking Co. v. Bakery & Confectionery Workers, Local No. 3*, 777 F. Supp. 306, 310–11 (S.D.N.Y. 1991), the court held that an order requiring affirmative compliance was analogous to an injunction for purposes of Rule 62 and therefore was not subject to Rule 62(a)'s automatic stay. More recently, in the closely analogous *National TPS Alliance v. Noem*, No. 25-cv-1766, 2025 WL 2639214 (N.D. Cal. Sept. 11, 2025), the government invoked Rule 62(a) after entry of a final APA judgment setting aside agency action. The court rejected the argument and held that Rule 62(c), rather than Rule 62(a)'s automatic stay, governed. *Id.*, *2.

In any event, even if Rule 62(a) applied, it expressly provides that the 30-day stay operates

only "unless the court orders otherwise." Fed. R. Civ. P. 62(a). *National TPS Alliance* relied on that language as an independent basis for immediate enforcement. *Nat'l TPS Alliance*, 2025 WL 2639214. Thus, even on Defendants' reading of the Rule, this Court need not wait until September 23 to determine whether its judgment is actually being carried out or to enforce its judgment. The Court should reject Defendants' Rule 62 argument and grant Plaintiffs' motion or, at minimum, require the prompt status report described above, in addition to the reporting and document production requirements outlined in Plaintiffs' initial motion and proposed order.

## CONCLUSION

Plaintiffs respectfully submit that the Court should enforce its August 21, 2026, order as described in their opening motion, the proposed order, and herein.

//

//

Dated: August 30, 2026

Respectfully submitted,

*/s/ Joanna Elise Cuevas Ingram*
Joanna Elise Cuevas Ingram
Tanya Broder*
Efrén C Olivares*
Elizabeth Choo**
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 34573
Washington, D.C. 20043
(213) 377-5258
cuevasingram@nilc.org
broder@nilc.org
olivares@nilc.org
choo@nilc.org

*/s/ Erez Reuveni*
Erez Reuveni*
Catherine M.A. Carroll*
Elena Goldstein
Jonathan H. Hurwitz
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 316-9538 (Reuveni)
ereuveni@democracyforward.org
ccarroll@democracyforward.org
egoldstein@democracyforward.org
jhurwitz@v.democracyforward.org

*/s/ Hasan Shafiqullah*
Hasan Shafiqullah
Susan Welber
Evan Henley
Emily Lundgren
THE LEGAL AID SOCIETY
49 Thomas St., 5th Floor
New York, NY 10013
(212) 577-3300
hhshafiqullah@legal-aid.org
sewelber@legal-aid.org

ewhenley@legal-aid.org
elundgren@legal-aid.org

_/s/ Baher Azmy_
Baher Azmy
Angelo Guisado
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
7th Floor
New York, New York 10012
(212) 614-6445
bazmy@ccrjustice.org
aguisado@ccrjustice.org

_/s/ Antionette Dozier_
Antionette Dozier*
David Kane*
Joy Dockter*
WESTERN CENTER ON LAW & POVERTY
3701 Wilshire Blvd. Suite 208
Los Angeles, CA 90010
(213) 487-7211
adozier@wclp.org
dkane@wclp.org
jdockter@wclp.org

_/s/ Sarah Wilson_
Sarah Wilson*
David Kim*
COLOMBO & HURD
301 E. Pine Street, Suite 450
Orlando, Florida 32801
(407) 478-1111
swilson@colombohurd.com
dkim@colombohurd.com

* *Admitted Pro Hac Vice*

** *Petition for Attorney Admission Pending*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Erez Reuveni, hereby certify that on August 30, 2026, I filed the foregoing Document with the Clerk of the Court for the United States District Court for the Southern District of New York using the CM/ECF system. Notice of this filing is being sent by operation of the Court's electronic filing system to all counsel of record who are registered CM/ECF users. I have also emailed counsel of record for Defendants.

*/s/ Erez Reuveni*
Erez Reuveni

## CERTIFICATE OF COMPLIANCE

I, Erez Reuveni, hereby certify that this document complies with the word count limitations imposed by the Court's local rules.

*/s/ Erez Reuveni*
Erez Reuveni