**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

CATHOLIC LEGAL IMMIGRATION NETWORK, INC. (CLINIC), et al.,

*Plaintiffs*,

v.

MARCO RUBIO, in his official capacity as Secretary of State, and the UNITED STATES DEPARTMENT OF STATE,

*Defendants*.

Civil Action No. 1:26-cv-00858-JAV

**RESPONSE TO DEFENDANTS' SEPTEMBER 8, 2026 STATUS REPORT AND REQUEST FOR ADDITIONAL COMPLIANCE REPORTING**

## PRELIMINARY STATEMENT

The Court's August 21, 2026 vacatur, remand, and declaratory order has now been in effect for 19 days directing, among other things, that the Court's "judgment shall set aside and vacate any refusal of an immigrant visa that was based solely upon the [Visa Ban] Policy, and remand those agency actions for further proceedings consistent with this Opinion and Order." ECF 83 at 60. Yet the government continues to treat "prompt" compliance with the Court's order as optional. *See Maness v. Meyers*, 419 U.S. 449, 458 (1975). Defendants' September 8, 2026 status report makes that abundantly clear, conceding that the State Department is still developing guidance necessary to implement the Court's Order, that immigrant visa appointments have been canceled globally through September, and that to date no one, not any Plaintiff or any of the over 43,000 visa applicants whose applications were refused under the illegal Visa Ban, has in fact had their case taken out of administrative processing. Most egregiously, the government now admits that it intends to use the so-called public charge training as a reason to re-vet every single immigrant visa applicant affected by the illegal Visa Ban and to delay implementing the Court's order until that re-vetting can occur, Defs.' Status Report, ECF 96 ¶¶5-6, Armstrong Decl., ECF 96-1 ¶¶12-17, in direct contravention of both DOJ counsel's statement to the contrary at the August 31 hearing and this Court's admonition that such a course of action "would be very contrary to the import of [this Court's] order" and "would be grossly inequitable." Tr. 34:3-9.

As a result of Defendants' delay, notwithstanding the Court's order, Plaintiffs, the clients the organizational Plaintiffs represent, and tens of thousands of immigrant visa applicants worldwide remain in limbo, suffering daily compounding harms from the government's failure to implement the Court's order in a timely fashion. Plaintiffs respectfully request that the Court further enforce its order by requiring the government to provide additional information and

documents, accompanied by a declaration and status reports until further order of the Court demonstrating actual compliance with the Court's order, as described below.

## ARGUMENT

### I. The Court Should Order Additional Compliance Measures

At the August 31, 2026 hearing, this Court asked the government to address specific questions concerning its compliance efforts concerning the Court's order to "set aside and vacate any refusal of an immigrant visa that was based solely upon the [Visa Ban] Policy," and "remand[ing] those agency actions for further proceedings consistent with" the Court's August 21, 2026 order. ECF 83 at 60. Among other things, the Court directed Defendants to submit "[a] status update, including a declaration under penalty of perjury," "that provides an update as to the status of the remanded applicants and to what extent the remand process is underway and what steps the Department has taken to both identify the individuals who are subject to the remand, to notify them of any updated materials that they may need to submit as part of the remand process -- if there are such paperwork that needs to be resubmitted -- and if they need to have a rescheduled interview, whether or not that interview has been rescheduled and the timeframe for doing so." Tr. 26:14-23. In addition, the Court directed Defendants to confirm that "administrative processing" for affected individuals has "ended," that all individuals affected by the Visa Ban "are no longer in administrative processing," and that "if, in fact, these individuals have been remanded . . . that they've been provided with some kind of administrative notice." Tr. 27:25-28:23.

Defendants' response answers none of these questions beyond conceding "the Department has the ability to identify cases that were refused solely on the vacated IV pause" and admitting the affected class of individuals is "over 43,000." Instead, the response admits that the Department has continued pushing back immigrant visa appointments that had been scheduled through September, ECF 96-1, ¶ 5, and that the Department is still "developing guidance" concerning

implementation of the actions required by the Court's Order. *Id.*, ¶ 6, 11. But the Court should not credit the government's continuing assertion that it is coordinating guidance when the government at the same time concedes that it will *not* begin processing any of the remanded visa applications until it implements numerous public-charge-related trainings. *See infra*, 4-6. As this Court already stated, the "order and judgment certainly doesn't preclude [DOS] from undergoing training, but at the same time, they have to be processing the remand of the individual applicants. They can train all they want and do a broader public training on public charge all they want, but these were individuals who were already found to be not subject to the public charge provisions." Tr. 21:3-12.

On top of that, Defendants walk back their counsel's statement that "it is treating policy-only refusals as vacated and remanded." Tr. 24:5-6. They concede that no one, not Plaintiffs nor any of the 43,000+ individuals subject to the Court's remand order, have received any confirmation that their applications have been taken out of administrative processing or that their applications will be adjudicated without application of the Visa Ban. ECF 96-1, ¶ 7. Instead of showing under penalty of perjury as required by the Court's order that all Visa Ban refusals are in fact "vacated and remanded," Defendants now simply state that they will not issue any individual notice to any applicant subject to the Court's order until "a consular officer reconsiders a given case." *Id.*, ¶ 7. Defendants further attest that no instructions will issue at least until "[a] consular officer[] . . . review[s] each individual case to determine what, if any, additional documents are required before that case can move forward," *id.*, ¶ 8, and that, notwithstanding this Court's directive to provide a timeline for completion of necessary steps to implement the remand order, that "[t]here is no fixed date by which reconsideration of all affected applications will be completed." But Defendants improperly conflate two distinct issues: the vacatur of the Visa Ban refusals and whatever limited

additional documentation may be necessary in select individual cases on remand. DOJ counsel already conceded before this Court that the refusals themselves are "vacated and remanded." Tr. 24:5-6. The government cannot have it both ways, and its contrary statements before this Court and in its submission and failure to directly address the Court's questions on timing and process sufficiently demonstrate the further need for this Court to enforce its order.

Most egregiously, the government now admits that it intends to subject every remanded case to a renewed public-charge review, Defs.' Status Report, ECF 96 ¶¶5-6, Armstrong Decl., ECF 96-1 ¶¶12-17, in direct contravention of both DOJ counsel's statement to the contrary at argument and this Court's express statement that such a course of action "would be very contrary to the import of [this Court's] order" and "would be grossly inequitable." Tr. 34:3-9. The Court directed Defendants to confirm DOJ counsel's representation that the so-called global public charge training initiative would not require all affected individuals "to restart a public charge analysis as if they are applying for the first time." Tr. 33:23-34:4; *see id.* at 21:22-25 (conceding on behalf of Defendants in response to query from the Court that "I hope you're not saying what they're going to do is do another public charge analysis," that "No, your Honor, I'm not saying that."); Tr. 33:4-23 ("THE COURT: So where we left off is that I had asked you to confirm your prior statement that the public charge there will not need to be a reevaluation of public charge with respect to the individuals who have been remanded because they have already been through the public charge process and a consular officer has already determined that they are not reasonably likely to be a public charge under the terms of the statute. That is why, in fact, that they were subject to the policy, because -- or, at least, to the pause under the policy, because had they been excluded under a public charge provision, then the consular officer would not have needed to rely on the policy for the refusal; is that correct? MR. KURZ: That is my understanding, your Honor. . . . [M]y understanding is that that will not occur in either all or almost all cases.").

But Defendants' response now contends, among other things, that "the Department has undertaken several actions to ensure that visa applicants undergo comprehensive screening and vetting prior to visa issuance, including vetting for potential ineligibility under the public charge ground of inadmissibility," ECF 96-1, ¶ 14, that "[r]emanded cases will be reconsidered by adjudicating consular officers in accordance with Department guidance on application of the public charge ground of inadmissibility" that "will include the consular officer's use of additional adjudication tools that have been deployed since the January 14, 2026 guidance, such as a public charge worksheet that informs the officer's assessment of public charge inadmissibility," *id*, ¶ 15, and that all individuals subject to this Court remand order will have their cases reviewed subject to "four new training requirements that the Bureau of Consular Affairs formally deployed on September 1, 2026," which include "expanded managerial review of consular officer adjudications and mandated training on conducting the public charge analysis required by Department guidance." *Id.*, ¶ 16.

This about face by Defendants further demonstrates the need for the Court to enforce its order. To be sure, while the Court previously suggested the public charge training was not relevant to enforcement of its order. Tr. 29:21-22. But DOJ counsel separately confirmed that "that there will be no public charge review," Tr. 32:1-4, and this Court made clear that the remand did not contemplate requiring those applicants to "start from scratch" on eligibility determinations that had already been completed and "would be very contrary to the import of [the Court's] order." Tr. 34:3-9. Defendants now concede that this "grossly inequitable" result is precisely what they intend for all adjudications impacted by the Visa Ban. ECF 96-1, ¶¶ 15-16. Although Defendants contend these trainings apply to "all immigrant visa adjudications" and not "just cases remanded under the Court's order," *id.*, ¶ 17, the fact remains that, with one minor exception, all of these "trainings"

and new requirements appear to have been initiated and implemented only after the Court's order, *id.*, ¶ 16 (conceding trainings deployed "September 1, 2026"). Indeed, the Declaration does not disclose when these new directives were developed or first issued, failing to rebut the public reporting already described indicating it was all implemented in response to this Court's order. ECF 96-1, ¶¶ 4-5. And reporting since that filing further clarifies that Defendants intend the training pause to "remain in place for months due to the structure of the new training program."[1]

Regardless, even if the public charge directive and trainings may have been developed independently, and their roll-out just happened to coincide with the Court's order—again, a fact that the record does not support and the Defendants' declaration in fact refutes—the government's actions nevertheless present significant noncompliance. As the Armstrong Declaration clarifies, the government is purposely delaying implementation of the Court's order until Defendants' public charge directives and trainings are all in effect, so that the government can then apply those directives to everyone subject to the Court's remand order. ECF 96-1, ¶¶ 14-17. But as the Court explained at the hearing, the August 21, 2026 order required Defendants "to be processing the remand of the individual applicants," who "were individuals who were already found to be not subject to the public charge provisions." Tr. 21:5-12. That is flatly inconsistent with Defendants' actions, which have instead delayed implementing the Court's order so that new public-charge tools and training requirements can be retroactively applied to over 43,000 people who had already been found not to be inadmissible on public-charge or any other ground.

These developments subsequent to the Court's enforcement order, in combination with the government's obfuscation and evasiveness in its Status Report, thus warrant a further order to

[1] Humeyra Pamuk et al., *US resumes immigrant visa processing for Hungary, Poland as pause remains elsewhere*, Reuters, Sep. 8, 2026, https://www.reuters.com/world/asia-pacific/us-resumes-immigrant-visa-processing-hungary-poland-pause-remains-elsewhere-2026-09-08.

enforce this Court's August 21, 2026 order. Specifically, the Court should require the government to submit weekly status reports, until further order of this Court, concerning their efforts and timeline to implement the Court's vacatur and remand order, including concrete steps and actions. Each weekly status report should be supported by a declaration under oath. In addition, because the government has now made clear it intends to apply a new so-called public charge training regimen to all 43,000+ visa applicants affected by the Court's remand order, the Court should order the government to produce all relevant trainings and guidance, including all guidance, training, worksheets, or documentation described in ECF 96-1, ¶¶ 13-16, along with a declaration specifying when each document was adopted and first circulated to relevant personnel.

## CONCLUSION

Plaintiffs respectfully submit that the Court should further enforce its August 21, 2026, order as described herein.

//

//

Dated: September 9, 2026

Respectfully submitted,

*/s/ Joanna Elise Cuevas Ingram*
Joanna Elise Cuevas Ingram
Tanya Broder*
Efrén C Olivares*
Elizabeth Choo**
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 34573
Washington, D.C. 20043
(213) 377-5258
cuevasingram@nilc.org
broder@nilc.org
olivares@nilc.org
choo@nilc.org

*/s/ Erez Reuveni*
Erez Reuveni*
Catherine M.A. Carroll*
Elena Goldstein
Jonathan H. Hurwitz
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 316-9538 (Reuveni)
ereuveni@democracyforward.org
ccarroll@democracyforward.org
egoldstein@democracyforward.org
jhurwitz@v.democracyforward.org

*/s/ Hasan Shafiqullah*
Hasan Shafiqullah
Susan Welber
Evan Henley
Emily Lundgren
THE LEGAL AID SOCIETY
49 Thomas St., 5th Floor
New York, NY 10013
(212) 577-3300
hhshafiqullah@legal-aid.org
sewelber@legal-aid.org

ewhenley@legal-aid.org
elundgren@legal-aid.org

*/s/ Baher Azmy*
Baher Azmy
Angelo Guisado
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
7th Floor
New York, New York 10012
(212) 614-6445
bazmy@ccrjustice.org
aguisado@ccrjustice.org

*/s/ Antionette Dozier*
Antionette Dozier*
David Kane*
Joy Dockter*
WESTERN CENTER ON LAW & POVERTY
3701 Wilshire Blvd. Suite 208
Los Angeles, CA 90010
(213) 487-7211
adozier@wclp.org
dkane@wclp.org
jdockter@wclp.org

*/s/ Sarah Wilson*
Sarah Wilson*
David Kim*
COLOMBO & HURD
301 E. Pine Street, Suite 450
Orlando, Florida 32801
(407) 478-1111
swilson@colombohurd.com
dkim@colombohurd.com

* *Admitted Pro Hac Vice*

** *Petition for Attorney Admission Pending*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Erez Reuveni, hereby certify that on September 9, 2026, I filed the foregoing Document with the Clerk of the Court for the United States District Court for the Southern District of New York using the CM/ECF system. Notice of this filing is being sent by operation of the Court's electronic filing system to all counsel of record who are registered CM/ECF users. I have also emailed counsel of record for Defendants.

*/s/ Erez Reuveni*
Erez Reuveni

## CERTIFICATE OF COMPLIANCE

I, Erez Reuveni, hereby certify that this document complies with the word count limitations imposed by the Court's local rules.

*/s/ Erez Reuveni*
Erez Reuveni