**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CATHOLIC LEGAL IMMIGRATION NETWORK, INC., et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 1:26-cv-858-JAV |
| MARCO RUBIO, Secretary of State, et al., | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR**
**MOTION TO STAY THE RULE 54(b) JUDGMENT PENDING APPEAL**

## PRELIMINARY STATEMENT

Defendants move for a stay pending appeal of the Court's Rule 54(b) Judgment granting partial summary judgment to Plaintiffs and entering partial final judgment. ECF Nos. 83, 84. In the alternative, Defendants ask the Court to stay the portions of the Judgment setting aside immigrant-visa refusals based solely on the January 14, 2026 Policy and remanding those refusals and applications and to stay those aspects of the vacatur that reach beyond the parties to the case. Defendants recognize that the Judgment is fully operative and are complying with it, ECF No. 90 at 2, and the Department of State is treating the January 14 guidance as no longer operative, ECF No. 90-1 ¶ 5. This motion seeks prospective relief.

Defendants' appeal presents several issues on which the Government is likely to succeed. This Court ruled that consular nonreviewability is inapplicable because Plaintiffs challenged Department policy, yet the Judgment set aside every Policy-only refusal and remanded those adjudications. ECF No. 83 at 24–25; ECF No. 84 at 1. Consular nonreviewability precludes that relief. *See Department of State v. Muñoz*, 602 U.S. 899, 908 (2024); *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159–60 (D.C. Cir. 1999). The second key issue is where 8 U.S.C. § 1104(a) divides the consular officer's grant-or-refusal function from the Secretary's supervisory authority. The Government's appeal will further challenge the Court's constructions of 8 U.S.C. § 1152(a)(1)(A) and of 8 U.S.C. § 1201(g) and 22 C.F.R. § 40.6. The Government is thus likely to succeed on appeal.

Absent a stay, the Judgment would irreparably harm the Department by requiring reconsideration of more than 43,000 Policy-only refusals, consuming finite consular capacity, while remanded applications may proceed to visa issuance and admission before the Department completes its public-charge training and deployment of updated adjudication tools. Armstrong

Decl. ¶¶ 6–8. These harms, together with the substantial appellate issues presented, warrant a stay while appellate review proceeds. If the Court declines to stay the Judgment in its entirety, it should at minimum stay the refusal-vacatur and remand relief and stay the vacatur insofar as it applies to nonparties.

**BACKGROUND**

On January 14, 2026, the Secretary cabled all posts that, "[e]ffective January 21, consular officers must refuse under Section 221(g) . . . all immigrant visa applicants who have not been refused under another ground of ineligibility, if the applicant is a national of" one of 75 designated countries. Admin. Rec. at STATE00001. Posts were to continue interviewing and adjudicating, assess all other grounds of ineligibility first, and include "#4AIVPause" in the case notes for applicants refused under the Policy. *Id.* at STATE00002–03. Time-limited documents were not required to enter the refusal. *Id.* at STATE00003. The Court ruled that the Policy was reviewable and final, ECF No. 83 at 22–29; contrary to 8 U.S.C. §§ 1152(a)(1)(A) and 1201(g) and 22 C.F.R. § 40.6; and in excess of the Secretary's authority under 8 U.S.C. § 1104(a), *id.* at 34–44. The Court rejected Plaintiffs' 8 U.S.C. § 1182(a)(4) and notice-and-comment claims. *Id.* at 31–34, 44–50.

The Judgment vacates the Policy, sets aside "any refusal of an immigrant visa that was based solely upon the Policy," remands "those agency actions for further proceedings," and enters declaratory relief. ECF No. 84 at 1–2. The refusal vacatur "does not extend to denial of immigrant visas on any ground other than the Policy," ECF No. 83 at 57, and on remand the Court "does not direct any particular outcome or process so long as any refusal is not based upon the Policy," *id.* at 58. The State Department is implementing the Judgment and coordinating implementation guidance to posts. ECF No. 90-1 ¶¶ 5–6. More than 43,000 immigrant-visa applications were refused solely under the Policy and are therefore subject to the Court's vacatur and remand order.

Armstrong Decl. ¶ 7. Independently of the vacated Policy, the Bureau of Consular Affairs has begun deploying updated public-charge training, adjudication tools, and guidance worldwide, including a global training initiative for consular sections. *Id.* ¶ 6.

## ARGUMENT

In deciding whether to grant a stay pending appeal, district courts consider likelihood of success, irreparable injury to the movant, injury to other parties, and the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). The first two factors "are the most critical." *Id.* A movant relying on a threshold or remedial defect in the relief entered need not show that it will prevail on every merits question. *See Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025) ("That is not how the *Nken* factors work.").

### A. Defendants Are Likely to Succeed on the Merits.

A district court has inherent authority to stay its own judgment pending appellate review. *Nken*, 556 U.S. at 426–27; *see also* Fed. R. Civ. P. 62(h). Defendants are likely to succeed on the merits of their appeal because the consular nonreviewability doctrine applies to Plaintiffs' challenge and the remedy this Court ordered. This Court's conclusion otherwise was erroneous. The Court sustained review on an expressly policy-only premise. Plaintiffs, the Court determined, challenged "final, Department-level policies and agency actions" and "d[id] not seek review of any consular officer's issuance or refusal of any particular visa." ECF No. 83 at 24 (quoting Compl. ¶ 24). Resolving their claims therefore did "not require evaluation of any specific officer's determination," because "Plaintiffs' challenge is limited to the Policy itself." *Id.* at 25. The Judgment nonetheless set aside every refusal resting solely on the Policy and remanded those adjudications — dispositions entered by individual consular officers in individual cases, belonging overwhelmingly to nonparties. ECF No. 84 at 1; *see* ECF No. 83 at 55–56. The Court did so in the

same Opinion stating that "[c]onsular officers are vested with the exclusive authority to determine whether those visa applications should be granted or refused." *Id.* at 58.

Consular nonreviewability protects that determination. The immigration laws do not authorize review of "a consular officer's denial of a visa," and "[t]he Judicial Branch has no role to play unless expressly authorized by law." *Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024); *accord Chen v. Rubio*, 158 F.4th 393, 395–97 (2d Cir. 2025) (visa denials "are insulated from judicial review"). The Administrative Procedure Act directs reviewing courts to "hold unlawful and set aside" agency action that fails the standards prescribed by the statute, 5 U.S.C. § 706(2), but that remedial instruction does not override preexisting limitations on judicial review of consular visa decisions, *see Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159–60 (D.C. Cir. 1999); *see also Muñoz*, 602 U.S. at 908.

Plaintiffs will likely respond that the Judgment does not review the merits of any consular officer's eligibility determination and directs no particular outcome or process on remand. ECF No. 83 at 58. They also may rely on the Court's conclusion that, under the Policy, "[t]he outcome is predetermined." *Id.* at 42. But neither point resolves whether a court may nullify completed consular refusals after sustaining review on the premise that the challenge is directed to Department-level policy rather than particular visa decisions. The Judgment does exactly that: it sets aside completed Policy-only refusals and requires their readjudication. ECF No. 84 at 1–2. And treating a completed refusal as reviewable whenever unlawful Department guidance constrained the officer's decision would make the scope of consular nonreviewability depend on the merits of the challenge to the underlying policy, defeating the purpose of the doctrine and involving courts in delicate matters impact admission to the country that are far outside the judicial ken.

The Court's construction of § 1104(a) presents a second question on which the Government is likely to prevail on appeal. Defendants do not contend that the Secretary may dictate whether a particular visa is granted or refused. The question here is whether the exception for functions "conferred upon the consular officers relating to the granting or refusal of visas," 8 U.S.C. § 1104(a), reaches every Department-level instruction bearing on visa adjudication, or instead only measures that control the consular officer's grant-or-refusal determination. Although the consular officer remains the statutory visa decisionmaker, it does not follow that every Department-wide instruction bearing on visa processing is unlawful. Indeed, were that the case, it would be unlawful for the Department to provide any guidance to consular officers, which is not and has never been the law.

*Janay*, which the Court cited in its Opinion, recognizes the distinction between control over the grant-or-refusal decision and other forms of Secretarial direction. The Court quoted *Janay* for the Secretary's lack of "authority to control which visa applications consular officers grant or deny," ECF No. 83 at 44, but the same sentence continues: "nothing precludes him from directing the consular officers to decide pending applications 'within a reasonable time.'" *Janay v. Blinken*, 743 F. Supp. 3d 96, 106 (D.D.C. 2024). *Janay* further held that § 1104(a)'s exception is limited to powers, duties, and functions actually conferred on consular officers; outside that exception, "nothing in § 1104(a) limits the Secretary's authority" to issue instructions for carrying out the INA. *Id.* at 109–10.

And reading § 1104(a) the way this Court did would raise grave constitutional concerns. Section 1104(a) cannot be read to provide consular officials unreviewable discretion in the visa-issuance process. Such officials are inferior officers who must remain subject to constitutionally sufficient supervision, otherwise they would need to be appointed as principal officers by the

President and confirmed by the Senate. *See United States v. Arthrex, Inc.*, 594 U.S. 1, 11-17 (2021); *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 98 n.3 (D.D.C. 2024) ("[C]onsular officers are inferior officers[.]"). Congress quite obviously contemplated this problem by enacting 6 U.S.C. § 236(c)(1) in the Homeland Security Act of 2002. That provision states that "the Secretary of State may direct a consular officer to refuse a visa to an alien if the Secretary of State deems such refusal necessary or advisable in the foreign policy or security interests of the United States." 6 U.S.C. § 236(c)(1). Under that provision, "the Secretary of State retains the authority to direct the consular office to refuse a visa." *Atiffi v. Kerry*, 2013 WL 5954818, at *1 n.5 (N.D. Cal. Nov. 6, 2013). The Secretary had statutory authority to direct the non-issuance of visas in the foreign policy interests of the United States and to not admit aliens on visas who may become public charges until the Department can implement improved procedures to evaluate those aliens. ECF No. 63 at 2 ("The Department is undergoing a full review of all policies, regulations, and guidance to ensure the highest level of screening and vetting of every visa applicant.").

The Court's reading of 8 U.S.C. § 1152(a)(1)(A) presents a third issue on which the Government is likely to succeed on appeal. Defendants do not dispute that provision's antidiscrimination command, but it cannot be read in isolation from the rest of the INA. Sections 1182 and 1152 "operate in different spheres": § 1182 defines who is admissible and therefore eligible to receive a visa, while § 1152(a)(1)(A) prohibits discrimination in the allocation of immigrant visas. *Trump v. Hawaii*, 585 U.S. 667, 695 (2018). Reading § 1152 to reach guidance implemented through ordinary, officer-entered adjudications would convert an antidiscrimination rule governing visa allocation into a silent override of the INA's broader adjudicatory framework. The Court's historical discussion, moreover, relies substantially on a recent district-court decision and a concurrence in a Fourth Circuit decision later vacated by the Supreme Court — neither of

which addressed how § 1152 operates alongside the INA's separate admissibility and refusal provisions. ECF No. 83 at 34–36 (citing *Dorcas Int'l Inst. of R.I. v. U.S. Citizenship & Immigr. Servs.*, No. 26-CV-00132 (JJM) (PAS), 2026 WL 1622708, at *46 (D.R.I. June 5, 2026), and *Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233, 338–40 (4th Cir. 2018) (Wynn, J., concurring), *vacated on other grounds*, 585 U.S. 1028 (2018)). Although *Hawaii* did not decide the validity of a nationality-based issuance policy, its statutory-structure analysis supports Defendants' narrower argument that § 1152 must be read in harmony with those separate provisions. *See Hawaii*, 585 U.S. at 695.

The Court's construction of 8 U.S.C. § 1201(g) and 22 C.F.R. § 40.6 presents a related issue on which the Government is likely to succeed on appeal. The Court ruled that § 1201(g) permits refusal only when a consular officer finds statutory ineligibility or application noncompliance, and therefore concluded that the Policy unlawfully required § 1201(g) refusals when no other refusal ground applied. ECF No. 83 at 38–41. That analysis gives insufficient effect to the INA's existing refusal framework. Section 1201(g) supplies the statutory mechanism for nonissuance, and the regulations expressly recognize refusal under § 1201(g) as an available disposition after a consular officer reviews a completed application. 8 U.S.C. §§ 1201(g), 1202(b); 22 C.F.R. § 42.81(a). Indeed, the Court rejected Plaintiffs' contention that the Policy violated § 42.81. ECF No. 83 at 41 n.9. The Court thus gave insufficient weight to the distinction between creating a new substantive ground of inadmissibility and directing consular officers to use the refusal mechanism that Congress and the regulations already supplied. And, as discussed *supra*, even if the cable directly compels the non-issuance of visas, Congress provided specific statutory authority for the Secretary of State to direct consular officers to refuse to issue visas. The Court's contrary interpretation would raise serious constitutional concerns.

Taken together, these arguments establish a likelihood of success on appeal. Defendants are particularly likely to succeed on the question whether consular nonreviewability permits a court to set aside completed visa refusals, while the Court's constructions of §§ 1104(a), 1152(a)(1)(A), and 1201(g) and 22 C.F.R. § 40.6 provide additional grounds for reversal. The likelihood-of-success factor therefore weighs in favor of a stay.

**B. Implementation During the Appeal Will Cause Irreparable Harm.**

The Judgment will irreparably harm Defendants. In assessing irreparable harm based on the burdens of compliance, the relevant question is whether compliance would "seriously threaten [the agency's] mission or operations." *NRDC v. FDA*, 884 F. Supp. 2d 108, 125 (S.D.N.Y. 2012). The most basic harm is that, absent a stay, some remanded applications may proceed to visa issuance and admission before the Department completes the updated public-charge training and adjudication tools described above, including applications that otherwise would have resulted in findings of public-charge ineligibility. Armstrong Decl. ¶¶ 6, 8. Once an applicant is admitted, restoring the pre-issuance posture would generally require separate, resource-intensive removal proceedings and may not fully undo the resulting harms. *Id.* ¶ 9. In granting vacatur, the Court observed that the Government had offered "no indication" that vacatur would substantially disrupt visa issuance or other Department efforts. ECF No. 83 at 55. But the Government had not then presented evidence of the operational consequences identified here, and it has now done so. Armstrong Decl. ¶ 7.

Reconsideration of a Policy-only refusal is not a matter of clearing an administrative-processing flag. Reconsideration of the more than 43,000 affected applications requires consular officers to re-review applicants' files, request updated documentation where expired, potentially schedule a new interview if required in the consular officer's discretion, and issue a new

determination. Armstrong Decl. ¶ 7. The Cable shows why updated documentation may be necessary. Although it directed officers to assess all other grounds of ineligibility first, it also provided that "time-limited documents like police clearances and medicals are not necessary for a 221(g) refusal related to the immigrant visa issuance pause." Admin. Rec. at STATE00002–03. Plaintiffs say the Policy came with "a built-in unwind process" because affected applicants were assessed on other grounds and tagged. ECF No. 91 at 2. The tag makes the relevant cases identifiable, but does not eliminate the individualized work required to reconsider them. Because consular sections have finite interview appointment capacity, reconsideration of these cases necessarily diverts consular adjudication and security-vetting resources away from other applicants, including applicants whose cases have been pending for a comparable or longer period or who face statutory deadlines, delaying those cases and straining the Department's limited staff and resources. Armstrong Decl. ¶ 7.

Applications readjudicated during the appeal may proceed to visa issuance and admission before the Department completes its updated public-charge training and adjudication tools. Armstrong Decl. ¶ 8. As a result, it is likely that some applicants who otherwise would have been found ineligible on public-charge grounds will instead be issued visas under existing procedures. *Id.* Defendants do not contend that visa issuance or admission is necessarily irreversible: the consular officer or the Secretary of State may "at any time, in his discretion, revoke such visa or other documentation," 8 U.S.C. § 1201(i), and "[t]he authority to revoke an immigrant visa and, by extension, the lawful permanent resident status achieved thereby, rests with the Secretary of State," *Adams v. Holder*, 692 F.3d 91, 99 (2d Cir. 2012). But if a visa holder has already been admitted as a lawful permanent resident, restoring the pre-issuance status quo would generally require separate, resource-intensive removal proceedings that are not certain to restore

that posture. Armstrong Decl. ¶ 9. Some applicants who otherwise would have been found ineligible following the updated procedures are likely to obtain public benefits after admission, and that support provided in the interim is not easily or readily recovered. *Id.* These harms cannot be fully undone without additional after-the-fact enforcement. *Id.*

**C. The Balance of Harms and the Public Interest Support a Stay.**

The balance-of-harms and public-interest factors merge when the Government is a party. *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58–59 (2d Cir. 2020). Defendants do not minimize what a stay would mean for the applicants affected. As to the U.S.-citizen Plaintiffs, the Court identified the "real-world effect that the [Policy] has had in keeping them separated from certain relatives"; as to the intending-immigrant Plaintiffs, the Court explained that the impact was the "lost opportunity" to receive an immigrant visa. ECF No. 83 at 19. Plaintiffs also identify a fiscal-year concern: for employment-based applicants whose cases could otherwise be completed this fiscal year, continued delay may cause visa numbers presently available for those cases to disappear from the employment-based pool on September 30. ECF No. 91 at 8. Defendants recognize that this potential harm weighs against a stay. But it must be balanced against the difficulty of restoring the pre-admission posture, the diversion of finite consular capacity from other pending cases, and the risk of public-resource expenditures that cannot readily be recovered once applicants have been admitted. Armstrong Decl. ¶¶ 7–9.

There is also a substantial public interest in resolving, before completed consular adjudications are undone nationwide, the question whether a court that sustains review of a Department-level policy may order those adjudications set aside and reopened. *See* ECF No. 84 at 1. That question has significance beyond this Policy. These interests support a stay of the Judgment and, at minimum, the alternative partial stay described below.

**D. In the Alternative, the Court Should Stay the Vacatur and Remand of Policy-Only Refusals, at Least as to Nonparties.**

If the Court does not stay the Judgment in its entirety, it should at least stay the portions setting aside Policy-only refusals and remanding those refusals and applications. Stay relief may be tailored to the portion of a judgment for which the movant has made the requisite showing. In *Trump v. CASA, Inc.*, the Supreme Court partially stayed the injunctions "only to the extent that" they were "broader than necessary to provide complete relief to each plaintiff with standing to sue." 606 U.S. 831, 861–62 (2025); *see also Nken v. Holder*, 556 U.S. 418, 433 (2009) (the stay inquiry calls for "individualized judgments in each case"). The Second Circuit likewise has affirmed the denial of a stay where the district court nevertheless stayed one component of the relief. *See United States v. Grote*, 961 F.3d 105, 122–23 (2d Cir. 2020). And even if universal vacatur were an appropriate remedy under the APA, that relief must be stayed pending appeal as to non-parties since granting such a stay will cause no harm to Plaintiffs but will resolve most of the significant harm imposed on the United States while this appeal plays out.

First, the refusal-vacatur and remand relief should at minimum be stayed insofar as it applies to non-parties (including completed visa adjudications for nonparties). The Judgment reaches more than 43,000 individual consular refusals, extending far beyond the refusals involving the individual Plaintiffs in this case. Armstrong Decl. ¶ 7. And the vacatur must also be stayed as to non-parties, since doing so will cause no harm to the Plaintiffs and the balance of equities necessarily steers dispositively toward the United States. *CASA* underscores the equitable concern, at the stay stage, with relief extending beyond the parties. This is an inquiry needed in addressing our request for a stay irrespective of whether the APA authorizes universal vacatur of agency action. 606 U.S. at 847 n.10, 861. The Supreme Court has repeatedly emphasized that courts must tailor relief to the injury established by the *parties*. *See, e.g.*, *Murthy v. Missouri*, 603 U.S. 43, 61

(2024). *CASA* likewise underscores the need to carefully consider the proper scope of relief, particularly where the challenged agency action implicates broad questions of federal policy and administration. 606 U.S. at 847 n.10, 856. The point here is not whether the APA allows universal vacatur, but that the vacatur Judgment must be stayed with respect to non-parties, including nullification of thousands of nonparty consular adjudications.

Second, even apart from the relief's application to nonparties, the Judgment should be stayed to the extent it sets aside and remands Policy-only visa refusals. The requested partial stay is readily separable from the remainder of the Judgment. The Judgment separately vacates the Policy, sets aside "any refusal of an immigrant visa that was based solely upon the Policy," remands "those agency actions for further proceedings," and enters declaratory relief. ECF No. 84 at 1–2. Staying only the vacatur and remand of Policy-only refusals therefore would leave the Policy itself vacated and the declaratory judgment intact; no new refusal could rest on the Policy. The partial stay would simply preserve the status of the Policy-only refusals pending appellate review of whether the Court may set aside those consular adjudications and require their reconsideration. It also would directly address the operational harms arising from reopening and readjudicating Policy-only refusals. Armstrong Decl. ¶ 7.

## CONCLUSION

For the foregoing reasons, the Court should stay the Rule 54(b) Judgment pending appeal. If the Court declines to stay the Judgment in its entirety, it should, in the alternative, stay the portions setting aside immigrant-visa refusals based solely on the January 14, 2026 Policy and remanding those refusals and applications. At minimum, the Court should stay that relief as to Policy-only refusals of nonparties.

Dated: September 14, 2026

Respectfully Submitted,

JAY CLAYTON
United States Attorney

JESSICA ROSENBAUM
Assistant U.S. Attorney

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MATTHEW SEAMON
Assistant Director

*/s/ Susan Ansari*
SUSAN ANSARI
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-5537
Susan.ansari2@usdoj.gov

JULIAN KURZ
Trial Attorney

**CERTIFICATE OF SERVICE**

I, Susan Ansari, hereby certify that on September 14, 2026, I filed the foregoing brief with the Court's electronic filing system, which electronically served this brief on all counsel of record.

*/s/ Susan Ansari*
SUSAN ANSARI
Trial Attorney
U.S. Department of Justice

**CERTIFICATE OF COMPLIANCE**

I, Susan Ansari, hereby certify that this brief complies with the 8,750-word limit imposed by Local Civil Rule 7.1(c) and the Court's Individual Rule 5.A.

*/s/ Susan Ansari*
SUSAN ANSARI
Trial Attorney
U.S. Department of Justice