**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

CATHOLIC LEGAL IMMIGRATION NETWORK, INC. (CLINIC), et al.,

*Plaintiffs*,

v.

MARCO RUBIO, in his official capacity as Secretary of State, and the UNITED STATES DEPARTMENT OF STATE,

*Defendants*.

Civil Action No. 1:26-cv-00858-JAV

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR STAY OF JUDGMENT PENDING APPEAL**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 5

I. DEFENDANTS CANNOT MAKE A STRONG SHOWING OF LIKELIHOOD OF SUCCESS ON THE MERITS .......... 5

*A. Defendants' reliance on consular nonreviewability fails* .......... 5

*B. Defendants' remaining merits arguments are unavailing* .......... 10

II. DEFENDANTS CANNOT SHOW IRREPARABLE HARM .......... 14

III. THE BALANCE OF HARMS AND THE PUBLIC INTEREST WEIGH STRONGLY AGAINST A STAY .......... 20

IV. THE COURT SHOULD DENY DEFENDANTS' ALTERNATIVE REQUESTS .......... 21

CONCLUSION .......... 22

CERTIFICATE OF SERVICE .......... 26

CERTIFICATE OF COMPLIANCE .......... 26

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abdo v. Tillerson, No. 17 CIV. 7519 (PGG)*, 2019 WL 464819 (S.D.N.Y. Feb. 5, 2019) ........ 9

*Action on Smoking & Health v. Civ. Aero. Bd.*, 713 F.2d 795 (D.C. Cir. 1983) ........ 6

*Ahmed v. Bitter, No. 23-CV-189 (NGG) (RJL)*, 2024 WL 22763 (E.D.N.Y. Jan. 2, 2024) ........ 9

*Allen v. Milas*, 896 F.3d 1094 (9th Cir. 2018) ........ 8

*Augustin v. Blinken, No. CV 23-76 (JEB)*, 2023 WL 4547993 (D.D.C. July 14, 2023) ........ 9

*Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020 (D.C. Cir. 2021) ........ 8

*Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42 (2d Cir. 1983) ........ 14

*Chevron Corp. v. Donziger*, 37 F. Supp. 3d 653 (S.D.N.Y. 2014) ........ 5, 14

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmbH*, 2015 WL 5051769 (S.D.N.Y. Aug. 26, 2015) ........ 14

*Convergen Energy WI, LLC v. L'Anse Warden Electric Co., LLC*, 2020 WL 5894079 (S.D.N.Y. Oct. 5, 2020) ........ 17, 18

*Dep't of State v. Munoz*, 602 U.S. 899 (2024) ........ 7

*Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27 (2d Cir. 1995) ........ 14

*Dorcas Int'l Inst. of R.I. v. USCIS, No. 26-CF-00132 (JJM) (PAS)*, 2026 WL 1622078 (D.R.I. June 5, 2026) ........ 13

*Floyd v. City of N.Y.*, 959 F. Supp. 2d 691 (S.D.N.Y. 2013) ........ 5

*Hirschfeld v. Bd. of Elections in City of N.Y.*, 984 F.2d 35 (2d Cir. 1993) ........ 14, 18

*Ibrahim v. U.S. Dep't of State, No. 19-CV-610 (BAH)*, 2020 WL 1703892 (D.D.C. Apr. 8, 2020) ... 9

*Indep. U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847 (D.C. Cir. 1987) ... 6

*Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233; 585 U.S. 1028 (4th Cir. 2018) ... 13

*Ivanov v. Trump, No. 26-cv-2272*, 2026 WL 2494805 (D.D.C. Aug. 25, 2026) ... 1, 10

*Janay v. Blinken*, 743 F. Supp. 3d 96 (D.D.C. 2024) ... 11

*League of Women Voters of U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ... 21

*Ligon v. City of N.Y.*, 2013 WL 227654 (S.D.N.Y. Jan. 22, 2013) ... 5

*Majlesi v. Rubio, No. CV 25-614 (LLA)*, 2026 WL 654377 (D.D.C. Mar. 9, 2026) ... 9

*Matushkina v. Nielsen*, 877 F.3d 289 (7th Cir. 2017) ... 8

*Medani v. Trump, No. 5:26-cv-06332-EJD*, 2026 WL 2547287 (N.D. Cal. Aug. 28, 2026) ... 1, 2, 10, 16

*Nat. Res. Def. Council, Inc. v. FDA*, 884 F. Supp. 2d 108 (S.D.N.Y. 2012) (NRDC) . 5, 14, 18, 19

*Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399 (D.C. Cir. 1998) ... 22

*Nat'l TPS All. v. Noem*, 166 F.4th 739 (9th Cir. 2026) ... 6

*Newton de Moura Gomes v. Rubio, No. 26-cv-01883 (APM)*, 2026 WL 2212503 (D.D.C. July 31, 2026) ... 1

*Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013) ... 6

*Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997) ... 10

*Pietersen v. U.S. Dep't of State*, 138 F.4th 552 (D.C. Cir. 2025) ... 10

*Rahman v. Bouldin, No. 25-CV-1836*, 2025 WL 3248585 (D.D.C. Nov. 21, 2025) ... 9

*Saleh v. Tillerson*, 293 F. Supp. 3d 419 (S.D.N.Y. 2018) ... 9



[[DMS:5570637v20:2/5/2021 9:30:51 AM

*Sangster v. Rubio, No. 3:25-cv-00447-ART-CSD*, 2026 WL 222316 (D. Nev. Jan. 28, 2026) ........ 1

*Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998) ........ 7, 8

*Storie v. Trump, No. 26-00567 (AHA)*, 2026 WL 2516560 (D.D.C. Aug. 25, 2026) ........ 1

*Tharmabalan v. Blinken*, 732 F. Supp. 3d 269 (S.D.N.Y. 2024) ........ 8

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) ........ 22

*Ullah v. Lafave, No. 25-12804-LTS*, 2026 WL 1541774 (D. Mass. June 2, 2026) ........ 1

*United States v. Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082 (2d Cir. 1995) ........ 5

*Waris v. Bitter*, 2024 WL 3237914 (S.D.N.Y. June 28, 2024) ........ 9, 10

*In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167 (2d Cir. 2007) ........ 5

**STATUTES**

5 U.S.C.
§ 706(2) ........ 6

6 U.S.C.
§ 236(c)(1) ........ 12

8 U.S.C.
§ 1104(a) ........ 11, 12
§ 1152(a)(1)(A) ........ 12, 13
§ 1201(g) ........ 8, 10, 13

**REGULATIONS**

22 C.F.R.
§ 40.6 ........ 13

**OTHER AUTHORITIES**

María Luisa Paúl, *Diversity Visa Lottery Explained: Why Thousands Are Still Waiting for Visas*, USA TODAY (Sept. 23, 2026), https://perma.cc/8THD-N3MU ........ 17



[[DMS:5570637v20:2/5/2021 9:30:51 AM

## PRELIMINARY STATEMENT

The Court rightly concluded that "this is not a challenging case." ECF No. 83 at 17. The Visa Ban in multiple ways "represents a direct abrogation of [the Immigration and Nationality Act's] statutory scheme." *Id.* The Court's ruling that the Visa Ban is unlawful accords with the unanimous holdings of all six other courts to have considered challenges to the Ban, including three decisions issued since this Court's Opinion and Order.[1]

Weeks after this Court's decision, Defendants now seek a stay, but their claims of harm are belied by their delay and contradict representations they have made regarding their compliance with this Court's order and submissions they have made to another court. Defendants' stay motion rests on the assertion that Defendants will suffer irreparable harm because this Court's order somehow compels them to adjudicate visas before public-charge trainings are complete and ahead of other visa applicants. ECF Nos. 101, 101-1. Since the Court issued its Opinion and Order, however, the government has made clear that it has no intention of processing the affected visas without first rolling out their new public-charge regime, training consular officers on that regime, and requiring all individuals who were previously refused visas solely because of the unlawful Visa Ban to undergo public-charge assessments all over again under this new regime. Ex. A, Defs.' Status Report, ECF No. 96 ¶¶ 5-6, Ex. B, Armstrong Decl., ECF No. 96-1 ¶¶ 12-17. Moreover, as Defendants have disclosed in another case, *Medani v. Trump*, No. 26-cv-6332 (N.D. Cal), but not in their submissions to this Court, the government has further directed consular officers to delay adjudicating visa refusals affected by this Court's judgment until it has processed all diversity visa

[1] *Medani* v. *Trump*, No. 5:26-cv-06332-EJD, 2026 WL 2547287, *12-13 (N.D. Cal. Aug. 28, 2026); *Ivanov* v. *Trump*, No. 26-cv-915, 2026 WL 2494805 (D.D.C. Aug. 25, 2026); *Storie* v. *Trump*, No. 26-00567 (AHA), 2026 WL 2516560 (D.D.C. Aug. 25, 2026); *Newton de Moura Gomes* v. *Rubio*, No. 26-cv-01883 (APM), 2026 WL 2212503 (D.D.C. July 31, 2026); *Ullah* v. *Lafave*, No. 25-12804-LTS, 2026 WL 1541774 (D. Mass. June 2, 2026); *Sangster* v. *Rubio*, No. 3:25-cv-00447-ART-CSD, 2026 WL 222316 (D. Nev. Jan. 28, 2026).

applicants harmed by a separate visa ban invalidated in a separate case. Ex. C (ECF No. 105, *Medani v. Trump*, No. 26-cv-6332); Ex. D (26 STATE 88862, Action Request: Vacatur of Immigrant Visa (IV) and Diversity Visa (DV) Issuance Pauses). Indeed, Defendants' status reports in *Medani* show that the government is still, over a month after this Court's order, not issuing any visas subject to this Court's remand order. *See* Ex C; Ex E (ECF No. 112, *Medani v. Trump*, No. 26-cv-6332). And Defendants most recently informed the *Medani* court—but again, not this one—that on top of the public-charge reassessment, cases must undergo managerial review and then further "adjudication review" through a dedicated app, even if a consular officer has concluded that the applicant, including someone subject to this Court's remand order, should receive a visa after a complete do-over of their application and interview. After that further review, the officer will reportedly receive a report to assess whether additional action is needed, including invalidating ("spoiling") a visa already printed or revoking one already issued. *See* Ex. F, Armstrong Decl., ¶¶ 8-9, (ECF No. 115-1), *Medani v. Trump*, No. 26-cv-6332.

Defendants' stay motion should be denied. To start, Defendants cannot show they are likely to prevail on appeal. As this Court has held, the doctrine of consular nonreviewability, on which Defendants principally rely, does not bar courts from reviewing challenges to "executive policies governing consular decisions," ECF No. 83 at 23, and thus does not preclude the Court from vacating the Visa Ban. Defendants' motion does not even argue otherwise. As to the Court's vacatur and remand of refusals based solely on the Visa Ban policy, that is merely the natural consequence of vacating the policy itself. Vacatur of the Visa Ban reestablished the status quo ante. Reestablishing the status quo ante means processing visas previously refused solely due to the Ban as if the Ban had not been adopted—precisely as this Court's order recognizes. Defendants themselves previously acknowledged that vacatur of the Visa Ban would result in just such

"renewed, case-specific adjudications under the INA's ordinary framework." ECF No. 61 at 24. Defendants' other merits arguments either rehash arguments the Court already considered and rejected or were waived and in any case lack merit.

Defendants also fail to demonstrate irreparable harm. Defendants complain principally that complying with the Judgment might mean they end up adjudicating visas that were previously denied solely because of the Visa Ban before they have completed their new public-charge "training" and "adjudication tools." That argument directly contradicts the sworn representations Defendants have made in this Court and in *Medani* that in fact they will not process Visa-Ban refused visas until those trainings and adjudication tools have been implemented. Ex. B, ECF No. 96-1 at 5 ¶¶ 15, 16; Ex. C, Ex. D.; Ex. F. But even putting that aside, nothing in the Judgment prevents Defendants from conducting training or adopting new tools. And if Defendants now intend—contrary to the representation made by Defendants' counsel at the August 31 hearing—to subject applicants who were refused under the Visa Ban to brand new public-charge evaluations (even though those applicants had already cleared that hurdle), that is Defendants' own choice, not anything required by the Judgment or the INA.[2] Moreover, Defendants have had almost a year to develop new tools and conduct trainings since issuing the Consular Processing Cable in November 2025 (plus any additional time they spent focusing on public charge before then); if Defendants have not completed that process, it is Defendants' own doing.

Likewise, nothing in the Judgment warrants Defendants' professed concern that visa applicants refused due to the Visa Ban might jump the line ahead of other deserving applicants.

---

[2] As the Court noted at the August 31 hearing, requiring remanded visa applicants to "start from scratch" and undergo reconsideration of public-charge admissibility "would be very contrary to the import of [its] order" and "grossly inequitable." 8/31 Tr. at 34. Plaintiffs accordingly reserve the right to seek additional relief based on Defendants' implementation of the Court's remand order.

Indeed, Defendants have conceded as much elsewhere. A recent cable from the Department of State—which, as noted, Defendants filed in *Medani* but have not disclosed to this Court—directs consular offices worldwide to follow a first-in, first-out process for adjudicating visas remanded under this Court's order and to prioritize diversity visa applicants, who face a statutory deadline, before processing applicants refused under the Visa Ban. Ex. D. Defendants thus are in fact doing exactly what their stay motion disingenuously claims the Judgment does not permit.

The balance of harms weighs decisively against a stay. As this Court already found, the Visa Ban has imposed severe harms on the individual Plaintiffs, their family members, the organizational Plaintiffs' clients, and approximately 43,000 visa applicants worldwide. These aspiring immigrants have been separated from their families, prevented from pursuing their careers, and deprived of necessary medical care as a direct result of Defendants' lawless policy. Defendants concede, as they must, that a stay would prolong these harms, ECF No. 101 at 10, keeping tens of thousands of otherwise-qualified visa applicants and their families, employers, and communities in limbo for months or years while Defendants' appeal plays out. On the other side of the scale, Defendants suffer no harm from merely applying the INA provisions that require consular officers to grant, deny, or refuse visas to aspiring immigrants on statutory grounds—particularly applicants Defendants have already determined to be admissible.

Finally, the Court should reject Defendants' request to limit relief under the Judgment to the individual Plaintiffs and their family members. Defendants' request disregards the well-settled principle that vacatur of agency action under the APA does not enjoin the application of the unlawful agency action only to specific plaintiffs but instead sets it aside it "in its entirety." ECF No. 83 at 56. And Defendants' alternative request to be excused from processing applicants whose visas were previously refused solely due to the Visa Ban is no alternative at all but would

effectively nullify the Court's vacatur of the Visa Ban itself, not only for Plaintiffs but also for the approximately 43,000 other victims of Defendants' unlawful policy.

## ARGUMENT

Defendants bear the "difficult burden" of establishing that a stay pending appeal is necessary. *Floyd* v. *City of N.Y.*, 959 F. Supp. 2d 691, 693 (S.D.N.Y. 2013) (quoting *United States* v. *Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc*., 44 F.3d 1082, 1084 (2d Cir. 1995)). To establish the right to such a stay, defendants must make a "strong showing" that they are likely to succeed on the merits of the appeal. *Ligon* v. *City of N.Y.*, 2013 WL 227654, at *1 (S.D.N.Y. Jan. 22, 2013) (quoting *In re World Trade Ctr. Disaster Site Litig*., 503 F.3d 167, 170 (2d Cir. 2007)). Defendants also must establish that they likely will suffer irreparable harm absent a stay. *Id*.; *Chevron Corp*. v. *Donziger*, 37 F. Supp.3d 653, 657 (S.D.N.Y. 2014) (characterizing a showing of irreparable harm as "indispensable"). The Court should also consider "whether issuance of the stay will substantially injure the other parties interested in the proceeding, and where the public interest lies." *Id*.; *see Nken* v. *Holder*, 556 U.S. 418, 434 (2009). Defendants cannot establish any of these factors.

### I. Defendants Cannot Make a Strong Showing of Likelihood of Success on the Merits

#### A. Defendants' reliance on consular nonreviewability fails

Defendants do not contend that the consular nonreviewability doctrine precludes the Court from vacating the Visa Ban policy. Nor could they, because, as the Court concluded, the doctrine does not bar "judicial review of APA challenges to executive policies governing consular decisions." ECF No. 83 at 23. Instead, Defendants argue that the Court transgressed the doctrine only by setting aside visa refusals based solely on the Visa Ban and remanding those refusals for further proceedings. ECF No. 101 at 3-4; *see* ECF No. 83 at 60.

But the Court's remand of those prior refusals merely describes the natural consequence of vacating the Visa Ban policy itself. As the Court recognized, and as Defendants do not dispute, vacatur of the Visa Ban "restore[d] the status quo" in effect before the unlawful Visa Ban took effect. ECF No. 83 at 55 (internal quotation marks and citation omitted). Vacating the policy "had the effect of reinstating the rules previously in force." *Action on Smoking & Health* v. *Civ. Aero. Bd*., 713 F.2d 795, 797 (D.C. Cir. 1983); *see also Nat'l TPS All.* v. *Noem*, 166 F.4th 739, 767 (9th Cir. 2026) ("Because the Secretary lacked authority to act in the manner that she did, the proper remedy under APA § 706(2) is to set aside her actions and restore the status quo."); *Indep. U.S. Tanker Owners Comm*. v. *Dole*, 809 F.2d 847, 855 (D.C. Cir. 1987) (vacatur restores the "status quo ante, before the [vacated policy] took effect"); *Pashby* v. *Delia*, 709 F.3d 307, 320 (4th Cir. 2013) ("status quo" refers to last "uncontested status between the parties which preceded the controversy").

Here, the status quo was the INA legal framework that governed visa applications immediately before the Visa Ban was adopted on January 14, 2026. That framework required Defendants to adjudicate visa applications and to issue, refuse, or deny them on a statutorily enumerated ground. ECF No. 83 at 38-39 (discussing controlling law). Once the Court vacated the Visa Ban, that preexisting legal regime requiring visa processing came back into effect and thus required Defendants to issue, refuse, or deny visas on statutory grounds to applicants who were previously denied solely because of the Visa Ban. That is all this Court's order contemplates with respect to adjudication of previously denied visas. The Judgment does not direct any particular result in these adjudications. It merely results in Defendants' having to abide by the preexisting legal framework and prohibits Defendants from refusing visas based on the vacated Visa Ban.

Indeed, Defendants previously acknowledged that vacatur of the Visa Ban policy by itself would result in just such reconsideration of applications previously refused solely because of the policy. As Defendants recognized in their summary judgment brief, vacatur of the Visa Ban would require "renewed, case-specific adjudications under the INA's ordinary framework. Whether any particular applicant would then receive a visa would still depend on officer-level application of existing statutory standards to the facts of that case." ECF No. 61, at 24; *see also* ECF No. 67 at 14 (asserting that vacatur of the Visa Ban "would . . . return Plaintiffs to renewed consular adjudication, where consular officers could still request more evidence or refuse on existing grounds"). Nowhere in Defendants' summary judgment briefs did they suggest that the Visa Ban could somehow be vacated without their having to reconsider applications refused solely because of the Ban.

In any event, the vacatur and remand of visa refusals based solely on the Ban does not violate the consular nonreviewability doctrine. First, when a court has authority to adjudicate visa-related claims—meaning the doctrine of consular nonreviewability does not apply—the doctrine has no bearing on the relief the court can order. That is because the doctrine has nothing to do with the Court's subject matter jurisdiction—*i.e.*, "the courts' statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89, (1998); *accord Trump v. Hawaii*, 585 U.S. 667, 682 (2018) ("The Government does not argue that the doctrine of consular nonreviewability goes to the Court's jurisdiction"); *Dep't of State v. Munoz*, 602 U.S. 899, 908 n.4 (2024) (relying on *Hawaii* for proposition that "the doctrine of consular nonreviewability is not jurisdictional"). Rather, as multiple courts of appeals have held, "consular nonreviewability is a doctrine judicial in origin" and "is informed by our respect for the separation of powers but it is not a limit on our subject matter jurisdiction as it goes to our willingness, not our power, to hear

these cases." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1028-29 (D.C. Cir. 2021) (internal quotation marks and emphases omitted); *see Allen v. Milas*, 896 F.3d 1094, 1101 (9th Cir. 2018) (similar); *Matushkina v. Nielsen*, 877 F.3d 289, 294 n.2 (7th Cir. 2017) ("We treat the doctrine of consular nonreviewability as a matter of a case's merits rather than the federal courts' subject matter jurisdiction"); *Tharmabalan v. Blinken*, 732 F. Supp. 3d 269, 274 (S.D.N.Y. 2024) (noting Second Circuit has not squarely addressed the issue). In other words, "the rule of consular nonreviewability[] supplies a rule of decision, not a constraint on the subject matter jurisdiction of the federal courts." *Allen*, 896 F.3d at 1102; *see Steel Co*., 523 U.S at 89, ("[T]he absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case."). Thus, once a court determines that the doctrine does not apply—as the Court correctly held here in regard to Plaintiffs' challenge to the Visa Ban—the doctrine imposes no further constraint on its authority to consider a claim and what relief it may then order.

Second, even if consular nonreviewability were relevant to relief, no relief the Court ordered transgressed that doctrine. The Court did not direct the agency to make any particular decision on any application. To the contrary, the Court explained that "[i]n remanding these applications for adjudication by the consular officers, the Court does not direct any particular outcome or process so long as any refusal is not based upon the Policy." ECF No. 83 at 58. Because the vacatur and remand of policy-based refusals "does not require evaluation of any specific officer's determination regarding a particular Plaintiff's inadmissibility or visa ineligibility," it does not implicate consular nonreviewability. *Id*. at 25.

Third, consular nonreviewability does not apply to refusals under 8 U.S.C. § 1201(g) like those at issue here, which do not constitute final decisions but instead simply place the application

in administrative processing. *See* ECF No. 48-7, ¶¶ 4, 9 (directing the placement of visa applications subject to the Visa Ban in "administrative processing"). "[A] visa that is in 'administrative processing' cannot be said to have received final approval" or denial. *Saleh v. Tillerson*, 293 F. Supp. 3d 419, 431 (S.D.N.Y. 2018); *see, e.g.*, *Majlesi v. Rubi*o, No. CV 25-614 (LLA), 2026 WL 654377, at *5 (D.D.C. Mar. 9, 2026) (collecting cases); *Waris v. Bitter*, No. 23-CV-9487 (JGLC), 2024 WL 3237914, at *5 (S.D.N.Y. June 28, 2024) (collecting cases) ("visas refused for administrat[ive] processing have not been finally adjudicated"); *Ahmed v. Bitter*, No. 23-CV-189 (NGG) (RJL), 2024 WL 22763, at *6 (E.D.N.Y. Jan. 2, 2024) ("'the doctrine of consular non-reviewability precludes review only of final visa determinations and does not apply to challenges regarding decisions that are not yet final. Cases in administrative processing have not been finally refused'") (quoting *Augustin v. Blinken*, No. CV 23-76 (JEB), 2023 WL 4547993, at *3 (D.D.C. July 14, 2023)); *Ibrahim v. U.S. Dep't of State*, No. 19-CV-610 (BAH), 2020 WL 1703892, at *5 (D.D.C. Apr. 8, 2020) ("By consigning applicants to 'administrative processing,' the Government endeavors to enjoy the benefits of consular nonreviewability without actually issuing final decisions." (internal quotation marks omitted)); *but see Abdo v. Tillerson*, No. 17 CIV. 7519 (PGG), 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019) (suggesting non-final decisions may be subject to consular nonreviewabilty, at least in context of mandamus suit seeking to compel a final decision); *Rahman v. Bouldin*, No. 25-CV-1836, 2025 WL 3248585, at *3 (D.D.C. Nov. 21, 2025) (stating that consular nonreviewability bars review of visa applications at least where they are put "into post-refusal administrative processing for discretionary re-adjudication of the application") (internal quotations omitted). That is why courts retain authority to direct consular officers to adjudicate visas where the failure to do so is based on some statutory infirmity or unreasonable delay. *See, e.g.*, *Medani*, 2026 WL 2547287, at *13 (enjoining DOS to adjudicate

visas affected by the 75-country Visa Ban and diversity visa ban); *Ivanov v. Trump*, No. 26-cv-2272 2026 WL 2494805, at *16 (D.D.C. Aug. 25, 2026) ("direct[ing] the State Department, to the extent practicable, to take reasonable steps during the remainder of the DV fiscal year to reconsider applications refused solely under the State DV Pause or the Public Charge Pause, without applying either policy").

Finally, even if the doctrine did apply to interim consular decisions placing applications in administrative processing, it would still not preclude the relief the Court issued here, which is premised on the Visa Ban's exceeding the government's statutory authority and does not involve individualized review of any specific decision. "Normally a consular official's discretionary decision to grant or deny a visa petition is not subject to judicial review. However, when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists." *Patel v. Reno*, 134 F.3d 929, 931–32 (9th Cir. 1997) (citations and footnote omitted); *Waris*, 2024 WL 3237914, at *4 (same). And as this Court recognized, "'it is well settled that when plaintiffs pursue forward-looking challenges to the lawfulness of regulations or policies governing consular decisions, courts may review them to assure that the executive departments abide by the legislatively mandated procedures.'" ECF No. 83 at 23 (quoting *Pietersen v. U.S. Dep't of State*, 138 F.4th 552, 560 (D.C. Cir. 2025). Here, Plaintiffs challenged DOS's authority to refuse visas under section 1201(g) based on the Visa Ban, not any specific visa adjudication. Therefore, consular nonreviewability has no bearing on the relief the Court issued.

### B. Defendants' remaining merits arguments are unavailing

Defendants' remaining arguments also do not establish a likelihood of success on the merits. Each of those arguments was either addressed and rejected in the Court's opinion or was not raised in Defendants' summary judgment briefs and was accordingly waived. And in any event,

Defendants would have to demonstrate a likelihood of success on appeal as to each of these arguments, as each was an independent basis for the Court's decision.

**Section 1104(a)**. Defendants acknowledge that under 8 U.S.C. § 1104(a), the Secretary "may not dictate whether a particular visa is granted or refused" and may not promulgate "measures that control the consular officer's grant-or-refusal determination." ECF No. 101 at 5; *see also* ECF No. 61 at 25 (similarly acknowledging that Section 1104(a) precludes the Secretary from controlling consular officers' grant-or-refuse decisions). That acknowledgment is fatal to their position because, as the Court held, the Visa Ban policy promulgated by the Secretary does exactly what the statute proscribes: it "direct[s] consular officers that they 'must refuse' immigrant visas to nationals of certain countries," ECF No. 83 at 42; *see also id*. at 43-44.

Defendants' argument that the statute does not prohibit "every Department-level instruction bearing on visa adjudications," ECF No. 101 at 6, is a red herring, because nothing in the Court's opinion suggests or relies on such a sweeping reading of the statute. Unlike a direction by the Secretary "to decide pending applications 'within a reasonable time,'" which the district court in *Janay* v. *Blinken*, 743 F. Supp.3d 96, 106 (D.D.C. 2024) (citation omitted), held would not be precluded by Section 1104, *see* ECF No. 101 at 6 (citing *Janay*), the Visa Ban seeks to "control which visa applications consular officers grant or deny." That is precisely what the court in *Janay* recognized Section 1104(a) would preclude. *Janay*, 743 F. Supp.3d at 106.

This Court thus nowhere adopted the overbroad reading of Section 1104(a) that Defendants assert "would raise grave constitutional concerns." ECF No. 101 at 5-6. Defendants waived any such constitutional argument by failing to raise it in either of the two briefs they filed on summary judgment. ECF No. 61 at 25-26; ECF No. 67 at 6. And in any event, the argument lacks merit. The Court's application of Section 1104 in this case does not preclude the Secretary from supervising

consular officers or providing them with guidance. It simply sets aside an unlawful edict by the Secretary directing consular officers to refuse visas based on an unlawful policy. Nothing in the Appointments Clause requires the Secretary to have the power to dictate that officers must refuse visas on non-statutory grounds of the Secretary's own making.

Defendants' reliance on 6 U.S.C. § 236(c)(1) is inapposite. ECF No. 101 at 6. Defendants again waived any such argument by not making it or even citing Section 236 or any other provision of Title 6 in either of their summary judgment briefs. And the argument is unavailing in any event. Section 236(c)(1) authorizes the Secretary "[to] direct a consular officer to refuse a visa to an alien" if the Secretary "deems such refusal necessary or advisable in the foreign policy … interests of the United States." But the Visa Ban policy documents do not on their face invoke Section 236 or purport to find that the Ban was justified by the Nation's foreign policy interests. To the contrary, the Visa Ban rests on the purported concern that immigrants from the covered countries would likely become public charges—a decidedly domestic (and unfounded) concern. Indeed, to the extent Section 236 is relevant at all, it only confirms the error in Defendants' reading of Section 1104(a). If Section 1104(a) broadly allowed the Secretary to direct consular officers to refuse visas on any ground, as Defendants contend, the specific authority conferred in Section 236 would have been superfluous.

**Section 1152(a)(1)(A)**. The Court correctly held that the Visa Ban on its face violates 8 U.S.C. § 1152(a)(1)(A), which prohibits "discriminat[ion] . . . in the issuance of an immigrant visa because of the [applicant's] . . . nationality . . . ." ECF No. 83 at 34-37. Defendants argue that they are likely to succeed on appeal because Section 1152(a)(1)(A) does not "reach guidance implemented through ordinary, officer-entered adjudications." ECF No. 101 at 7. The Court has already rejected that argument. ECF No. 83 at 36-37. As the Court's opinion explains, the Visa

Ban does not on its face operate "through ordinary, officer-entered adjudications," but displaces the ordinary statutory framework with an explicit directive from the Secretary to consular officers that they "must refuse" all immigrant visas subject to the Ban. Ex. B at 4. And in any event, as the Court held, nothing in Section 1152(a)(1)'s "unconditional" language "suggests that a nationality ban is permissible when effectuated by a consular officer rather than through some other mechanism." ECF No. 83 at 36. Defendants' reliance on *Hawaii*, 585 U.S. at 695, is misplaced. As this Court explained, the challenged presidential proclamation at issue in that case, unlike the Visa Ban, "did not place limits on the issuance of visas" and thus did not implicate Section 1152(a)(1)(A). ECF No. 83 at 37.[3]

**8 U.S.C. § 1201(g) and 22 C.F.R. § 40.6**. Finally, Defendants argue that the Court's analysis of 8 U.S.C. § 1201(g) and 22 C.F.R. § 40.6 "gives insufficient effect to the INA's existing refusal framework." ECF No. 101 at 8. Defendants contend that, because the Visa Ban directs consular officers to cite Section 1201(g) in refusing visas under the Ban, that Section thereby "supplies the statutory mechanism for nonissuance." *Id*. The Court rightly rejected this "Orwellian logic," reasoning that Section 1201(g) "only authorizes the denial of visas to those applicants who fall within the ten listed categories of applicants ineligible to receive visas set forth in Section 1182(a)." Because "the Policy effectively only operates to bar the issuance of visas to eligible applicants, its reliance upon Section 1201(g) is unavailing." ECF No. 83 at 41. Defendants are

---

[3] Defendants criticize the Court for relying on "a recent district court decision and a concurrence in a Fourth Circuit decision later vacated by the Supreme Court" in its discussion of the history of the anti-discrimination provision now codified in Section 1152. ECF No. 101 at 6-7 (citing *Dorcas Int'l Inst. of R.I.* v. *USCIS*, No. 26-CF-00132 (JJM) (PAS), 2026 WL 1622078, at *46 (D.R.I. June 5, 2026), and *Int'l Refugee Assistance Project* v. *Trump*, 883 F.3d 233, 338-40 (4th Cir. 2018) (Wynn, J., concurring), *vacated on other grounds*, 585 U.S. 1028 (2018) (both cited in ECF No. 83 at 34-36). But Defendants do not challenge the historical points for which the Court cited these cases, much less show that either case was wrongly decided or supports their position.

unlikely to prevail on appeal of this or any other issue they cite.

## II. Defendants Cannot Show Irreparable Harm

"Irreparable harm is 'perhaps the single most important prerequisite' before a stay . . . pending appeal can be issued." *Church & Dwight Co., Inc.* v. *SPD Swiss Precision Diagnostics, GmbH*, 2015 WL 5051769, at *2 (S.D.N.Y. Aug. 26, 2015) (quoting *Bell & Howell: Mamiya Co*. v. *Masel Supply Co. Corp*., 719 F.2d 42, 45 (2d Cir.1983)). Thus, a showing of irreparable harm is "indispensable." *Donziger*, 37 F. Supp. 3d at 657. The government's incurrence of costs to comply with a court order pending appeal does not establish irreparable harm unless the agency can show "that compliance would seriously threaten its mission or operations." *Nat. Res. Def. Council, Inc*. v. *FDA*, 884 F. Supp. 2d 108, 125 (S.D.N.Y. 2012) (NRDC). Costs of compliance that result in waste or diversion of resources or delay in other programs do not suffice. *Id*. at 123-25.

As this Court observed, Defendants' summary judgment papers did not "present [any] indication that vacating the Policy will substantially disrupt the visa issuance process or other DOS efforts." ECF No. 83 at 55. Although Defendants argued that the Court should not invite the "disruptive consequences of vacatur," ECF No. 61 at 28; *see also* ECF No. 67 at 19, they concede that they never presented any actual evidence of any such consequences, ECF No. 101 at 9. They make no better showing now. Defendants waited 24 days after this Court issued its decision before filing a motion for a stay, defeating any suggestion of urgency or harm. *See Hirschfeld v. Bd. of Elections in City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993) ("inexcusable delay in filing the motions here at issue severely undermines the Board's argument that absent a stay irreparable harm would result."); *Doherty Assocs., Inc. v. Saban Ent., Inc*., 60 F.3d 27, 39 (2d Cir. 1995) ("A district court should generally consider delay in assessing irreparable harm."). The assertions of irreparable harm Defendants do make contradict representations they have previously made to this Court and

the *Medani* court and on a morass of public-charge related delays of their own making.

First, Defendants assert that they will be harmed because resuming adjudications of visa applications that were previously refused based on the Visa Ban might mean issuing visas "before the Department completes its updated public-charge training and adjudication tools." ECF No. 101 at 10. But, as the Court made clear at the August 31 enforcement hearing, nothing in the Judgment precludes the Department from conducting additional training on public-charge adjudications or adopting new tools. 8/31 Tr. at 21. And doing so need not delay implementation of the Judgment because, as the Court's colloquy with Defendants' counsel at the August 31 hearing also made clear, the Judgment does not require Defendants to conduct a renewed public-charge analysis in remanded cases. As the Court noted at the hearing, it is undisputed that the visa applicants refused solely under the Visa Ban "were individuals who were already been found to be not subject to the public charge provisions," so "[u]nless there's something, new information about any applicant, a consular officer has already done that review." 8/31 Tr. at 21. And Defendants' counsel, in response to questions from the Court, twice assured the Court that in "all or almost all cases" no reconsideration of public charge would be required. *Id*. at 33; *see also id*. at 21 ("THE COURT: Because I hope you're not saying what they're going to do is do another public charge analysis. MR. KURZ: No, your Honor, I'm not saying that.").

Defendant's recent submissions indicate that Defendants have now elected, contrary to these assurances, to conduct a new public-charge review of all visa applicants previously refused under the Visa Ban—the very re-vetting this Court deemed "grossly inequitable." 8/31 Tr. at 34:3-9; Ex. B, ECF No. 96-1 at 5 ¶ 15 ("Remanded cases will be reconsidered by adjudicating consular officers in accordance with Department guidance on application of the public charge ground of inadmissibility. . . . This will include the consular officer's use of additional adjudication tools, . .

. such as public charge worksheet . . . ."); *id.* ¶ 16 ("[C]onsular officers will reconsider the remand cases consistent with elements of four new training requirements that the Bureau of Consular Affairs formally deployed on September 1, 2026," including "public charge analysis required by Department guidance."). Likewise, a cable from the Department dated September 10, 2026, and addressed to all diplomatic and consular posts worldwide—one that Defendants filed in other litigation involving the Visa Ban but inexplicably did not bring to this Court's attention—instructs consular officers to conduct a new public-charge review from scratch. The cable addresses implementation of this Court's Judgment and other court orders invalidating the Visa Ban, and states that "[i]n all immigrant visa cases, . . . posts *must complete a public charge worksheet* . . . and are reminded of the need to complete the comprehensive training on tools to assess the public charge visa ineligibility . . . ." *See* Ex. G, Defendants' Notice of Filing Cable in *Medani* v. *Trump*, No. 26-cv-06332, ECF No. 95, at 3 (Sept. 11, 2026). The cable also "encourag[es]" consular officers to reinterview all remanded applicants, *id.*, contrary to Defendants' representation in their stay motion in this case that applicants will be reinterviewed only "if required in the consular officer's discretion," ECF No. 101 at 9.[4] On top of that, on September 21, 2026, the *Medani* Defendants informed that court—but again, not this one—that in addition to the public-charge training mandate and new adjudication requirements, even if a consular officer concludes an applicant should receive a visa after a readjudication, the officer's determination does not conclude the process. *See* Ex. F, Armstrong Decl., ¶¶ 8-9. The case instead must be further reviewed by a consular manager and submitted through a dedicated app for additional "adjudication review,"

[4] As noted, *supra* note 2, Plaintiffs reserve the right to challenge this or other aspects of Defendants' implementation of the Court's remand order.

potentially resulting in the invalidation of a printed visa or the revocation of one already issued.[5] *Id.* That decision to redo public-charge evaluations that have already been conducted, to reinterview applicants across the board, and to impose additional layers of review even after a consular officer has found an applicant eligible is Defendants' own choice, not anything compelled by the Judgment. If that decision makes it more difficult for Defendants to comply with the Judgment, they have only themselves to blame. *See, e.g.*, *Convergen Energy WI, LLC v. L'Anse Warden Electric Co., LLC,* 2020 WL 5894079, at *5 (S.D.N.Y. Oct. 5, 2020) (explaining that plaintiff cannot satisfy irreparable harm requirement by "manufactur[ing] its own exigency" and that "[i]f the harm complained of is self-inflicted, it does not qualify as irreparable" (citation omitted)).

Nor have Defendants shown that a stay is required to enable the Department to complete any new training before adjudicating remanded visa applications. Contrary to the assertions of harm Defendants press in their stay motion, their September 8 status report and September 10 Cable plainly contemplate that any renewed public-charge review of remanded applications can and should take place after any training is completed and make no mention of staying the Judgment. Neither the status report, ECF No. 96, nor the Armstrong declaration submitted with Defendants' motion, ECF No. 101-1, provides any timetable for the completion of any public-charge training or the development of any new tools, but Defendants make no attempt to show that this training and tools cannot be completed before adjudicating remanded cases. To the extent

---

[5] Applicants who underwent renewed interviews have reportedly been returned to administrative processing, while others have been told that their cases were referred to a "Visa Integrity Unit" in Washington, D.C., for additional review. *See* María Luisa Paúl, *Diversity Visa Lottery Explained: Why Thousands Are Still Waiting for Visas*, USA TODAY (Sept. 23, 2026), https://perma.cc/8THD-N3MU. The Unit does not appear to have been previously identified in publicly available State Department materials.

Defendants find it necessary to divert more resources and concentrate their efforts to complete that training so that processing of visas can resume promptly—as it must if the Court's vacatur of the Visa Ban and reinstatement of the status quo ante requiring visa processing is to have meaningful effect—those compliance costs do not amount to irreparable harm. *NRDC*, 884 F. Supp.2d at 123, 125.

Any harm arising from Defendants' asserted difficulty completing their public-charge "training" is also a self-inflicted wound. *See, e.g.*, *Hirschfeld,* 984 F.2d at 40 (holding that the Board of Elections' claim of irreparable injury was meritless because any injury absent a stay would be self-inflicted); *Convergen Energy, LLC,* 2020 WL 5894079, at *5 (similar). Defendants issued their public-charge cable on November 6, 2025—more than ten months ago. Complaint ¶ 3 & Ex. C. It has been operative since then and applicable to all consular processing, including processing of applications from the countries targeted by the subsequently adopted Visa Ban. Defendants have had the better part of a year to review their public-charge processes and procedures, promulgate any new rules governing public-charge determinations, and implement any new public-charge training. Yet Defendants assert that they "formally deployed" new public-charge training requirements only on September 1, 2026, ten days after this Court's order. Ex. A, ECF No. 96 at 3; Ex. B, ECF No. 96-1 at 5. Defendants do not explain why they waited so long or why their decision to do so should qualify as irreparable harm warranting a stay. It does not.

Defendants next contend that the Judgment will cause irreparable harm because "reconsideration of these cases necessarily diverts consular adjudication and security-vetting resources away from other applicants, including applicants whose cases have been pending for a comparable or longer period or who face statutory deadlines." ECF No. 101 at 10. To begin with, such an alleged need to divert resources does not amount to irreparable harm. *NRDC*, 884 F. Supp.

2d at 123-25. And, once again, nothing in the Judgment requires that result. The Judgment does not require the Department to review remanded applications before any other visa applicants or otherwise establish a priority order for Defendants to follow in adjudicating visa applications. It is also Defendants' choice, not required by the Judgment, to expend resources undertaking an entirely new public-charge review of each remanded application and to encourage consular officers "to reinterview the applicant in person for a full, comprehensive assessment," even though all such applications have already undergone a public-charge analysis and the applicants deemed eligible. Ex. D, ¶ 6. If anything, Defendants have it backwards—it would be far less resource-intensive to adjudicate the approximately 43,000 visas the government has already reviewed for every possible ground of inadmissibility including public charge than it would be for them to adjudicate the many thousands of new visas that were submitted after the court's August 21 order. Yet, Defendants nowhere explain why they would be harmed by adjudicating the 43,000 visas but not any new visa. In any event, the September 10 Cable, their recent submission in *Medani v. Trump*, No. 26-cv-6332, and Defendants' prior submissions before this Court make clear they do not in fact view the order as compelling them to adjudicate any visas until their training and public-charge regimen is implemented. Ex. A, ECF No. 96 ¶¶5-6; Ex. B, ECF No. 96-1 ¶¶ 12-17; Ex D, ¶ 6; Ex. F, Armstrong Decl., ¶¶ 8-9.

In addition, the Department's September 10 Cable shows that Defendants feel free under the Judgment to establish a priority order that addresses the very concerns they proclaim in the stay motion. The Cable directs consular offices to review cases remanded by the Judgment in chronological order, "starting with those refused first, . . . beginning on January 21[, 2026] (for the IV pause), and move chronologically through such refusals to the present." Ex. D at 3. Further, to address the statutory deadline applicable to 2026 diversity visa applicants, the Cable directs offices

to allocate immigrant visa appointments by "prioritiz[ing] DOV-2026 applicants [i.e., applicants for diversity visas in 2026] whose interview appointments were originally scheduled between August 23, 2026 and September 30, 2026, but who were rescheduled." *Id*. Indeed, Defendants' status reports in *Medani* show that the government is still, over a month after this Court's order, not issuing any visas to individuals subject to this Court's remand order. *See* Ex C; Ex E. The protestations on which Defendants' stay motion rests are thus squarely contradicted by the instructions Defendants have issued to consular offices on how to implement the Judgment—instructions Defendants have failed even to disclose to this Court. Defendants' gamesmanship does not satisfy their burden to show irreparable harm warranting a stay.

**III. The Balance of Harms and the Public Interest Weigh Strongly Against a Stay**

The harms to Plaintiffs from staying the Judgment and allowing the Visa Ban to remain in effect as to them would be enormous, incalculable, and irreparable. Individual Plaintiffs, their family members, members of associational Plaintiffs and clients of the organizational Plaintiffs whose visa applications have been suspended since the Visa Ban went into effect in January would remain in limbo for months or years while the Judgment is on appeal. During that time, the Visa Ban would effectively continue to prevent families from unifying and to separate parents and children, spouses, and siblings. ECF Nos. 91-2 (Richardson), 91-3 (Mitchell), 91-4 (Aguirre), 91-5 (Maru Hassen), 91-6 (Munthaz Hassen); 92 (Kyeremaa). It would keep some Plaintiffs or their family members from pursuing careers in the United States and deprive this country of their skills. ECF Nos. 91-9 (Lizcano Losada), 91-10 (Medina Ramirez), 91-11 (Buitrago Cagua), 91-12 (Angulo Peñaranda). And it would deny others critical medical treatment for themselves or their children. ECF No. 91-4 at 4 (Aguirre). And it would do this after the visa applicants had expended substantial time and resources (including fees paid to the United States government) to pursue visas in compliance with U.S. immigration laws, after they were determined to be admissible and

eligible for immigrant visas (and in at least some cases after their petitions were granted), and only because of a policy that this Court and every other court to have considered it has determined was unlawful. The tens of thousands of other aspiring immigrants whose applications were refused under the Visa Ban would suffer similar harms.

On the other side of the scale, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Moreover, any harm to Defendants is minimal. At most, Defendants might have to expend additional resources processing applications for aspiring immigrants previously refused under the Ban, consistent with the INA's governing framework requiring the grant, denial, or refusal of immigrant visas on statutory grounds that is applicable to all visa applicants. And in some cases that process might lead to issuing immigrant visas to applicants who have been vetted and approved by Defendants' own personnel in accordance with the INA and with policies and procedures in effect for years. To whatever extent following the law governing visa adjudications is harm at all—and it is not—it pales beside the cruel harms Defendants seek to impose on Plaintiffs and tens of thousands of others in similar positions.

## IV. The Court Should Deny Defendants' Alternative Requests

The Court should deny Defendants' fallback requests (i) to stay only the part of the Judgment setting aside Visa Ban-only refusals and remanding those applications; or (ii) to stay those portions of the Judgment at least as they relate to nonparties. ECF No. 101 at 12-13.

Contrary to Defendants' assertion, the part of the Judgment vacating and remanding visa refusals based only on the Visa Ban is not "readily separable" from the rest of the Judgment. ECF No. 101 at 13. To the contrary, as discussed in Part A above, reconsideration of those refusals is a natural consequence of vacatur of the Visa Ban itself, as Defendants themselves have previously acknowledged. ECF No. 61, at 24; *see also* ECF No. 67 at 14. In contrast, relieving Defendants

of any obligation to reconsider visa refusals based solely on the Visa Ban would effectively nullify the vacatur of the Visa Ban policy altogether. Such a stay would put back into effect precisely the regime imposed by the Visa Ban itself: a "pause" in adjudications under which applicants remain refused, even if a consular officer has determined there is no statutory ground for refusal.

Defendants' other alternative, that the Court should stay the vacatur and remand of policy-only refused applications at least as to non-plaintiffs, is likewise without merit. It would irrationally and inequitably leave the unlawful Visa Ban in place for the tens of thousands of non-plaintiff visa applicants previously refused under the Ban, contrary to the APA. *See Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) ("In some cases the 'agency action' will consist of a rule of broad applicability; and if the plaintiff prevails, the result is that the rule is invalidated" as to all regulated parties). It would apparently ignore the clients of the organizational Plaintiffs and members of the associational Plaintiffs (or at the very least require Defendants or the Court to identify a universe of those clients and members and their non-U.S. family members). And it disregards the Court's well-founded conclusion that "the remedy of vacatur serves to nullify an unlawful agency action, rule, or policy in its entirety," not merely to enjoin its application to particular plaintiffs. ECF No. 83 at 55-56. Nothing in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), supports Defendants' proposal. *CASA* addressed the scope of the courts' equitable authority in issuing injunctions. As this Court concluded in addressing this very issue, *CASA* "did not bear on vacatur of agency action under the APA." ECF No. 83 at 55.

## CONCLUSION

Defendants' motion for a stay of the Judgment pending appeal should be denied.

Dated: September 24, 2026

Respectfully submitted,

*/s/ Joanna Elise Cuevas Ingram*
Joanna Elise Cuevas Ingram
Tanya Broder*
Efrén C Olivares*
Elizabeth Choo**
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 34573
Washington, D.C. 20043
(213) 377-5258
cuevasingram@nilc.org
broder@nilc.org
olivares@nilc.org
choo@nilc.org

*/s/ Erez Reuveni*
Erez Reuveni*
Catherine M.A. Carroll*
Elena Goldstein
Jonathan H. Hurwitz
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 316-9538 (Reuveni)
ereuveni@democracyforward.org
ccarroll@democracyforward.org
egoldstein@democracyforward.org
jhurwitz@v.democracyforward.org

*<u>/s/ Hasan Shafiqullah</u>*
Hasan Shafiqullah
Susan Welber
Evan Henley
Emily Lundgren
THE LEGAL AID SOCIETY
49 Thomas St., 5th Floor
New York, NY 10013
(212) 577-3300
hhshafiqullah@legal-aid.org
sewelber@legal-aid.org
ewhenley@legal-aid.org
elundgren@legal-aid.org

*<u>/s/ Baher Azmy</u>*
Baher Azmy
Angelo Guisado
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
7th Floor
New York, New York 10012
(212) 614-6445
bazmy@ccrjustice.org
aguisado@ccrjustice.org

*<u>/s/ Antionette Dozier</u>*
Antionette Dozier*
David Kane*
Joy Dockter*
WESTERN CENTER ON LAW & POVERTY
3701 Wilshire Blvd. Suite 208
Los Angeles, CA 90010
(213) 487-7211
adozier@wclp.org
dkane@wclp.org
jdockter@wclp.org

*/s/ Sarah Wilson*
Sarah Wilson*
David Kim*
COLOMBO & HURD
301 E. Pine Street, Suite 450
Orlando, Florida 32801
(407) 478-1111
swilson@colombohurd.com
dkim@colombohurd.com

* *Admitted Pro Hac Vice*

** *Petition for Attorney Admission Pending*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Erez Reuveni, hereby certify that on September 24, 2026, I filed the foregoing Document with the Clerk of the Court for the United States District Court for the Southern District of New York using the CM/ECF system. Notice of this filing is being sent by operation of the Court's electronic filing system to all counsel of record who are registered CM/ECF users. I have also emailed counsel of record for Defendants.

*/s/ Erez Reuveni*
Erez Reuveni

**CERTIFICATE OF COMPLIANCE**

I, Erez Reuveni, hereby certify that this document complies with the word count limitations imposed by the Court's local rules.

*/s/ Erez Reuveni*
Erez Reuveni