UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CATHOLIC LEGAL IMMIGRATION NETWORK, INC. (CLINIC), et al.,

Plaintiffs,

-v-

MARCO RUBIO, *in his official capacity as Secretary of State*, et al.,

Defendants.

26-CV-00858 (JAV)

OPINION AND ORDER

JEANNETTE A. VARGAS, United States District Judge:

Defendants in this action have filed a motion to stay the Rule 54(b) Judgment entered on August 24, 2026 (ECF No. 84) pending appeal. ECF No. 100. In the alternative, Defendants request that the Court stay the portions of the Judgment that sets aside immigrant-visa refusals based solely on the January 14, 2026 Policy ("Policy") and remands those refusals and applications for further proceedings. *Id.* Defendants have not met their burden of demonstrating that the circumstances here warrant a stay. *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

The Court has previously held that Defendants' merits arguments are largely insubstantial. Moreover, the balance of equities and the public interest weigh heavily against a stay. Tens of thousands of immigrants have been stuck in legal limbo since the unlawful Policy went into effect nine months ago, with no opportunity for these individuals to obtain the immigrant-visas which they are

otherwise eligible to receive. These individuals expended time and effort to fully comply with the U.S. immigration laws. A consular officer has already determined that these individuals were admissible and eligible for immigrant visas. A consular officer has already determined that these individuals did not fall within the public charge provisions of the INA.

Many of those individuals, including certain of the named Plaintiffs in this case, have been separated from family and loved ones, including spouses and minor children, since the Policy went into effect in January 2026. *See* ECF No. 53 at ¶¶ 24-68. Granting the requested stay during the pendency of an appeal would essentially permit a policy that this Court has already determined violates a statute prohibiting discrimination on the basis of national origin to remain in effect indefinitely. Such an unjust result would only compound the harms already suffered by families who have been prevented from reunifying for far too long.

The Court therefore DENIES the motion to stay the judgment pending appeal.

**DISCUSSION**

The Court assumes familiarity with the facts of this case. As relevant here, in its August 21, 2026 Opinion and Order (ECF No. 83) (the "Opinion"), this Court granted partial judgment to Plaintiffs on Counts One and Seven of the Complaint, declaring that the Policy categorically suspending the issuance of immigrant visas to applicants from 75 designated countries was contrary to law and in excess of statutory authority. The judgment set aside and vacated any refusal of an

immigrant visa based solely on the Policy and remanded those agency actions for further proceedings consistent with the Opinion.

Courts consider four factors when assessing a motion for a stay pending appeal: (1) "the [movant's] 'strong showing that he is likely to succeed on the merits,'" (2) "irreparable injury to the [movant] in the absence of a stay," (3) "irreparable injury to the nonmoving party if a stay is issued," and (4) "the public interest." *New York v. United States Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020) (quoting *Nken*, 556 U.S. at 434. "The first two factors are the most critical, but a stay 'is not a matter of right, even if irreparable injury might otherwise result.'" *Id*. (quoting *Nken*, 556 U.S. at 434-35). Accordingly, "a stay is 'an exercise of judicial discretion,' and '[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of discretion.'" *Id*. (quoting *Nken*, 556 U.S. at 434-35).

**A. Likelihood of Success on the Merits**

Defendants' likelihood of success on the merits weighs against a stay. Defendants first argue that the immigration laws do not authorize judicial review of consular officer's denial of a visa and that consular non-reviewability protects that determination. ECF No. 101 ("Mem.") at 5. As the Court addressed at length in its decision, however, Opinion at 22-26, the doctrine of consular nonreviewability "has no application here because [Plaintiffs] do not challenge a particular determination in a particular case of matters which Congress has left to executive discretion." *Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 761 F.2d 798, 801 (D.C. Cir.

1985); *see also De Moura Gomes v. Rubio*, No. 26-CV-01883 (APM), 2026 WL 2212503, at *8 (D.D.C. July 31, 2026) ("Plaintiffs do not challenge a discretionary determination but rather a policy that is preventing adjudication of the application. . . . The doctrine of consular nonreviewability therefore presents no barrier to review."). Plaintiffs' claims do not require evaluation of any specific officer's determination regarding a particular Plaintiff's inadmissibility or visa ineligibility, but rather the Policy itself. *See, e.g.*, *Tate v. Pompeo*, 513 F. Supp. 3d 132, 142 (D.D.C. 2021) ("[T]he doctrine does not apply—and thus judicial review is available—where plaintiffs challenge the State Department's policies rather than the individual determination."); *see also De Moura Gomes v. Rubio*, No. 26-CV-01883 (APM), 2026 WL 2212503, at *8 (D.D.C. July 31, 2026) ("Plaintiffs do not challenge a discretionary determination but rather a policy that is preventing adjudication of the application. . . . The doctrine of consular nonreviewability therefore presents no barrier to review."). That striking down the Policy as contrary to law requires Defendants to adjudicate anew visa applications for individuals who had previously been refused based on the Policy does not alter this analysis. The restoration of the status quo is nothing more than the usual and natural consequence of striking down a policy as unlawful under the APA.

Defendants additionally argue that reading 8 U.S.C. § 1152(a)(1)(A)'s antidiscrimination rule governing visa allocation to reach guidance implemented through officer-entered adjudications would "override" the INA's broader adjudicatory framework. Mem. at 6. However, the Court has already determined

that this argument lacks any statutory basis and is meritless. Opinion at 36-37. The language of Section 1152(a)(1) is not directed at particular governmental personnel or processes, but rather broadly guarantees that "no person shall . . . be discriminated against in the issuance of an immigrant visa" based upon their nationality." 8 U.S.C. § 1152(a)(1).

Defendants' argument that the Opinion "gives insufficient effect to the INA's existing refusal framework" is equally insubstantial and unlikely to prevail on appeal. Mem. at 8. That the Policy directs consular officers to Section 1201(g) in refusing visas under the Ban is inapposite because Section 1201(g) does not provide authority to refuse a visa to an eligible applicant whose application complies with the INA and governing regulations. *See* Opinion at 38-42.

Defendants also attempt to present new arguments in support of its position. For example, Defendants now argue that the Secretary's authority for the Policy arises under 6 U.S.C. § 236(c)(1), which grants the Secretary authority to direct consular officers to refuse a visa if such refusal is "necessary or advisable in the foreign policy or security interests of the United States." Mem. at 7. Given that this purported source of statutory authority was only discovered by Government counsel after summary judgment briefing was complete and the Court rendered judgment, the Government's current position that the Policy was enacted under section 236(c)(1) would appear to be an impermissible ex post facto justification. *See, e.g.*, *Kakar v. U.S. CIS*, 29 F.4th 129, 132 (2d Cir. 2022). In any event, since this argument was not raised in Defendants' briefs, it is deemed waived. *See*

*Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015); *Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009).

Finally, Defendants for the first time present the argument that construing Section 1104(a)'s exception of the "powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas" to reach every Department-level instruction bearing on visa adjudication, would raise constitutional concerns regarding the scope of authority of consular officers, who are unappointed, inferior officers. Mem. at 5. Even though this argument raises a structural Constitutional question, Defendants' failure to advance this argument at an earlier stage of the litigation likewise results in waiver. *See, e.g.*, *Joseph Forrester Trucking v. Dir. Off. Of Workers' Comp. Programs*, 987 F.3d 581, 586-86 (6th Cir. 2021); *Freytag v. Commissioner*, 501 U.S. 868, 893-94 (1991) (Scalia, *J.*, concurring in part and concurring in the judgment) ("Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review. A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial.").

**B. Irreparable Injury to Defendants**

The lack of irreparable harm to the Defendants weighs heavily, and ultimately dispositively, against a stay. Defendants indicate that absent a stay, some remanded applications may proceed to visa issuance and admission before the Department completes its updated public-charge training and adjudication tools. Mem. at 8. In other words, some individuals may be processed in accordance with

the status quo as it existed at the time that those individuals applied for immigrant visas in January 2026. Yet restoration of the status quo is not an irreparable harm. Nor have Defendants met their burden of showing why processing of immigrant visa applications under the pre-existing regime would "seriously threaten [the agency's] mission or operations." *NRDC v. FDA*, 884 F. Supp. 2d 108, 125 (S.D.N.Y. 2012).

Defendants hypothesize that an immigrant visa may be approved who would otherwise be ineligible under the public charge provision. Mem. at 8. It should be reiterated that the only individuals who are subject to the Court's judgment are those whom a consular officer has already determined would not be ineligible under the public charge provision. Sheer speculation that, under the newly provided training, a consular officer might make a different determination on some applications does not justify a halt in the processing of the forty-three thousand applicants at issue. Defendants are certainly free to update their training materials, but that does not mean that the family members of United States citizens should remain stuck outside the United States, in legal limbo for an indefinite time period while they do so.

Defendants also claim irreparable injury because they have elected to engage in a labor intensive, wholesale re-evaluation of applicants, which apparently will include re-conducting public-charge evaluations for tens of thousands of applicants even though consular officers previously determined that these applicants did not fall within the public charge provisions of the statute, conducting additional

interviews, and conducting new layers of review. None of this is required by the Court's judgment, however. Rather, those burdens arise from policy decisions independently made by the Executive Branch, and thus does not constitute irreparable harm.

### C. Irreparable Harm to Plaintiffs

In contrast to the largely bureaucratic harms advanced by Defendants, Plaintiffs face immense and irreparable harm if the stay is granted. Putting aside the heightened time and costs that Plaintiffs would face in navigating an even lengthier visa process, Plaintiffs also face immeasurable, human harm that comes from delaying decisions which impact whether an individual can reunite with family, seek critical medical treatment, or pursue professional opportunities. *See* ECF No. 107 at 20 ("Opposition" or "Opp.").

For instance, Plaintiff Aguirre is a United States citizen. His wife and two-year-old daughter have been stuck in Guatemala since January 2026, after traveling there to appear for a consular interview. *See* ECF No. 91-4 at 1, 3-4. Plaintiff Aguirre and his seven-year old daughter continue to reside in the United States, separated by operation of the Policy. *Id.* ¶ 21. Plaintiff's youngest daughter has Turner's syndrome, which requires frequent medical care appointments to monitor. *Id.* ¶ 23. Since January, she has missed required appointments with her cardiologist and other medical specialists in New York, putting her health at serious risk. *Id.* ¶¶ 8-9, 23-4.

Plaintiff Adrian Mitchell is likewise a United States citizen. ECF No. 91-3, ¶ 3. His mother is a 70 year old woman who lived for decades in the United States. She returned to Jamaica, a country that she has not lived for more than four decades, for her consular interview. *Id.* ¶¶ 8-13. Because of the Policy, she has been forced to remain in Jamaica since January 2026, without access to adequate healthcare. *Id.* ¶¶ 13, 26. Mitchell has not been able to see his mother in person during this time.

A stay of this Court's judgment would subject Plaintiffs and other individuals whose visa applications have already been refused as a result of an unlawful government policy to additional, indefinite delay while on appeal. Such harms dwarfs the additional resources Defendants may have to allocate to comply with the Court's Opinion.

**D. The Public Interest**

Finally, the public interest likewise factors against a stay. In its Opinion, the Court determined the policy to be unlawful. Subjecting Plaintiffs whose visa applications have been suspended because of an unlawful government policy to additional months of delay while the case is on appeal is contrary to the public's interest. *See New York v. Trump*, 490 F.Supp.3d 736, 747 (S.D.N.Y. 2020) ("[T]here is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations.") (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).

## CONCLUSION

For these reasons, the Court DENIES Defendants' motion to stay pending appeal. The Court is directed to terminate ECF No. 100.

SO ORDERED.

Dated: September 25, 2026
New York, New York

JEANNETTE A. VARGAS
United States District Judge