**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CATHOLIC LEGAL IMMIGRATION NETWORK, INC., et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 1:26-cv-858-JAV |
| MARCO RUBIO, Secretary of State, et al., | ) | |
| Defendants. | ) | |

# DEFENDANTS' RESPONSE TO THE COURT'S SEPTEMBER 24, 2026 ORDER TO SHOW CAUSE

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ....................................................................................................2

A. The Judgment....................................................................................................2

B. Post-Judgment Proceedings and the Order to Show Cause.............................................3

C. The Department's Implementation........................................................................3

ARGUMENT........................................................................................................4

I. A Date-Certain Completion Order Would Be New Injunctive Relief, Not Enforcement of the Existing Judgment, and Would Require a Showing of Necessity and Tailoring. ....................................................................................................4

A. The Judgment Vacates, Remands, and Grants Declaratory Relief; It Contains No Timing Command. ..........................................................................................4

B. Whether Grounded in Inherent Authority or 28 U.S.C. § 2202, Further Relief Must Be Necessary, Proper, and Tailored. ..........................................................6

II. The Record Does Not Show That the Existing Remedy Has Proven Insufficient or That a Single Completion Date Is Necessary or Workable. .........................................8

A. The Record Does Not Show the Unreasonable Delay or Frustration That Has Warranted Deadlines on Remand. ...................................................................8

B. A Mandatory Completion Date Would Not Resolve the Court's Concern About the Department's Public-Charge Review..........................................................10

C. A Single Completion Date Cannot Accommodate the Varied Posture of the Remanded Applications. .....................................................................................12

III. The Pending Appeal and Limits on Nonparty Relief Further Counsel Against a Deadline Governing All Remanded Applications. ......................................................14

A. A Completion Deadline Would Alter the Remedy Now Before the Second Circuit. .............................................................................................14

B. Any New Injunction Must Be Measured by Complete Relief to the Plaintiffs. ........................................................................................................15

IV. The Record Does Not Warrant Additional Oversight, and Any Further Relief Must Be Narrowly Tailored..........................................................................................16

CONCLUSION....................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Heartland Reg'l Med. Ctr. v. Leavitt*,
415 F.3d 24 (D.C. Cir. 2005) .....4

*In re Core Commc'ns, Inc.*,
531 F.3d 849 (D.C. Cir. 2008) .....6, 8

*Int'l Ass'n of Machinists & Aerospace Workers v. E. Air Lines, Inc.*,
847 F.2d 1014 (2d Cir. 1988).....2, 14, 15, 17

*Ivanov v. Trump*,
No. 26-915 (RJL), 2026 U.S. Dist. LEXIS 191339 (D.D.C. Aug. 25, 2026).....8, 10, 16, 17

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010).....7, 10, 16

*Motown Record Co. v. Motown Bev. Co.*,
28 F. App'x 107 (2d Cir. 2002) .....5

*Newton v. Consol. Gas Co.*,
258 U.S. 165 (1922).....14

*Perez v. Danbury Hosp.*,
347 F.3d 419 (2d Cir. 2003).....5

*Potomac Elec. Power Co. v. ICC*,
702 F.2d 1026 (D.C. Cir. 1983) .....6

*Starter Corp. v. Converse, Inc.*,
170 F.3d 286 (2d Cir. 1999).....6, 8, 17

*Telecomms. Rsch. & Action Ctr. v. FCC*,
750 F.2d 70 (D.C. Cir. 1984) .....8, 10, 16

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025).....15

*Wards Co. v. Jonnet Dev. Corp. (In re Lafayette Radio Elecs. Corp.)*,
761 F.2d 84 (2d Cir. 1985).....5, 6

## Statutes

28 U.S.C. § 2202.....6

INA § 221(g), 8 U.S.C. § 1201(g) ....................9, 12, 13

**Regulations**

22 C.F.R. § 42.81(a)....................13

**Other Authorities**

Fed. R. Civ. P. 65(d) ....................13

S. Bray & P. Miller, *Getting into Equity*, 97 Notre Dame L. Rev. 1763 (2022) ....................15

## PRELIMINARY STATEMENT

The Court should not convert the vacatur and remand into a mandatory injunction requiring the Government to complete every remanded visa adjudication by a single date. The Judgment vacates the Policy, sets aside Policy-only refusals, and remands those applications for further proceedings. ECF No. 84 at 1. But it imposes no completion deadline and, as the Court emphasized, directs no "particular outcome or process," leaving each visa decision to the consular officer's "exclusive authority." ECF No. 83 at 58. A date-certain injunction therefore would not merely enforce an obligation already contained in the Judgment. It would impose a new affirmative obligation, which would need to be necessary, properly tailored to the matters adjudicated, and justified under the standards governing injunctive relief. The present record does not justify imposing that additional relief. *See infra* Part I.

The Department is implementing the Judgment. All immigrant-visa-processing posts have resumed processing applications previously refused under the Policy, hundreds of such applications have already been adjudicated, and reconsideration of applications associated with the named Plaintiffs is proceeding. Decl. of John Armstrong ¶¶ 6, 9–10 (Oct. 5, 2026) (Ex. A). Nothing in the present record shows that the vacatur and remand already ordered have failed or that a systemwide completion deadline is necessary to make that relief effective. A completion deadline also would not resolve the Court's concern about the Department's public-charge review; it would leave that review in place while compressing the time available for individualized adjudications. Remanded applications are in materially different postures and may depend on applicant responses, medical examinations, foreign-government documents, interagency security screening, visa-number availability, and other matters outside the Department's control. *Id.* ¶¶ 12–13. The Department has explained under oath that it is unable to provide a date by which all Policy-

only cases could be reconsidered, that it likely could not comply with a single completion date, and that efforts to meet one could result in additional refusals where applicants still need to provide required information. *Id.* ¶¶ 11, 14. *See infra* Part II.

The contemplated relief presents additional problems. Although the pending appeal does not prevent this Court from enforcing the Judgment as written, the Court may not adjudicate substantial rights directly involved in the appeal. *See Int'l Ass'n of Machinists & Aerospace Workers v. E. Air Lines, Inc.*, 847 F.2d 1014, 1017 (2d Cir. 1988). A date-certain injunction would cross that line by adding a new remedial obligation governing the remanded adjudications now before the Second Circuit. And a deadline governing tens of thousands of nonparty adjudications would impose affirmative relief beyond what is necessary to provide complete relief to Plaintiffs. *See infra* Part III. The Court therefore should discharge the Order to Show Cause without entering a date-certain injunction or imposing additional oversight. If the Court concludes that additional oversight is warranted, it should require only limited sworn reporting described in Part IV. And if the Court concludes that affirmative processing relief is necessary, any such relief should be confined to practicability-qualified steps for applicants as to whom Plaintiffs establish a need, without a fixed completion date. *See infra* Part IV.

## BACKGROUND

### A. The Judgment

On January 14, 2026, the Department announced that, effective January 21, 2026, it would suspend the issuance of immigrant visas to nationals of 75 countries, and it directed consular officers to refuse such visas. ECF No. 83 at 1. On August 21, 2026, the Court granted partial summary judgment to Plaintiffs, holding the Policy contrary to law and in excess of statutory authority. *Id.* at 60. The Judgment, entered on August 24, sets aside and vacates the Policy and

Policy-only refusals, remands those refusals "for further proceedings consistent with the Opinion and Order," and declares the Policy unlawful. ECF No. 84 at 1–2.

**B. Post-Judgment Proceedings and the Order to Show Cause**

Following Plaintiffs' emergency motion to enforce the Judgment, ECF No. 85, the Court held a conference on August 31 to address the Government's compliance. ECF No. 108 at 1. The Court found no evidence "that the government is refusing to comply with the Court's order as the record currently exists" and observed that it "did not issue any injunction that provided a specific date or time for action," but expressed concern about "the timeframe . . . for the individual applications to be acted upon" and directed a sworn status report. ECF No. 94 at 25:4–11, 26:1–23. The Government filed that report on September 8. ECF No. 96.

The Government noticed an appeal on September 10. ECF No. 98. On September 24, the Court issued the present Order to Show Cause, expressing "some doubt, based on the current record," about compliance and pointing to the Department's public-charge review of remanded applications and the absence of a "fixed date" for completing reconsideration. ECF No. 108 at 2–3. The Government has since sought a stay from the Second Circuit. 2d Cir. Dkt. No. 21.1.

**C. The Department's Implementation**

On September 10, the Department transmitted implementing guidance to all posts in 26 STATE 88862. ECF No. 107-4; *see* Ex. A ¶ 4. On September 14, the Department issued 26 STATE 89798, a worldwide cable governing managerial review of immigrant-visa adjudications. Ex. B ¶¶ 2–3. On September 21, the Department sent further guidance, titled "Updated Guidance on IV and DV Pause Vacatur," by email to consular managers in immigrant-visa units at all posts. Ex. C; *see* Ex. A ¶ 5. Partially redacted copies of 26 STATE 89798 and the September 21 Message are filed with this response, together with the October 5 Armstrong Declaration. In that declaration,

John Armstrong, Principal Deputy Assistant Secretary within the Department's Bureau of Consular Affairs, describes the Department's processing of remanded cases, reports adjudication figures through September 30, and reports the status, as of October 2, of applicants associated with the named Plaintiffs. Ex. A ¶¶ 1, 4–10.

## ARGUMENT

### I. A Date-Certain Completion Order Would Be New Injunctive Relief, Not Enforcement of the Existing Judgment, and Would Require a Showing of Necessity and Tailoring.

#### A. The Judgment Vacates, Remands, and Grants Declaratory Relief; It Contains No Timing Command.

The Judgment vacates the Policy and "any refusal of an immigrant visa that was based solely upon the Policy," remands those actions "for further proceedings consistent with the Opinion and Order," and declares the Policy unlawful. ECF No. 84 at 1–2. But it sets no completion date, reporting requirement, or other timing command. *See id.*; ECF No. 108 at 3. The Opinion directs no "particular outcome or process" beyond barring reliance on the Policy, leaving decisions to consular officers' "exclusive authority." ECF No. 83 at 58. The remand does require genuine further proceedings—"part of remand is to actually adjudicate the cases"—and the Government accepts that obligation. ECF No. 94 at 23:10–11; *see* ECF No. 109 at 4. But a duty to complete every adjudication by a date certain is not one that the Judgment contains.

Enforcement secures the relief that a judgment grants; it does not enlarge it. *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 29 (D.C. Cir. 2005). Where an APA judgment remanded "for action consistent with" its opinion, "the only obligation it expressly imposed" was the one that the opinion identified, and a claim that more was implicit failed because "the judgment did not say so." *Id.* at 29, 31. Although *Heartland* involved a different remand—to consider regulatory alternatives—its point is structural: the judgment defines the entitlement. *Id.* at 27, 29. The Second

Circuit likewise has held, in the consent-decree context, that a court "may not impose supplementary obligations on the parties even to fulfill the purposes of the decree more effectively." *Perez v. Danbury Hosp.*, 347 F.3d 419, 424 (2d Cir. 2003). *Perez* construed a negotiated decree, but its distinction between securing an existing obligation and adding a new one is instructive here. *See id.* at 424–25.

The Court has authority to effectuate its Judgment. "[A] federal court that has entered a decree within its jurisdiction has inherent authority to enter an injunctive order designed to effectuate that decree." *Motown Record Co. v. Motown Bev. Co.*, 28 F. App'x 107, 109 (2d Cir. 2002). Nor is it limited to relief of the same form: the Second Circuit has declined "literal adherence" to the view that supplemental relief may not differ in kind, because the power exists to keep a court's "judgments and orders from being ignored or avoided with impunity." *Wards Co. v. Jonnet Dev. Corp.* (*In re Lafayette Radio Elecs. Corp.*), 761 F.2d 84, 93 (2d Cir. 1985).

These cases show that the relevant distinction is not whether supplemental relief differs in form from the original judgment, but whether it enforces an obligation the judgment already imposed. In *Lafayette Radio*, the judgment ordered repairs by August 31, 1981, on pain of contempt; when the landlord failed to make them, termination and damages gave the tenant "the full value of the relief granted to it in the 1981 Judgment." *Id.* at 86, 93. *Motown* reflects the same principle. Although the injunction there, like the relief contemplated here, followed an order to show cause, it protected an existing judgment that the defendants had violated by continuing to use the "Motown" mark and had sought to relitigate; it did not impose a new affirmative duty. 28 F. App'x at 108–09. Here, by contrast, the Judgment imposes no deadline for completing the remanded adjudications. A date-certain order therefore would not enforce an existing timing command; it would add one.

Courts may act to "prevent the frustration of orders previously issued." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 856 (D.C. Cir. 2008) (quoting *Potomac Elec. Power Co. v. ICC*, 702 F.2d 1026, 1032 (D.C. Cir. 1983)); *see Lafayette Radio*, 761 F.2d at 93. But that authority presupposes that the existing judgment is in fact being frustrated. As Part II explains, the record does not establish that premise here. The remand is being implemented through individualized reconsideration, and the record does not show that the relief already ordered has proved ineffective or that a date-certain command is necessary to effectuate the Judgment.

### B. Whether Grounded in Inherent Authority or 28 U.S.C. § 2202, Further Relief Must Be Necessary, Proper, and Tailored.

Because the Judgment also declares rights, the Declaratory Judgment Act supplies an alternative source of authority for the contemplated injunctive relief. Section 2202 permits "[f]urther necessary or proper relief based on a declaratory judgment or decree . . . after reasonable notice and hearing." 28 U.S.C. § 2202. The Order to Show Cause supplies the required notice. But Section 2202 carries substantive limits. Further relief must be "necessary or proper" and must be "based on" the declaration. *Id.* Here, the declaration adjudicated the Policy's lawfulness; it did not adjudicate whether the timing of the remanded adjudications independently violates any legal duty. See ECF No. 84 at 1–2. Just as importantly, any supplemental relief must be tailored to what was actually adjudicated. In *Starter Corp. v. Converse, Inc.*, the Second Circuit held that an injunction entered following declaratory relief must be "narrowly tailored to fit specific legal violations" and may not exceed the scope of the matters adjudicated. 170 F.3d 286, 299–300 (2d Cir. 1999). Here, the declaration concerns the legality of the Policy; it does not establish a right to completion of the remanded adjudications by any particular date.

Whatever its source, the contemplated injunction is governed by ordinary equitable principles. A permanent injunction requires a showing of irreparable injury, inadequacy of legal

remedies, a balance of hardships warranting equitable relief, and a public interest that would not be disserved. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010). A court "must determine that an injunction *should* issue"; "[i]t is not enough . . . to ask whether there is a good reason why an injunction should *not* issue." *Id.* at 158; *see id.* at 163 (plaintiffs bear the "burden to make the requisite evidentiary showing"). The Government does not question the Order to Show Cause's procedure; the ordinary standard simply continues to govern the substance of any new injunction. That accords with the Court's statement that "the burden is on you [Plaintiffs] to convince me otherwise as to why there needs to be enforcement." ECF No. 94 at 6:2–4.

An injunction is "a drastic and extraordinary remedy," and where a less drastic remedy such as vacatur is "sufficient to redress [the plaintiffs'] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto*, 561 U.S. at 165–66. This Court found "no more effective remedy in this case than a declaratory judgment paired with vacatur," ECF No. 83 at 59–60, explaining that vacatur redresses Plaintiffs' injury by restoring "the opportunity to be meaningfully considered for immigrant visas," even though it "would not guarantee visa issuance," *id.* at 21. The relevant question is therefore whether post-judgment implementation has shown that the remedy the Court selected is no longer sufficient and that additional injunctive relief is necessary. As Part II explains, the record does not make that showing.

Nor do the harms identified by the Court establish the need for a universal completion date. The Court found serious, irreparable harm to particular Plaintiffs: Plaintiff Aguirre's two-year-old daughter, who has Turner's syndrome, has missed required specialist care, and Plaintiff Mitchell's 70-year-old mother has remained in Jamaica without adequate healthcare. ECF No. 109 at 8–9. The Court also rejected the Government's reliance on training and resource burdens as grounds for a stay. *Id.* at 7–8. The Government does not contest those findings here. But individualized

harms to particular Plaintiffs do not establish that every remanded application must be completed by the same date. And if additional injunctive relief were otherwise warranted, it would still have to be narrowly tailored to the adjudicated rights and the demonstrated need. *See Starter*, 170 F.3d at 299–300.

## II. The Record Does Not Show That the Existing Remedy Has Proven Insufficient or That a Single Completion Date Is Necessary or Workable.

The Order to Show Cause rests on "some doubt" about compliance, the Department's public-charge review, and the absence of a "fixed date." ECF No. 108 at 2. But the record now before the Court does not establish that the existing remedy has proven insufficient or that a single completion date is necessary.

### A. The Record Does Not Show the Unreasonable Delay or Frustration That Has Warranted Deadlines on Remand.

A court-imposed timetable may be warranted when an agency has unreasonably delayed required action or has frustrated a remand, but that determination depends on the actual course of post-remand proceedings. *See Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79–80 (D.C. Cir. 1984); *Core Commc'ns*, 531 F.3d at 856. In *Core Communications*, for example, the agency had failed for six years to respond to the court's remand, and the court set a deadline tied to agency counsel's own representation of when the agency could act. 531 F.3d at 849–50, 861. By contrast, *Ivanov v. Trump*, which included a challenge to the same Public Charge Pause at issue here, declined to "compel adjudication on a court-imposed timetable" and instead required practicability-qualified processing steps and periodic status reports. No. 26-915 (RJL), 2026 U.S. Dist. LEXIS 191339, at *8, *40–41, *43–46 (D.D.C. Aug. 25, 2026).

The Department is actively implementing the remand. On September 10, it rescinded the pause guidance "in [its] entirety" and instructed posts to "[i]mmediately begin reviewing" and

"prioritize reconsideration" of Policy-only cases, including by requesting missing documents needed to proceed. ECF No. 107-4 ¶¶ 2, 6. The Department subsequently directed posts to prioritize named-Plaintiff cases identified by the Department and to track case progress. Ex. C, "Prioritization," "Tracking." And the record now contains sworn evidence of implementation: all immigrant-visa-processing posts have resumed processing remanded cases and are reassessing applications previously refused under the Policy. Ex. A ¶ 6.

The Department's adjudication data confirm that this process is producing results. From August 21 through September 30, consular officers adjudicated approximately 706 applications in which the Policy had been at least one ground for the prior refusal; approximately 318 were approved for issuance or issued, and approximately 388 were refused under the INA. *Id.* ¶ 9. Because those figures encompass some applications outside the Judgment's narrower universe of Policy-only refusals, they are not a measure of how many remanded cases have been completed. *Id.* They do, however, demonstrate that reconsideration is occurring across the system and materially update the record on which the Court issued the Order to Show Cause.

The same is true of the applications associated with the named Plaintiffs. As of October 2, Plaintiff Aguirre's wife had been issued a visa; post personnel had contacted Plaintiff Mitchell's mother to schedule an interview; five other applicants had interviews scheduled; and four applicants had been interviewed and refused under INA § 221(g) (8 U.S.C. § 1201(g)) based on case-specific circumstances. *Id.* ¶ 10. These developments show ongoing implementation, not a failure to act on the remand.

The Order to Show Cause issued approximately one month after entry of the Judgment, before the Court had the current evidence of systemwide and case-specific implementation. The record now shows that all immigrant-visa-processing posts have resumed processing, hundreds of

affected applications have been adjudicated, and applications associated with the named Plaintiffs are moving through reconsideration. Against that record, there is no basis to find that the Department has unreasonably delayed implementation or frustrated the Judgment. If the Court concludes that continuing oversight is warranted, periodic sworn reporting can confirm whether that progress continues without imposing a uniform completion date unsupported by the present record. *See TRAC*, 750 F.2d at 81; *Ivanov*, 2026 U.S. Dist. LEXIS 191339, at *46.

**B. A Mandatory Completion Date Would Not Resolve the Court's Concern About the Department's Public-Charge Review.**

The Order to Show Cause reflects concern about the Department's public-charge review of remanded applications and whether that review is consistent with the Judgment. ECF No. 108 at 1–2. But a mandatory completion date would not resolve that concern. It would not alter the standards officers apply, the information they consider, or the review procedures governing those adjudications; it would simply require the same adjudications to be completed on a compressed schedule. If Plaintiffs contend that the Department's current public-charge review is itself unlawful, that issue is properly resolved on a record directed to that challenge rather than indirectly through a systemwide completion deadline. *Cf. Monsanto*, 561 U.S. at 162 (explaining that a permanent injunction was unnecessary where future agency action could be challenged in a new suit and appropriate preliminary relief sought). Plaintiffs already propose to amend their complaint by October 23. ECF No. 111 at 1.

To the extent that the Department's current process differs from the understanding conveyed at the August 31 conference, that difference reflects guidance that was still being finalized at the time. The Department had rescheduled certain immigrant-visa appointments while it coordinated implementing guidance and accounted for updated public-charge procedures. Ex. A

¶ 7. The Department subsequently clarified that remanded cases would be adjudicated using the same tools as other pending immigrant-visa cases, including the public-charge worksheet. *Id.*

That clarified process is set out in the Department's guidance and sworn declaration. The September 10 implementing cable directs officers reconsidering affected applications to assess whether applicants remain qualified and eligible under governing Department policies and guidance, encourages reinterviews where appropriate for a comprehensive assessment, and requires completion of the public-charge worksheet. ECF No. 107-4 ¶ 6. The September 21 Message similarly permits reinterviews "as needed, in order to collect information necessary for a comprehensive public charge review and completing the mandatory worksheet," and directs adjudication under the Department's standard guidance and policies. Ex. C, "Public Charge Training." The Armstrong Declaration further explains that, in reassessing a remanded case, the officer considers the existing record but does not simply adopt the prior eligibility assessment; instead, the officer completes the public-charge worksheet based on the existing record and any updated information. Ex. A ¶ 6.

Before resuming processing of remanded cases, adjudicating officers and managers also must complete the online portion of the public-charge training and follow the immigrant-visa adjudication-review guidelines in 26 STATE 89798. *Id.*; Ex. C, "Public Charge Training." Those guidelines require managerial review of specified categories and samples of immigrant-visa adjudications and require review of the officer's documented public-charge analysis. Ex. B ¶¶ 3, 5. All immigrant-visa-processing posts have now resumed processing remanded cases under this framework. Ex. A ¶¶ 6–7.

Imposing a single completion date would therefore leave the Department's public-charge review in place while compressing the time available to complete the individualized adjudications

to which it applies. That could aggravate rather than alleviate the consequences for affected applicants. The Department has explained under oath that even good-faith efforts to meet a single deadline "may lead to more refusals under INA § 221(g) for cases requiring additional documentation." *Id.* ¶ 14. In other words, applicants whose cases could proceed once additional information is obtained may instead receive additional interim refusals if their cases must be acted on by an artificial deadline. A mandatory completion date thus does not answer the Court's concern about the substance of the Department's public-charge review and may produce additional refusals without resolving that concern. If further scrutiny of the review is warranted, targeted reporting or adjudication of a properly presented challenge to that review would address the issue more directly than a universal completion deadline.

### C. A Single Completion Date Cannot Accommodate the Varied Posture of the Remanded Applications.

The remanded applications are in materially different postures, and those differences bear directly on when each application can lawfully be resolved. The Policy's implementing guidance permitted officers to enter a Policy-based § 221(g) refusal without obtaining time-limited documents such as police clearances and medical examinations. ECF No. 63 at 4. But the guidance did not eliminate those requirements for eventual visa issuance. Some applicants therefore now need new medical examinations, updated documents, or other evidence, while others do not, and some may require new interviews based on their individual circumstances. Ex. A ¶ 12. The timing of those steps may depend on the applicant's response, the availability of panel physicians, documents issued by foreign governments, and travel to the relevant post. *Id.* Every applicant must also complete required security screening involving other federal agencies, and applicants in numerically limited categories cannot receive visas unless visa numbers are available. *Id.* Applicants subject to an independent ground of ineligibility also cannot receive visas merely

because the Policy-based refusal has been vacated. ECF No. 107-4 ¶ 8. And events abroad may reduce or suspend a post's operations with little warning. Ex. A ¶ 13.

The applications associated with the named Plaintiffs illustrate those differences. As of October 2, three applicants were documentarily qualified but awaiting scheduling, while five had interviews scheduled. Ex. A ¶ 10(a)–(b). Plaintiff Mitchell's mother had been contacted to schedule an interview but had not yet responded. *Id.* ¶ 10(c). Three other applicants had been interviewed and refused under § 221(g) because they lacked valid medical examinations; one of them also lacked an available visa number until October 1. *Id.* ¶ 10(d)–(f). A fourth applicant had been interviewed and refused under § 221(g) for administrative processing. *Id.* ¶ 10(g). By contrast, Plaintiff Aguirre's wife had been issued a visa on September 30. *Id.* ¶ 10(h). These are not variations in administrative preference; they are case-specific circumstances that determine what lawful action can be taken and when.

Those differences also create a more fundamental problem with a systemwide completion injunction. Rule 65(d) requires an injunction to "state its terms specifically" and describe the required acts "in reasonable detail." Fed. R. Civ. P. 65(d)(1). To make a date-certain order sufficiently specific here, the Court would have to determine what counts as completion when an applicant has not responded, required documentation is outstanding, security screening remains pending, no visa number is available, or an independent ground of ineligibility applies. But those are not merely scheduling details. The INA and its regulations require individualized consular adjudication: a consular officer must issue or refuse a completed visa application under governing law, 22 C.F.R. § 42.81(a), and may not issue a visa when § 221(g) requires refusal. Consistent with these requirements, the Court emphasized that consular officers possess "exclusive authority"

over the individual visa determinations and that the remand does not direct any "particular outcome or process." ECF No. 83 at 58.

The problem therefore cannot be solved simply by drafting a more detailed injunction. An order requiring issuance notwithstanding an unmet statutory requirement would conflict with governing law, while an order prescribing how officers must treat applicant nonresponse, missing documentation, security screening, visa-number limitations, or independent ineligibilities would intrude into the individualized adjudicatory judgments that the Judgment left to consular officers. The Department has accordingly explained under oath that it is unable to provide a date by which all Policy-only cases could be reconsidered. Ex. A ¶ 11. The varied posture of the remanded applications thus confirms that a single mandatory completion date is neither supported by the record nor compatible with the individualized adjudications that the governing law requires.

## III. The Pending Appeal and Limits on Nonparty Relief Further Counsel Against a Deadline Governing All Remanded Applications.

### A. A Completion Deadline Would Alter the Remedy Now Before the Second Circuit.

The Judgment is unstayed, ECF No. 109 at 10, and the Court may enforce it as written. The pending appeal does not prevent ordinary implementation of the remand. But a date-certain completion injunction would do something materially different: it would alter the remedy now under appellate review.

After a notice of appeal, a district court may not "adjudicate substantial rights directly involved in the appeal." *Aerospace Workers*, 847 F.2d at 1017 (quoting *Newton v. Consol. Gas Co.*, 258 U.S. 165, 177 (1922)). That principle applies directly here. The Government has asked the Second Circuit to stay the vacatur of Policy-only refusals and their remand, at least as to nonparties. 2d Cir. Dkt. No. 21.1 at 4. An injunction requiring those same remanded adjudications to be completed by a date certain would materially alter the remedial obligations whose operation

the Second Circuit is now considering. *Aerospace Workers* confirms that relief going beyond preservation of the appellate status quo requires appellate permission, and the Second Circuit has not granted such permission here. 847 F.2d at 1018.

**B. Any New Injunction Must Be Measured by Complete Relief to the Plaintiffs.**

The Court rejected the Government's reliance on *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), because Plaintiffs sought "only vacatur of the Policy under the APA." ECF No. 83 at 55 (citing 606 U.S. at 847 n.10). But a mandatory completion injunction presents a different question. The relevant question is whether such an injunction is necessary to provide "complete relief *to the plaintiffs before the court*." *CASA*, 606 U.S. at 852. Incidental benefits to nonparties are permissible, *id.* at 851, but complete relief is "the maximum a court can provide," and "the broader and deeper the remedy the plaintiff wants, the stronger the plaintiff's story needs to be." *Id.* at 854 (quoting S. Bray & P. Miller, Getting into Equity, 97 Notre Dame L. Rev. 1763, 1797 (2022)).

Plaintiffs are eleven individuals and two organizations. ECF No. 83 at 11. As to the individuals, extending a deadline to tens of thousands of nonparties "would not render [their] relief any more complete." *CASA*, 606 U.S. at 853. Meanwhile, ACT's associational standing rested on one identified member, Plaintiff Kyeremaa. ECF No. 83 at 21–22. The Court found member participation unnecessary "because ACT seeks declaratory relief and vacatur against a Department-wide policy." *Id.* at 22. And the Court did not reach CLINIC's standing. *Id.* The Government does not challenge those standing rulings here. But the contemplated injunction is materially different from the relief on which the Court's standing analysis rested: it would compel completion of individual visa applications. Nothing in the Court's standing analysis establishes that complete relief to ACT or CLINIC requires a deadline governing unnamed members' applications. On the present record, a date-certain injunction extending to tens of thousands of

nonparty adjudications would therefore exceed what is necessary to provide complete relief to the Plaintiffs before the Court.

## IV. The Record Does Not Warrant Additional Oversight, and Any Further Relief Must Be Narrowly Tailored.

The record demonstrates that additional oversight is not warranted. As explained above, all immigrant-visa-processing posts have resumed processing, hundreds of affected applications have been adjudicated, and applications associated with the named Plaintiffs are progressing. *See supra* Part II.A. That record does not show that the Department has frustrated the Judgment or that the relief already ordered has proved ineffective. The Court therefore should discharge the Order to Show Cause without additional oversight.

If the Court nevertheless concludes that additional oversight is warranted, limited sworn reporting would be a more tailored response than a mandatory completion date. Additional equitable relief should extend no further than necessary to address the demonstrated need. *See Monsanto*, 561 U.S. at 165–66. And courts confronting agency-delay concerns have used reporting rather than a completion command: *TRAC* required status reports but no completion deadline, 750 F.2d at 81, and *Ivanov* required reporting while declining to "compel adjudication on a court-imposed timetable," 2026 U.S. Dist. LEXIS 191339, at *40–41, *46.[1]

If the Court determines that reporting is necessary, any such requirement should be limited. Two sworn declarations, fourteen days apart, would be sufficient to permit the Court to assess whether implementation is continuing. Each declaration would report, as of a stated date: (1) the approximate number of applications previously refused while the Policy was in effect, in which

[1] Defendants identify these alternatives without conceding that any additional relief is necessary and without waiving their objections in Parts I through III, their appeal, or their pending request that the Second Circuit stay the Judgment in whole or in part. *See* 2d Cir. Dkt. No. 21.1 at 3–4.

the Policy was at least one ground for refusal, that consular officers have adjudicated since August 21, 2026; (2) of those, the approximate numbers approved for issuance or issued and refused under the INA; and (3) the status of each visa applicant associated with a named Plaintiff, including derivative applicants, and, for any pending case, the step for which it is waiting and any scheduled next step. *See* Ex. A ¶¶ 9–10.

If the Court goes further and concludes that affirmative processing relief is necessary, *Ivanov* provides an appropriate model. There, the court directed the Department, "to the extent practicable," to "take reasonable steps" to reconsider the affected refusals. 2026 U.S. Dist. LEXIS 191339, at *43. Any comparable relief here should likewise be limited to applicants for whom Plaintiffs establish a need for such relief, preserve the consular officer's authority to make the required individualized eligibility determination, and neither require issuance nor disturb refusals resting on independent grounds. *See id.* at *44 n.26; ECF No. 83 at 58; *Starter*, 170 F.3d at 299–300. Any such order should not fix a completion date because, as Part II.C explains, the record supplies no basis for a uniform date across applications in materially different postures. Finally, to the extent such an order would modify the Judgment now on appeal, it should be entered only with the Second Circuit's leave. *See Aerospace Workers*, 847 F.2d at 1018.

## CONCLUSION

For the foregoing reasons, the Court should discharge the Order to Show Cause without imposing additional relief. If the Court concludes that additional oversight is warranted, it should require only the limited sworn reporting described in Part IV. And if the Court concludes that affirmative processing relief is necessary, any such relief should be narrowly tailored as described in Part IV, should not impose a fixed completion date, and, to the extent it would modify the Judgment now on appeal, should be entered only with the Second Circuit's leave.

Dated: October 5, 2026

Respectfully Submitted,

JAY CLAYTON
United States Attorney

JESSICA ROSENBAUM
Assistant U.S. Attorney

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MATTHEW SEAMON
Assistant Director

*<u>/s/ Julian Kurz</u>*
JULIAN KURZ
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 598-7283
julian.m.kurz@usdoj.gov

SUSAN ANSARI
Trial Attorney

**CERTIFICATE OF SERVICE**

I, Julian Kurz, hereby certify that on October 5, 2026, I filed the foregoing brief with the Court's electronic filing system, which electronically served this brief on all counsel of record.

*/s/ Julian Kurz*
JULIAN KURZ
Trial Attorney
U.S. Department of Justice

**CERTIFICATE OF COMPLIANCE**

I, Julian Kurz, hereby certify that this brief complies with the 8,750-word limit imposed by Local Civil Rule 7.1(c) and the Court's Individual Rule 5.A. This brief contains 5,340 words, exclusive of the caption, signature block, and certificates.

*/s/ Julian Kurz*
JULIAN KURZ
Trial Attorney
U.S. Department of Justice