**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CATHOLIC LEGAL IMMIGRATION NETWORK, INC. (CLINIC), AFRICAN COMMUNITIES TOGETHER, AGNES KYEREMAA, PATRICIA RICHARDSON, CESAR ANDRED AGUIRRE, MARU MAHMUD HASSEN, MUNTHAZ MAHMUD HASSEN, ADRIAN MITCHELL, JUAN DAVID BUITRAGO CAGUA, ALEJANDRA ALCENDRA MOSCOTE, ANDRES ALFONSO MEDINA RAMIREZ, FERNANDO LIZCANO LOSADA and LINA MARGARITA ANGULO PEÑARANDA

Plaintiffs,

-against-

MARCO RUBIO, in his official capacity as Secretary of State, and the UNITED STATES DEPARTMENT OF STATE,

Defendants.

Case No. 1:26-CV-00858-JAV

**DECLARATION OF JOHN ARMSTRONG**

I, John Armstrong, hereby declare under penalty of perjury:

1. I am employed as the Principal Deputy Assistant Secretary within the U.S. Department of State's Bureau of Consular Affairs. The Bureau of Consular Affairs' Visa Office provides guidance to U.S. embassies and consulates around the world on a broad range of policy and procedural issues related to the adjudication of visa applications.

2. This Declaration is submitted in support of Defendants' response to the Court's September 24, 2026 Order to Show Cause (ECF No. 108).

3. The statements made in this Declaration are based on my personal knowledge and information made available to me in the course of my official duties.

**Processing of Remanded Cases and Implementation Status**

4. I understand the Court has asked for information regarding the Department's current processing of remanded cases. The Department continues to take numerous actions to implement this Court's Order since August 21, 2026. As described previously, on September 10, 2026, the Department transmitted, via Department cable 26 STATE 88862, implementing guidance advising all U.S. embassies and consulates of steps that must be taken under this Court's Order, together with court orders in related litigation. This guidance coordinates implementation of the various court orders, including guidance regarding processing applicants previously refused under either or both of the IV and DV pauses.

5. Additionally, following months-long planning and deliberations by the Department that began prior to this Court's Order, the Department instructed all posts to complete a set of required trainings related to public charge visa ineligibility and inadmissibility, including an in-person training component, before processing and adjudicating immigrant visa applications to strictly adhere to the eligibility standards is mandated by law under Immigration and Nationality Act (INA) § 212(a)(4). The Department has excepted from the in-person training requirement further processing and re-adjudication of applications that had been refused for the IV or DV Pause, including those applications submitted by named Plaintiffs in this action or other similar litigation that challenged the IV Pause or DV Pause. This process was detailed in clarifying guidance, transmitted via email on September 21, 2026, to consular managers in immigrant visa units across all U.S. consulates and embassies, affirming that posts should follow the review process outlined in 26 STATE 88862 relating to all applicants previously refused under the IV

Pause, in addition to prioritizing any named plaintiff in cases identified by the Department and any cases previously submitted by a Chief of Mission for exception to the IV Pause Policy.

6. As part of the global training efforts described above, the September 21, 2026, email guidance instructed that adjudicating officers and managers must complete an online portion of public charge training that had previously been made available, and must follow mandatory immigrant visa adjudication review guidelines transmitted in 26 STATE 89798, before resuming processing of cases remanded under the IV pause. At this time, all immigrant visa-processing posts have resumed processing and are actively reassessing cases previously refused under the IV Pause. Consular officers were instructed, via the September 10, 2026, cable guidance in 26 STATE 88862, to record their public charge findings in a worksheet designated for that purpose for all immigrant visa applicants subject to the public charge ground of ineligibility, including remanded cases, and to facilitate consistency of adjudications across posts. In reassessing a remanded case, the officer does not disregard the existing record, which stays in the file, but also does not simply adopt the prior eligibility assessment. Consular officers complete the worksheet based on the existing record and any updated information, and may require applicants to appear for an interview as needed, to assess visa eligibility as of the time of adjudication, not merely as of the date of a prior application or interview. As is the case for many applicants previously refused under the IV Pause, when a significant period of time has elapsed since an applicant's last interview or submission of required documentation, consular officers must assess eligibility based on the applicant's current circumstances, prior to issuance of a visa.

7. When the Court held its August 31, 2026, conference, the Department was still finalizing implementing guidance to U.S. embassies and consulates regarding remanded cases, and to allow time to coordinate that guidance and to account for updated public charge procedures, had

rescheduled certain immigrant visa appointments, as detailed in the declaration filed with this Court on August 28, 2026. The Department then clarified that remanded cases would be adjudicated under the same tools as other pending immigrant visa cases, including the public charge worksheet described in paragraph 6. This approach is described in the declaration filed on September 8, 2026, and in the cable guidance contained in 26 STATE 88862. To the extent this procedure differs from the understanding conveyed at the August 31 conference, the difference reflects that later clarification. At this time, consular officers continue to process remanded cases under the Court's Order in accordance with this and subsequent guidance as described above.

**Identification of Affected Cases and Implementation Status**

8. As noted in prior submissions to this Court, the Department has the ability to identify cases that were refused on the vacated IV Pause; however, upon further review, the Department has confirmed this effort generally requires manual review of refusals by each adjudicating consular section to confirm whether the IV Pause was the sole basis for refusal, and if not, what other ineligibility grounds may apply or may have since arisen. The Bureau of Consular Affairs estimates that approximately 43,000 immigrant visa applications were refused pursuant to the IV Pause, based on the consular officer's inclusion of a note indicating refusal in connection with the #4AIVPause hashtag, as instructed in cable guidance that implemented the IV Pause. Please note this figure is approximate and may be under- or over-inclusive, due to various methods used by consular officers noting such a refusal.[1]

[1] The figure of approximately 43,000 reflects all immigrant visa cases in the Department's Consular Consolidated Database (CCD) bearing the case notation that the January 2026 implementing guidance directed consular officers to enter when refusing a case under the IV Pause. The implementing guidance instructed officers to refuse a case under the IV Pause only when no other ground of ineligibility applied; however, consular officers did not follow this instruction consistently, with the result that some cases with the notation also carry other refusal grounds besides INA § 221(g). Additionally, some officers did not enter the notation when refusing cases under the IV Pause; such cases may therefore not be captured in the 43,000 estimate above.

9. From the date of the Court's Order on August 21, 2026, through Wednesday, September 30, 2026, the Department estimates that consular officers adjudicated approximately 706 visa applications that had previously been refused while the IV Pause was in effect, where the IV Pause was at least one ground for the prior refusal. Of that number, the Department estimates that approximately 318 visa applicants have been either approved for issuance or issued,[2] and that approximately 388 applicants have been refused under the INA. These figures do not include the thousands of diversity visa applications that have been adjudicated during the same time period, including of persons who were also nationals of the 75 countries subject to the IV pause, in connection with Court Orders in other litigation requiring certain Department actions prior to the fiscal year end on September 30, 2026. Consular officers across U.S. embassies and consulates have continued to schedule interviews where appropriate and to reconsider applicants who were previously refused under the IV Pause on a rolling, case-by-case basis.

**Status of the Named Plaintiffs**

10. As of October 2, 2026, the CCD reflects that the status of the 15 visa applicants associated with the named Plaintiff applicants, including derivative applicants, is as follows:

a. Three applicants, Tigist Asmare MEKONNEN, Ahmed Munthaz MAHMUD, and Mahmud Munthaz MAHMUD, are documentarily qualified. They are in the scheduling queue for the post(s) assigned, and await scheduling in the order in which their cases became documentarily qualified.

b. Five applicants, have interviews scheduled as follows:

[2] Data on the status of approved visas does not differentiate between approval in internal systems and the physical issuance of the visa. To determine if visas were approved or issued, the Department would need to conduct manual review of each case. This data has therefore been provided in full, without disaggregation, to facilitate timely reporting of this information.

i. Richard KUMI, scheduled to interview on October 14, 2026

ii. Francis KUMI, scheduled to interview on October 14, 2026

iii. Janet YEBOAA, scheduled to interview on October 14, 2026

iv. Anthony AMANKWAA, scheduled to interview October 14, 2026

v. Andrea Mae Denise ANDERSEN, scheduled to interview October 14, 2026

c. Post personnel contacted one applicant, Carol Marie BAUGH (parent of Mr. Mitchell), on September 29, 2026, to schedule an interview. As of October 2, 2026, the applicant has not yet responded.

d. One applicant, Fernando LIZCANO LOSADA, interviewed on September 30, 2026. The consular officer refused the application under INA § 221(g) due to lack of a valid medical examination and because no visa number was available in the EB-1 category (note that as of October 1, these numbers are now available).

e. One applicant, Juan David BUITRAGO CAGUA, interviewed on October 1, 2026. The consular officer refused the application under INA § 221(g) due to lack of a valid medical examination.

f. One applicant, Andres Alfonso MEDINA RAMIREZ, interviewed on October 2, 2026. The consular officer refused the application under INA § 221(g) due to lack of a valid medical examination.

g. One applicant, Lina Margarita ANGULO PENARANDA, interviewed on October 2, 2026. The consular officer refused the application under INA § 221(g) for administrative processing.

h. Two applicants, Dania Mariela ESCOBAR CARRANZA (spouse of Mr. Aguirre), and Mayra Alejandra ALCENDRA MOSCOTE, were issued visas on September 30, 2026, and May 19, 2026, respectively.

**Remanded Cases Are Proceeding Through Individualized Adjudication that Cannot be Tied to a Single Completion Date**

11. As noted above, consular officers are adjudicating remanded cases under this Court's Order on a rolling basis, as identified by U.S. embassies and consulates worldwide. The INA , however, requires an individualized determination of each applicant's eligibility. When any given case can be adjudicated depends on that applicant's circumstances, and for this reason, the Department is unable to provide a date by which consular officers could complete reconsideration of all Policy-only cases within the approximately 43,000 case-universe described above. It is not uncommon, for example, for all Diversity Visas authorized for a given year to not be issued, given the fact-specific nature and processing timeline of each respective case.

12. Several applicant-specific and operational factors drive this conclusion, and many of them are outside the Department's control. First, the INA places the burden on each applicant to establish eligibility, see INA § 291, and establishes mandatory requirements that each applicant must meet before an officer may issue a visa. Medical examinations and certain documents expire or may become outdated. Applicants' circumstances, such as marital status, dependents, or employment, may also have changed since the original refusal. As a result, many applicants will need to provide new medical examinations, updated documents, or new evidence. Many may also need new interviews to establish visa eligibility, at the consular officer's discretion. The time required for each application depends on such factors as how quickly the applicant responds, appointment availability of panel physicians conducting medical exams, how long foreign governments take to issue documents, and how far and under what circumstances the applicant

must travel to reach the post, if an interview is required. Every applicant must also complete required security screening, which involves other federal agencies and which the Department cannot shorten. In addition, in categories subject to annual numerical limits, the Department cannot issue a visa unless a visa number is available.

13. Operational constraints add to these factors, as posts processing remanded cases differ widely in staffing and capacity. Each post must balance remanded cases against its other workloads, including assistance to U.S. citizens abroad and nonimmigrant visa processing. Finally, security crises and other events around the world, such as those in the Middle East, can reduce or suspend a post's operations with little warning, or require the post to shift resources to other priorities.

14. For these reasons, the Department likely could not comply with a requirement to complete every remanded case by a single date, and even good faith attempts to comply may lead to more refusals under INA § 221(g) for cases requiring additional documentation, delay processing applications for other applicants, as well as artificially shorten required security screening. The Department will continue to process remanded cases on a rolling basis, as identified by U.S. embassies and consulates worldwide, and the Department expects the pace of adjudications to increase.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed October 5, 2026.

John Armstrong
Principal Deputy Assistant Secretary
Bureau of Consular Affairs
United States Department of State.