**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CATHOLIC LEGAL IMMIGRATION NETWORK, INC. (CLINIC), et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>MARCO RUBIO, in his official capacity as Secretary of State, and the UNITED STATES DEPARTMENT OF STATE,<br><br>*Defendants*. | Civil Action No. 1:26-cv-00858-JAV |

**PLAINTIFFS' RESPONSE TO THE COURT'S SEPTEMBER 24, 2026 ORDER TO SHOW CAUSE**

## TABLE OF CONTENTS


I. DEFENDANTS HAVE NOT IN GOOD FAITH IMPLEMENTED THE COURT'S ORDER. ........ 1

II. THE COURT HAS AUTHORITY TO ISSUE AN INJUNCTION ENFORCING ITS VACATUR. ........ 6

*A. The Court Should Enjoin Defendants To Adjudicate Plaintiffs' And The Organizational Plaintiffs' Members' And Clients' Visas Within 30 Days.* ........ 7

*B. The Court Should Enjoin Defendants To Adjudicate Non-Party Visas Within 60 Days Or By A Date Certain* ........ 9

III. IF THE COURT DETERMINES THAT DEFENDANTS ADOPTED THEIR NEW PUBLIC-CHARGE PROCEDURES TO DEPRIVE THIS COURT'S AUGUST 21 ORDER OF ANY EFFECT, IT SHOULD ENJOIN THOSE NEW PROCEDURES. ........ 14

IV. THE COURT SHOULD ORDER ADDITIONAL STATUS REPORTS AND DOCUMENT PRODUCTION. ........ 15

CONCLUSION ........ 17

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Action on Smoking & Health v. Civ. Aero. Bd.*, 713 F.2d 795 (D.C. Cir. 1983) ........................... 1

*Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807 (D.C. Cir. 2024) ................................................ 9

*Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400 (S.D.N.Y. 2006) .................................... 9

*In re Baldwin-United Corp*, 770 F.2d 328 (2d Cir. 1985) ........................................................... 13

*Batalla Vidal v. Wolf*, 2020 WL 7121849 (E.D.N.Y. Dec. 4, 2020) ....................................... 7, 14

*Bautista v. Santacruz*, 820 F. Supp. 3d 1016 (C.D. Cal. 2026) .................................................... 14

*Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799 (2024) ...................... 11

*Dep't of Com. v. New York*, 588 U.S. 752 (2019)......................................................................... 15

*Gomez v. Trump*, 485 F. Supp. 3d 145; 486 F. Supp. 3d 445; 2021 WL 1037866 (D.D.C. 2020) ........................................................................................................... 9, 12

*Make the Rd. N.Y. v. Noem*, 2025 WL 3563313 (D.C. Cir. Nov. 22, 2025).......................... 11, 12

*Maness v. Meyers*, 419 U.S. 449 (1975) ........................................................................................ 2

*Medani v. Trump*, 2026 No. 26-cv-06332 (N.D. Cal. 2026)................................................. 4, 5, 8

*Medani v. Trump, No. 5:26-cv-06332 (EJD)*, 2026 WL 2667529 (N.D. Cal. Sept. 10, 2026) ........................................................................................................................ 16

*Metro. Transp. Auth. v. Duffy, No. 25-CV-1413 (LJL)*, 2026 WL 588117 (S.D.N.Y. Mar. 3, 2026)............................................................................................................... 14

*Mohamed v. Barr*, 562 F. Supp. 3d 1128 (E.D. Cal. 2022) ........................................................... 9

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)................................................ 7, 12

*Murrill v. FDA*, 175 F.4th 310 (5th Cir. 2026) ............................................................................ 11

*Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399 (D.C. Cir. 1998) ........................ 12

*Nat'l TPS All. v. Noem*, 166 F.4th 739 (9th Cir. 2026)................................................................... 1

*New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d 502 (S.D.N.Y. 2019) .................................... 14

*O.A. v. Trump*, 404 F. Supp. 3d 109 (D.D.C. 2019) ......................................................... 7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 832 F. Supp. 3d 149; 205 F. Supp. 2d 183 (E.D.N.Y. 2026) ............................................................ 13

*Peacock v. Thomas*, 516 U.S. 349 (1996)............................................................................ 6

*Przhebelskaya v. U.S. Bureau of Citizenship & Immigr. Servs.*, 338 F. Supp. 2d 399 (E.D.N.Y. 2004)................................................................................................. 9

*Qazi v. Rubio, No. 26-CV-02668 (JAV)*, 2026 WL 1584662 (S.D.N.Y. June 3, 2026).................. 8

*Storie v. Trump*, 2026 WL 2516560 (D.D.C. Aug. 25, 2026) ............................................. 7, 8

*Thein v. Trump, No. CV 25-2369 (SLS)*, 2025 WL 2418402; 2026 WL 795261 (D.D.C. Aug. 21, 2025)........................................................................................ 8, 12

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025)........................................................................ 10

*United States v. Int'l Brotherhood of Teamsters*, 266 F.3d 45 (2d Cir. 2001) ........................... 13

*United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977)........................................................ 6, 12

*United States v. Real Prop. & Premises Known as 63-39 Trimble Rd., Woodside, N.Y.*, 860 F. Supp. 72 (E.D.N.Y. 1994) ................................................................ 13

*Vt. Structural Slate Co. v. Tatko Bros. Slate Co.*, 253 F.2d 29 (2d Cir. 1958).............................. 6

**STATUTES**

5 U.S.C.
§ 705.................................................................................................................. 7, 12
§ 706.................................................................................................................... 11

8 U.S.C.
§ 1104.................................................................................................................. 13
§ 1152.................................................................................................................. 13
§ 1201.............................................................................................................. 10, 13
1104(a) ................................................................................................................ 13
1152(a)(1)(A) ....................................................................................................... 13
1201(g) ................................................................................................................ 13

28 U.S.C.
§ 1651.............................................................................................................. 6, 12

§ 2202 .......... 6, 13, 14

Pub. L. 106–113, div. B, § 1000(a)(7), Nov. 29, 1999, 113 Stat. 1536 .......... 10

**REGULATIONS**

22 C.F.R.
§ 40.6 .......... 13

**FEDERAL RULES**

Fed. R. Civ. P.
Rule 65 .......... 13

**OTHER AUTHORITIES**

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 1012 (2018) .......... 11

Plaintiffs submit this response to the Court's order directing that "the parties show cause why an injunction should not issue requiring the Government to complete its adjudication of remanded petitions by a date certain." ECF No. 108. For the reasons explained below, Plaintiffs respectfully submit that the Court should enforce its August 21, 2026 order by issuing an injunction (i) enforcing the Court's Judgment and (ii) requiring twice-a-week status reports and document production regarding Defendants' compliance with the Judgment, as described below.

## I. Defendants Have Not in Good Faith Implemented the Court's Order.

The record before the Court readily demonstrates that the Defendants have not in good faith implemented the Court's order vacating the Visa Ban and declaring it unlawful. *See* ECF No. 86 at 1-2, 4-8; ECF No. 91 at; ECF 97 at 2-8; ECF 107 at 1-4, 14-20. The effect of that order was to "restore the status quo" before the unlawful Visa Ban took effect. ECF No. 83 at 55; *Action on Smoking & Health v. Civ. Aero. Bd.*, 713 F.2d 795, 797 (D.C. Cir. 1983) (vacating the policy "had the effect of reinstating the rules previously in force"); *Nat'l TPS All.* v. *Noem*, 166 F.4th 739, 760 (9th Cir. 2026) (a set aside of agency action "declares that a past agency action was unlawful and returns the world to the status quo, before that unlawful action").

Here, the status quo before the unlawful Visa Ban was the INA legal framework governing visa applications, which required consular officers to adjudicate visa applications and to issue, refuse, or deny them on a statutorily enumerated ground. ECF No. 83 at 38-39 (discussing controlling law). Once the Court vacated the Visa Ban, that preexisting legal regime requiring visa processing came back into effect and required consular officers to issue, refuse, or deny visas on statutory grounds to all applicants, including applicants who were previously refused and placed in administrative processing solely because of the Visa Ban. As the Court noted in denying Defendant's motion for a stay pending appeal, its ruling "striking down the Policy as contrary to law requires Defendants to adjudicate anew visa applications for individuals who had previously

been refused based on the Policy . . . . The restoration of the status quo is nothing more than the usual and natural consequence of striking down a policy as unlawful under the APA." ECF No. 109 at 4. The government was required to comply with that Judgment "promptly" "absent a stay," "even if the order is ultimately ruled incorrect." *Maness v. Meyers*, 419 U.S. 449, 458 (1975).

Defendants' conduct to date has been anything but "prompt." As Plaintiffs have demonstrated in their own submissions and through the government's submissions in this and other cases, Defendants have undertaken numerous actions to effectively maintain the Visa Ban, by failing to adjudicate applications that were previously refused solely because of the unlawful Ban and by implementing time-consuming new bureaucratic hurdles to final decisions. As of this filing, forty-five days after the Court's order, Plaintiffs are aware of only two visa applicants previously refused under the illegal Visa Ban who have received a final decision to grant, deny, or refuse on some ground other than the Ban.

The chronology of events is instructive. Just hours after the Court's August 21 order, Defendants began canceling immigrant visa interviews *en masse* across the globe—both in the 75 targeted countries and elsewhere—purportedly (according to State Department spokespersons) to allow for "in-depth training" on a "new" "public charge" initiative. ECF 86 at 4-5; *see* ECF 91 at 4-5. Although Defendants represented to this Court that the cancellation of interviews was "temporary" and would last only through August 31, ECF 90 at 3, public reporting demonstrated that all interviews scheduled for September were also canceled, ECF 91 at 5-6. Later reporting indicated Defendants intended the training pause to "remain in place for months due to the structure of the new training program." ECF 97 at 6 & n.1.

Despite this public reporting and public statements by DOS spokespeople, on August 31, DOJ counsel assured this Court that in "all or almost all cases" no reconsideration of public charge

would be required for the tens of thousands who had been subject to the illegal Visa Ban and had their visas refused and placed in administrative processing. 8/31 Tr. at 33; *see also id*. at 21 ("THE COURT: Because I hope you're not saying what they're going to do is do another public charge analysis. MR. KURZ: No, your Honor, I'm not saying that."). Defendants' counsel did not explain why delaying adjudications for additional public-charge training would be necessary if the Department did not intend to conduct additional public-charge analysis.

It is now clear that the government's intent all along was to deploy the purported need for public-charge training as an excuse to avoid adjudicating previously refused visa applications in accordance with the INA—and thereby effectively keeping the Visa Ban in place for tens of thousands of applicants—for an indefinite period until new, additional procedural and substantive public-charge requirements could be applied to visa applicants. In its September 8 submission to the Court, the government thus confirmed that it intends to subject every remanded case to a renewed public-charge review—the very re-vetting this Court deemed "very contrary to the import of my order" and "grossly inequitable." 8/31 Tr. at 34:3-9; *see* Defs.' Status Report, ECF 96 ¶¶ 5-6, Armstrong Decl., ECF 96-1 ¶¶ 12-17. That submission asserted, under penalty of perjury, that "the Department has undertaken several actions to ensure that visa applicants undergo comprehensive screening and vetting prior to visa issuance, including vetting for potential ineligibility under the public charge ground of inadmissibility," ECF 96-1, ¶ 14; that "[r]emanded cases will be reconsidered by adjudicating consular officers in accordance with Department guidance on application of the public charge ground of inadmissibility," which "will include the consular officer's use of additional adjudication tools that have been deployed since the January 14, 2026 guidance, such as a public charge worksheet that informs the officer's assessment of public charge inadmissibility," *id.*, ¶ 15; and that all individuals subject to this Court's remand

order will have their cases reviewed subject to "four new training requirements that the Bureau of Consular Affairs formally deployed on September 1, 2026," which include "expanded managerial review of consular officer adjudications and mandated training on conducting the public charge analysis required by Department guidance," *id.*, ¶ 16.

On September 10, 2026, three weeks after this Court's order, the government finally disseminated guidance to consular officers, in the form of a cable (which the government has yet to submit to this Court) that addresses implementation of this Court's Judgment as well as orders issued in *Medani v. Trump*, No. 26-cv-06332 (EJD) (N.D. Cal.), invalidating the Visa Ban and a separate Diversity Visa ban. The September 10 Cable stated that "[i]n all immigrant visa cases, . . . posts must complete a public charge worksheet . . . and are reminded of the need to complete the comprehensive training on tools to assess the public charge visa ineligibility . . . ." ECF 107-4 (Sept. 10 State Dept. Cable) at 3. The cable also "encourag[ed]" consular officers to reinterview all remanded applicants, *id.*, contrary to Defendants' representation in their stay motion in this case that applicants will be reinterviewed only "if required in the consular officer's discretion." ECF No. 101 at 9. And the Cable further directed consular officers worldwide to follow a first-in, first-out process for adjudicating visas remanded under this Court's order and to prioritize diversity visa applicants, who face a statutory deadline, before processing applicants refused under the Visa Ban. *Id.* (directing allocation of immigrant visa appointments by "prioritiz[ing] DOV-2026 applicants [i.e., applicants for diversity visas in 2026] whose interview appointments were originally scheduled between August 23, 2026 and September 30, 2026, but who were rescheduled"). Subsequent submissions in *Medani* made clear that DOS has directed all consular posts to pause immigrant visa processing in virtually all instances until all new public-charge training has been completed. *See* Ex. A, (ECF 126 at 3-4, *Medani v. Trump*, No. 26-cv-6332 (EJD)

(N.D. Cal)).

The government has also erected additional bureaucratic hurdles to visa issuances. On September 21, 2026, the government informed the *Medani* court—but again not this Court—that in addition to the public-charge training mandate and new the new public-charge training mandate and requirements discussed above, even if a consular officer determines that an applicant should receive a visa after a readjudication, the officer's determination still will not conclude the process. *See* ECF 107-6, Armstrong Decl., ¶¶ 8-9. Instead, the case must be further reviewed by a consular manager, and then, once that review has been completed, submitted for yet more "adjudication review" through a centralized, dedicated app, potentially resulting in the invalidation of a printed visa or the revocation of one already issued. *Id*. Public reporting since September 21 has referred to this additional process as a brand new "Visa Integrity Unit." ECF 107 at 17 n.5. In addition, the status reports filed in *Medani* show that the vast majority of interviews that have been scheduled since this Court's order have not been new interviews. Instead, Defendants are reinterviewing Diversity Visa applicants, ECF 107-3 at 3, 107-5, Ex A at 4, meaning the government appears to be requiring individuals who have already had their applications placed in administrative processing to start their review processes from scratch subject to the new public charge requirements.

The status reports filed in *Medani* also demonstrate that the government still, forty-five days after this Court's order, has not issued a single visa to individuals subject to this Court's remand order. *See* ECF 107 at 20; ECF 107-3, ECF 107-5. Plaintiffs' own experiences bear this out: to date most Plaintiffs and the members and clients of the Plaintiff organizations have not received any communication, instructions, or other concrete indication that processing of their applications has resumed or that they have been removed from administrative processing. ECF 91

at 6-7. Two Plaintiffs very recently have received a final adjudication, but only after the Court issued its show cause order. *See Medani v. Trump*, No. 26-cv-06332 (EJD), 2026 WL 2942919, at *3 (N.D. Cal. Sept. 30, 2026) (cataloging DOS's actions since an August 28 order requiring adjudication of diversity visas impacted by the Visa Ban and finding DOS's conduct in implementing that order "materially frustrated the Court's order").

In short, the record, including the government's own submissions and declarations, shows that the government has taken no steps to act in a manner consistent with the Court's vacatur of the Visa Ban or to adjudicate any but two of the visas impacted by the Court's August 21 decision. For all intents and purposes, the Visa Ban today remains in effect.

## II. The Court Has Authority to Issue an Injunction Enforcing its Vacatur.

The Court has inherent authority to grant equitable remedies to enforce its judgments. *See Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (federal courts have inherent authority to grant equitable remedies in the execution of their judgments); *see also* ECF 86 at 2-3 (collecting cases).

In addition, the Court has statutory authority to enforce its judgments, stemming from numerous sources. The All Writs Act authorizes the Court to "issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained," *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977); 28 U.S.C. § 1651. The Declaratory Judgment Act provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment," 28 U.S.C. § 2202; *see, e.g.*, *Vt. Structural Slate Co. v. Tatko Bros. Slate Co.*, 253 F.2d 29, 30 (2d Cir. 1958) ("[t]here was ample residual power [under 28 U.S.C. § 2202] in the court to issue this permanent injunction, even though the original decree contained no such provision"). And the Administrative Procedure Act (APA) provides that "[o]n such conditions as

may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action *or to preserve status or rights pending conclusion of the review proceedings*." 5 U.S.C. § 705 (emphasis added).

To be sure, the "Supreme Court has cautioned that a district court vacating an agency action under the APA should not issue an injunction unless doing so would 'have [a] meaningful practical effect independent of its vacatur.'" *Batalla Vidal v. Wolf*, No. 16-CV-4756 (NGG) (VMS), 2020 WL 7121849, at *2 (E.D.N.Y. Dec. 4, 2020) (quoting *O.A. v. Trump*, 404 F. Supp. 3d 109, 153-154 (D.D.C. 2019), and *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)). Here, the Defendants' conduct described above demonstrates that Defendants have not in good faith implemented the Court's order, and in fact have taken actions to prevent the vacatur of the Visa Ban from having any practical effect. This is therefore precisely the sort of case in which enforcement relief in the form of an injunction directing further compliance with the Court's order is warranted and will have a "meaningful practical effect independent of [the] vacatur." *Monsanto Co*, 561 U.S. at 165.

### A. The Court Should Enjoin Defendants to Adjudicate Plaintiffs' and the Organizational Plaintiffs' Members' and Clients' Visas Within 30 Days.

The Court should enjoin Defendants to restore the status quo ante, *i.e.*, issue an injunction requiring Defendants to process visas under the preexisting INA framework that existed immediately prior to the illegal Visa Ban. Further, with respect to the named Plaintiffs and the organizational Plaintiffs' members and clients, the Court should issue an injunction requiring Defendants to adjudicate the visas at issue within thirty days of any order it issues, as other courts have done. *See, e.g.*, *Storie v. Trump*, No. 26-cv-567 (AHA), 2026 WL 2516560, at *9 (D.D.C.

Aug. 25, 2026) (ordering in a case finding the Visa Ban unlawful, among other things, that the government "(1) promptly restore any plaintiff's position in the application processing queue, to the extent it was impacted by the pause; and (2) promptly, and within no more than 30 days, complete the adjudication of any plaintiff's application that was refused based on the pause, without regard to any refusal issued pursuant to the pause, including issuing a visa to any plaintiff that would have received one absent the pause"); *see also Medani*, 2026 WL 2942919, at *3 (finding "DOS's compliance with the PI has been less than substantial, and its lack of diligence from the time it received the Court's order to the time it implemented the order is of exceptional significance," and ordering, among other things, "to the extent practicable and in good faith, shall take all reasonable steps for an additional ten days past the 2026 fiscal year to reconsider FY-26 applications refused solely under the DOS DV Pause or the DOS 75-Country Pause and resume ordinary adjudication of pending applications").

The doctrine of consular nonreviewability does not preclude such injunctive relief. An injunction enforcing the vacatur of the Visa Ban does not involve judicial review of a consular officer's denial of a visa but is addressed instead to Department-wide actions and policies Defendants have undertaken to delay effectuation of the Court's vacatur order. *See* ECF No. 109 at 3-4; ECF 107 at 5-10. The doctrine also does not preclude an injunction that does not direct consular officers to reach a particular determination or overturn any final determination but instead merely requires adjudicating pending applications that have not yet received a final determination by a date certain. *See* ECF No. 107 at 7-10; *accord, e.g.*, *Storie*, 2026 WL 2516560, at *9 (30 days); *Qazi v. Rubio*, No. 26-CV-02668 (JAV), 2026 WL 1584662, at *11 (S.D.N.Y. June 3, 2026) (Vargas, J.) (ordering Defendants "to complete the administrative processing and adjudication of Plaintiff's visa application within 30 days from the date of this Order"); *Thein v. Trump*, No. CV

25-2369 (SLS), 2025 WL 2418402, at *19 (D.D.C. Aug. 21, 2025), *appeal dismissed*, No. 25-5338, 2026 WL 795261 (D.C. Cir. Feb. 17, 2026) (enjoining the Secretary of State, in order issued August 21, 2025, to "undertake good-faith efforts, directly and through his designees, to expeditiously process and adjudicate the Plaintiffs' applications that are currently in administrative processing by September 30, 2025"); *Gomez v. Trump*, 485 F. Supp. 3d 145, 205 (D.D.C. 2020), *amended in part*, 486 F. Supp. 3d 445 (D.D.C. 2020), *amended in part sub nom. Gomez v. Biden*, No. 20-CV-01419 (APM), 2021 WL 1037866 (D.D.C. Feb. 19, 2021) (order, issued September 4, 2020, enjoining Defendants to "undertake good-faith efforts, directly and through their designees, to expeditiously process and adjudicate DV-2020 diversity visa and derivative beneficiary applications and issue or reissue diversity and derivative beneficiary visas to eligible applicants by September 30, 2020, giving priority to the named diversity visa Plaintiffs"); *Mohamed v. Barr*, 562 F. Supp. 3d 1128, 1131 (E.D. Cal. 2022) (noting prior order in case requiring "Department of State defendants to issue a decision on the visa applications before the end of the fiscal year: September 30, 2019"); *Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 423 (S.D.N.Y. 2006) (ordering adjudication of a nonimmigrant visa within 90 days); *Przhebelskaya v. U.S. Bureau of Citizenship & Immigr. Servs.*, 338 F. Supp. 2d 399, 406 (E.D.N.Y. 2004) (ordering adjudication of adjustment of status based on a diversity visa "without further delay"); *cf. Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 813 (D.C. Cir. 2024) (affirming permanent injunction requiring adjudication of certain special immigrant visa applications by a date certain).

**B. The Court Should Enjoin Defendants to Adjudicate Non-Party Visas within 60 Days or By a Date Certain**

As to non-parties, including the approximately 43,000 visa applicants the government identified in its status report, the Court should also issue an injunction to enforce its order, including by requiring the adjudication of visas in compliance with the INA, Code of Federal

Regulations and Foreign Affairs Manual ("FAM"), within 60 days or by a date certain. For the same reasons just discussed, the doctrine of consular reviewability does not preclude such relief.[1]

Nor would such an injunction implicate the Supreme Court's recent decision in *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025). *CASA* involved the distinct question whether the "Judiciary Act of 1789," which "endowed federal courts with jurisdiction over all suits in equity," authorized so-called "universal injunctions," *i.e.* injunctions that "prohibit enforcement of a law or policy against anyone." *Id.* at 837, 841-42 (internal quotation marks omitted). It did not address the Court's authority to issue relief under the APA, *id.* at 847 n.10, or federal courts' authority under the All Writs Act or the Declaratory Judgment Act. Each of those statutes independently authorizes the Court to enforce its judgment to vacate and set aside the Visa Ban as to all remanded visa applicants, including non-Plaintiffs.

First, the APA authorizes the Court to issue an injunction compelling agency action by a date certain as applied to certain individuals to enforce an APA vacatur, and nothing in *CASA* calls that authority into question. *See id*. The Court's August 21 order in this case is not a "universal

[1] The timelines proposed herein are consistent with timelines imposed by the INA and implementing regulations. Section 237 of Public Law 106-113, codified as a note to 8 U.S.C. § 1201, provides that "[i]t shall be the policy of the Department of State to process immigrant visa applications of immediate relatives of United States citizens and nonimmigrant K–1 visa applications of fiances of United States citizens within 30 days of the receipt of all necessary documents" and that "[i]n the case of an immigrant visa application where the sponsor of such applicant is a relative other than an immediate relative, it should be the policy of the Department of State to process such an application within 60 days of the receipt of all necessary documents." *See* Pub. L. 106–113, div. B, § 1000(a)(7), Nov. 29, 1999, 113 Stat. 1536. The FAM mirrors this requirement of adjudication of visas within 30 or 60 days of receipt of all necessary information. 9 FAM 504.7-2(b) ("Timeliness of Interview") ("Section 237 of Public Law 106-113 and subsequent legislation require that the Department establish a policy under which immediate relative (and fiancé(e)) visas be processed within 30 days of receipt of the necessary information from the applicant and the Department of Homeland Security (DHS); all other family-based IVs must be processed within 60 days. The Department expects all IV units to strive to meet the 30/60-day requirements.").

injunction," as it does not "prohibit enforcement" of the Visa Ban against anyone. It instead set that policy aside under the APA, 5 U.S.C. § 706, thereby restoring the status quo ante requiring that Defendants process visas, including the approximately 43,000 visas placed in administrative processing under the Visa Ban, consistent with the pre-existing INA framework. "*CASA* is *not* a case about the scope of relief for agency review authorized by the APA when it was adopted in 1946." *Make the Rd. N.Y. v. Noem*, No. 25-5320, 2025 WL 3563313, at *34 (D.C. Cir. Nov. 22, 2025) (emphasis in original) (discussing APA's history); *see La. by & through Murrill v. FDA*, 175 F.4th 310, 323 (5th Cir. 2026) ("In *CASA*, the Supreme Court plainly said it was addressing only equitable relief and not remedies under the APA"). As the D.C. Circuit explained, "there is good reason to think that Congress did not intend to incorporate 'background equitable principles' into the APA." *Make the Rd. N.Y.*, 2025 WL 3563313, at *35 (quoting *Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys*., 603 U.S. 799, 838-39 (2024) (Kavanaugh, J., concurring)). "'Unlike judicial review of statutes, in which courts enter judgments and decrees only against litigants, the APA' and related statutory provisions 'go further by empowering the judiciary to act directly against the challenged agency action.'" *Id.* (quoting *Corner Post*, 603 U.S. at 838-39 (Kavanaugh, J., concurring), and Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 1012 (2018)). "That 'depart[ure]' from traditional equity follows from Congress's understanding that the APA tasked courts with reviewing agency actions 'the same way that appellate courts [review] the judgments of trial courts.'" *Id.* (quoting *Corner Post*, 603 U.S. at 838-39 (Kavanaugh, J., concurring) (alterations in original)).

Because *CASA* has no bearing on the scope of the Court's authority to set aside agency action under the APA, it likewise does not deprive the Court of authority under the APA to issue orders necessary to enforce its APA vacatur, including supplemental injunctions of a scope

commensurate with the scope of the vacatur. Here, the Court's August 21 order deprived Defendants of authority to refuse visas based on the Visa Ban, thus "act[ing] directly against the challenged agency action." *Make the Rd. N.Y.*, 2025 WL 3563313 at *35 (citation omitted). An injunction requiring Defendants to process visas consistent with the INA and by a date certain merely gives effect to that vacatur, which has never been understood as "confined to party-specific remedies" *Id.* at *36; *accord Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (affirming an injunction in an APA case, and explaining that in an APA case "if the plaintiff prevails, the result is that the rule is invalidated, not simply that the court forbids its application to a particular individual," and that "a single plaintiff, so long as he is injured by the rule, may obtain 'programmatic' relief that affects the rights of parties not before the court."). And given Defendants' noncompliance with the Court's vacatur, such an injunction has a "meaningful practical effect independent of [the] vacatur." *Monsanto Co*., 561 U.S. at 165.

On top of that, as noted, the APA empowers the Court to issue orders "necessary to prevent irreparable injury" including "all necessary and appropriate process to . . . preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. That authority is not limited to preliminary orders, but also to orders preserving the status quo pending an "appeal." *Id.* And that "includes the power to compel agency inaction when necessary 'to preserve status or rights.'" *Thein,* 2025 WL 2418402, *19 (citations and quotations omitted); *Gomez*, 485 F. Supp. 3d at 203 (same). For the reasons just described, *CASA* does not limit that authority.

Second, the Court may issue an injunction to enforce its order under the All Writs Act, which also was not addressed in *CASA*. As noted, the All Writs Act, 28 U.S.C. § 1651, authorizes a court to "issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained,"

*N.Y. Tel. Co.*, 434 U.S. at 174. The All Writs Act is a distinct authority that does not arise from the historical practices of courts of equity under the Judiciary Act of 1789 that were the focus of *CASA*. Indeed, Federal Rule of Civil Procedure 65, governing injunctions and injunctive relief, "does not apply to injunctions issued under the All-Writs Act." *In re Baldwin-United Corp*, 770 F.2d 328, 339 (2d Cir. 1985). "The Act's grant of authority is plainly broad and, on its face, makes no distinctions between parties and nonparties." *United States v. Int'l Brotherhood of Teamsters*, 266 F.3d 45, 49–50 (2d Cir. 2001); *see, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 832 F. Supp. 3d 149, 170 (E.D.N.Y. 2026), appeal dismissed (July 27, 2026); *United States v. Mason Tenders Dist. Council of Greater N.Y.*, 205 F. Supp. 2d 183, 188 (S.D.N.Y. 2002). "The Act accordingly authorizes district courts to [issue orders] to enforce final judgments." *United States v. Real Prop. & Premises Known as 63-39 Trimble Rd., Woodside, N.Y.*, 860 F. Supp. 72, 74 (E.D.N.Y. 1994).

Third, the Court may also issue an injunction enforcing its vacatur order pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2202. Such relief would be "necessary or proper" to enforce the Court's declaratory judgment finding the Visa Ban unlawful and would be issued "against [an] adverse party," Defendants, "whose rights have been determined by such judgment." *Id*. The Court's August 21, 2026, order, among other things, declared "that Defendants, by ordering the suspension of the issuance of immigrant visas to nationals of specified countries, violated 8 U.S.C. § 1201(g), 8 U.S.C. § 1152(a)(1)(A), and 22 C.F.R. § 40.6. Additionally, the Policy exceeded the Secretary of State's authority under 8 U.S.C. § 1104(a)." ECF 83 at 60. Yet, as demonstrated by the record to date in this case, Defendants have continued to suspend the issuance of visas, effectively maintaining the Visa Ban, contrary to the INA framework established by 8 U.S.C. §§ 1104, 1152, 1201 and 22 C.F.R. § 40.6. This is therefore precisely the situation

where "Defendants [are taking] action that violates the Court's declaratory judgment" and where "[f]urther necessary or proper relief" is appropriate. *Metro. Transp. Auth. v. Duffy*, No. 25-CV-1413 (LJL), 2026 WL 588117 at *68 (S.D.N.Y. Mar. 3, 2026) (declining to issue an injunction in addition to vacatur and declaratory relief in the first instance, but warning Defendants that further relief under 28 U.S.C. § 2202 is available should Defendants take action in violation of the Court's declaratory judgment).

**III. If The Court Determines That Defendants Adopted Their New Public-Charge Procedures To Deprive this Court's August 21 Order of Any Effect, It Should Enjoin Those New Procedures.**

As set forth in Section I above, the record strongly indicates that the new procedures Defendants have adopted to conduct public-charge analyses were adopted as a response to this Court's order for the purpose of depriving the Court's vacatur and declaratory judgment of any meaningful effect. Should the Court find that to be the case, the Court should further enjoin Defendants from applying those policies to applicants whose visas were previously refused based on the Visa Ban.

In such circumstances, the Court has authority to issue remedial relief pursuant to the authorities discussed above. For example, in *Bautista v. Santacruz*, 820 F. Supp. 3d 1016 (C.D. Cal. 2026), the court issued coercive relief directing DHS to take numerous actions after DHS responded to a court order vacating a policy by issuing a similar policy shortly after the initial decision. Similarly, in *Batalla Vidal*, 2020 WL 7121849, at *2, when the government implemented a substantially similar policy hours after the court had issued an order vacating that policy, the court supplemented the prior vacatur by declaring the government's subsequent actions unlawful and directing affirmative compliance and reporting obligations. *Cf. New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d 502, 676 (S.D.N.Y. 2019) ("in the absence of an injunction, Secretary Ross could theoretically reinstate his decision by simply re-issuing his memorandum under a new date

or by changing the memorandum in some immaterial way"), *aff'd in part, rev'd in part and remanded on other grounds sub nom. Dep't of Com. v. New York*, 588 U.S. 752 (2019).

Here, just as in *Bautista* and *Batalla*, Defendants have circumvented the Court's vacatur and declaratory order by maintaining a de facto pause of visa processing for individuals subject to the Court's order under the guise of a new public-charge training regimen and other bureaucratic hurdles to final adjudications, all of which were implemented only after this Court's August 21 decision, and apparently in response to that decision. *See supra* 2-6. Indeed, as noted, apart from two individuals, Plaintiffs are unaware—and Defendants have not shown—that any individual placed in administrative processing pursuant to the illegal Visa Ban has yet received a final adjudication on their visa application. Defendants' application of this new public-charge training and screening regime and additional multiple levels of supervisory review should therefore be enjoined insofar as it prevents visa processing under the status quo ante this Court's order reinstated.

## IV. The Court Should Order Additional Status Reports and Document Production.

Regardless of whether the Court orders any other injunctive relief, it should order compliance reporting. Specifically, the Court should order Defendants to submit at least two status reports per week informing the Court and Plaintiffs of: (1) recent actions taken to comply with the Court's Order; (2) whether any consular posts that adjudicate visas subject to this Court's order are still not processing immigrant visas because of any training requirements that have not yet been completed and, if that is the case, identifying which consular posts and when training is expected to be completed; (3) the number of interviews scheduled and held since the previous status report for immigrant visas, and whether each interview is a new interview or a re-interview of previously interviewed applicant; (4) the number of immigrant visas issued, refused, or denied since the

court's order and thereafter since the previous status report; (5) the number of individuals subject to the Court's remand order who have been issued, refused, or denied visas since the previous status report; (6) the number of visa applications in which the applicant has been found "eligible" but is nevertheless undergoing "adjudication review" or "additional adjudication review," *see* ECF 107-6, ¶ 9; (7) the number of visas who have completed that review process but have nevertheless been "assess[ed]" to require "additional action . . . including any action to spoil the visa, or, if the visa has been printed and issued," "revocation" of the visa," *id.*; and (8) an expected timetable for when all relevant visas will be finally adjudicated, updated in each status report, including all such information about the individual Plaintiffs and their family members and the organizational Plaintiffs' clients, *see Medani v. Trump*, No. 5:26-cv-06332 (EJD), 2026 WL 2667529, at *2 (N.D. Cal. Sept. 10, 2026) (ordering similar relief three times a week in a case involving both the Visa Ban and a separate Diversity Visa ban).

The Court should also order the government to provide the Court and Plaintiffs with copies of any guidance and instructions that have been circulated to date (or which are circulated in the future) to DOS personnel concerning how to comply with this Court's August 21 order, be it by email, texting apps or other electronic communication, formal Cable, or other written communication; a description under oath of any guidance provided verbally by phone or in person on compliance with the Court's order, including any instruction to delay implementation of the Court's order so that public-charge training and other procedures could be implemented; all documentary requirements visa applicants must comply with that have been implemented since the Court's order; copies of any documents used to assess public-charge inadmissibility, including any checklist or form or other document; a chronology of when the so-called public-charge training pause was first implemented and all relevant documents related to its implementation or updated

procedures; and any documentation implementing the "adjudication review" or "additional adjudication review" referenced in the Armstrong declaration, including criteria used during the review process to "assess" whether to require "additional action . . . including any action to spoil the visa, or, if the visa has been printed and issued," "revocation" of the visa." *See* ECF 107-6, ¶ 9.

**Conclusion**

Plaintiffs respectfully submit that the Court should enforce its August 21, 2026 order by issuing an order (1) with respect to the named Plaintiffs and the organizational Plaintiffs' members and clients, enjoining Defendants to adjudicate the visas at issue within 30 days of the Court's order; (2) with respect to non-parties, enjoining Defendants to adjudicate the visas at issue within 60 days of the Court's order or by a date certain; (3) if the Court concludes that Defendants' new training and review policies were adopted to circumvent the vacatur of the Visa Ban, enjoining Defendants from applying those new training and policies to applicants whose visas were previously refused under the Visa Ban; and (4) requiring Defendants to submit status reports and produce documents as described above.

Dated: October 5, 2026

Respectfully submitted,

*/s/ Joanna Elise Cuevas Ingram*
Joanna Elise Cuevas Ingram
Tanya Broder*
Efrén C Olivares*
Elizabeth Choo**
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 34573
Washington, D.C. 20043
(213) 377-5258
cuevasingram@nilc.org
broder@nilc.org

olivares@nilc.org
choo@nilc.org

/s/ *Erez Reuveni*
Erez Reuveni*
Catherine M.A. Carroll*
Elena Goldstein
Jonathan H. Hurwitz
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 316-9538 (Reuveni)
ereuveni@democracyforward.org
ccarroll@democracyforward.org
egoldstein@democracyforward.org
jhurwitz@v.democracyforward.org

/s/ *Hasan Shafiqullah*
Hasan Shafiqullah
Susan Welber
Evan Henley
Emily Lundgren
THE LEGAL AID SOCIETY
49 Thomas St., 5th Floor
New York, NY 10013
(212) 577-3300
hhshafiqullah@legal-aid.org
sewelber@legal-aid.org
ewhenley@legal-aid.org
elundgren@legal-aid.org

/s/ *Baher Azmy*
Baher Azmy
Angelo Guisado
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway
7th Floor
New York, New York 10012
(212) 614-6445
bazmy@ccrjustice.org
aguisado@ccrjustice.org

/s/ *Antionette Dozier*
Antionette Dozier*

David Kane*
Joy Dockter*
WESTERN CENTER ON LAW &
POVERTY
3701 Wilshire Blvd. Suite 208
Los Angeles, CA 90010
(213) 487-7211
adozier@wclp.org
dkane@wclp.org
jdockter@wclp.org

*/s/ Sarah Wilson*
Sarah Wilson*
David Kim*
COLOMBO & HURD
301 E. Pine Street, Suite 450
Orlando, Florida 32801
(407) 478-1111
swilson@colombohurd.com
dkim@colombohurd.com

* *Admitted Pro Hac Vice*

** *Petition for Attorney Admission Pending*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Erez Reuveni, hereby certify that on October 5, 2026, I filed the foregoing Document with the Clerk of the Court for the United States District Court for the Southern District of New York using the CM/ECF system. Notice of this filing is being sent by operation of the Court's electronic filing system to all counsel of record who are registered CM/ECF users. I have also emailed counsel of record for Defendants.

*/s/ Erez Reuveni*
Erez Reuveni

**CERTIFICATE OF COMPLIANCE**

I, Erez Reuveni, hereby certify that this document complies with the word count limitations imposed by the Court's local rules.

*/s/ Erez Reuveni*
Erez Reuveni