**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CATHOLIC LEGAL IMMIGRATION NETWORK, INC. (CLINIC), et al.,<br>*Plaintiffs*,<br>v.<br>MARCO RUBIO, in his official capacity as Secretary of State, and the UNITED STATES DEPARTMENT OF STATE,<br>*Defendants*. | Civil Action No. 1:26-cv-00858-JAV |

**[PROPOSED] ORDER**

Upon consideration of the parties' submissions in response to the order to show cause and oral argument presented October 14, 2026, it is HEREBY ORDERED as follows:

1. Defendants shall submit twice-weekly status reports by 5 PM on Tuesdays and Fridays supported by a sworn declaration from someone with personal knowledge, commencing October 16, 2026, and continuing until further order of this Court. Each report shall provide information for the period since the preceding report and cumulative totals since August 21, 2026, distinguishing applications refused solely under the vacated Policy from applications for which additional grounds of refusal existed. The first report shall contain the following information, and each subsequent report shall apprise the court of any new developments on each subject if applicable or as described below:

    a. All actions taken to comply with the Court's vacatur and remand order since

the Court's initial order on August 21, 2026, and thereafter since the last status report including:

i. When consular officers were first informed in writing of the Court's August 21 order and decision.

ii. When formal written guidance concerning implementation of the Court's August 21 order and decision was first provided to consular posts and consular officers, whether any consular posts have not received such guidance, and the substance of such guidance.

iii. When further formal written guidance was subsequently provided to consular officers, if any.

iv. Whether any formal written guidance was provided since the last status report.

b. Whether any consular posts that adjudicate visas subject to this Court's order are still not processing immigrant visas at full capacity because of public-charge training requirements or newly implemented adjudication procedures, and, if that is the case, identifying the affected posts, the nature of any continuing restrictions, and when those restrictions are expected to end.

c. The total number of interviews scheduled and held for immigrant visas for applicants that were previously refused solely because of the Policy vacated by the court's order since August 21, 2026, and subsequently the number of such interviews held since the previous status report, and, as to each interview, whether it is a new interview or a re-interview of previously interviewed applicant who was already found admissible and eligible for an immigrant visa

but for the Policy.

d. The number of immigrant visas subject to the Court's order, judgment, and remand that have been reconsidered, approved for issuance, or refused since the Court's order and thereafter since the previous status report, and for each such visa, report the nationality of the individual granted or refused a visa, and if a refusal, the basis for the refusal. Refusals shall be reported separately by statutory ground, distinguishing refusals under 8 U.S.C. § 1201(g), § 1182(a)(4), and other grounds. The reports shall also distinguish applications resulting in issued visas from applications merely approved or print-authorized for issuance.

e. The number of visa applications subject to the Court's order, judgment, and remand in which the applicant has been found "eligible" by the adjudicating consular officer but is nevertheless undergoing "adjudication review," "additional adjudication review," *see* ECF 107-6, ¶ 9, or any other further review.

f. The number of visa applicants subject to the Court's order, judgment, and remand who have completed that review process but have nevertheless been "assess[ed]" to require "additional action . . . including any action to spoil the visa, or, if the visa has been printed and issued," "revocation" of the visa," *id.*, the nature of such additional action, if any, and the nationality of all visa applicants "assess[ed]" to require "additional action" above, and the number approved and the number refused or reversed, or otherwise subject to such "additional action" including spoilage or revocation of the visa after such

"review", by nationality and consular post.

g. The number of consular officers assigned to immigrant visa adjudication at each affected post before January 14, 2026, on August 21, 2026, and during the reporting period.

h. The status of visa adjudication for each individual Plaintiff and any individual member or client of the organizational Plaintiffs brought to Defendants' attention.

i. An expected timetable for when all relevant visas will be finally adjudicated, updated in each status report, and an explanation of how that expected timetable is consistent with the provision in Section 237 of Public Law 106-113, codified as a note to 8 U.S.C. § 1201, that "[i]t shall be the policy of the Department of State to process immigrant visa applications of immediate relatives of United States citizens and nonimmigrant K–1 visa applications of fiancés of United States citizens within 30 days of the receipt of all necessary documents" and that "[i]n the case of an immigrant visa application where the sponsor of such applicant is a relative other than an immediate relative, it should be the policy of the Department of State to process such an application within 60 days of the receipt of all necessary documents." *See* Pub. L. 106–113, div. B, § 1000(a)(7), Nov. 29, 1999, 113 Stat. 1536; *see* 9 FAM 504.7-2(b).

j. Identification of the total number of cases, including by consular post and nationality, for which the expected adjudication date reported in a prior status report was not met, including the reason for noncompliance and the revised projected completion date.

k. The number of visa applications subject to the Court's remand order that remain pending, categorized by consular post, nationality, and the length of time each application has remained pending since remand, documentary qualification, and interview.

l. The number of applicants, in total and categorized by consular post and nationality, who were previously refused solely under the vacated Policy and who, following reconsideration, were subsequently refused on one or more additional grounds, identifying the grounds asserted and whether such grounds had been considered or raised before the Court's August 21, 2026 order.

m. The number of applicants, in total and categorized by consular post and nationality, subject to the court's remand order subsequently placed in 221(g) administrative processing after August 21, 2026, the number remaining there, average duration of that status, and the reasons invoked for placing remanded applicants in that status again.

n. The number of visas in total and categorized by consular post and nationality that have been approved, print-authorized, printed, issued, spoiled, revoked, or referred for spoilage or revocation during the reporting period and cumulatively, and the statutory grounds for any referral for spoilage or revocation, by consular post and nationality.

o. The methodology used to calculate the data in paragraph 9 of the October 5 Armstrong Declaration, ECF 114-1, stating "From the date of the Court's Order on August 21, 2026, through Wednesday, September 30, 2026, the Department estimates that consular officers adjudicated approximately 706 visa applications

that had previously been refused while the IV Pause was in effect, where the IV Pause was at least one ground for the prior refusal. Of that number, the Department estimates that approximately 318 visa applicants have been either approved for issuance or issued, and that approximately 388 applicants have been refused under the INA."

p. Further explanation concerning the statement at paragraph 6 of the October 5 Armstrong Declaration, ECF 114-1, which asserts that "At this time, all immigrant visa-processing posts have resumed processing and are actively reassessing cases previously refused under the IV Pause," including whether each post relevant to the Court's visa remand order is processing at full capacity, or whether consular officers at each post are still undergoing training which precludes their processing visa applications, and if so, how many officers and when such training is expected to be complete for all relevant officers.

2. With their first status report, Defendants shall also produce to the Court and Plaintiffs relevant documentation concerning implementation of the new public charge framework and training referenced in the prior Armstrong Declarations, ECF 96-1, ECF 101-1, ECF 114-1, supported by a declaration signed by someone with personal knowledge, and shall provide any new relevant information with each subsequent status report, as to the following subjects:

   a. The number of individuals subject to the Policy, meaning individuals who were otherwise eligible to receive a visa but for the Policy, who subsequent to the Court's order were issued a refusal based on public charge grounds under 8 U.S.C. § 1182(a)(4), by nationality and consular post.

b. Copies of any guidance and instructions that have been circulated to date (or which are circulated in the future) to DOS personnel concerning how to comply with this Court's August 21 order, be it by email, texting apps or other electronic communication, formal Cable, the Consular Consolidated Database (CCD), septel, print or other written communication.

c. A description of any guidance or direction provided in writing by any electronic, print or other means listed above in (b), verbally by phone, or in person on compliance with the Court's order, including any instruction to delay implementation of the Court's order or to not inform consular officers of the content of the Court's order so that public-charge training and other procedures could be implemented.

d. All documentary requirements for visa applicants that have been implemented since the Court's order.

e. Copies of any documents used to assess public-charge inadmissibility since the Court's August 21 order, judgment, and remand, including any worksheet, questionnaire, checklist, form, or other document, and a description, supported by documentation where relevant, of any additional review of a visa that occurs after a consular officer finds an individual eligible to receive a visa.

f. A chronology of when the so-called public-charge training pause resulting in the cancellation of interviews and the pausing of immigrant visa adjudication referenced in prior Armstrong Declarations, ECF 96-1, ECF 101-1, ECF 114-1, was first implemented and all relevant documents related to its implementation or updated procedures, including the date the decision to cancel

interviews without a rescheduled interview date across all consular posts was first made effective and then implemented, the date when the decision to implement "additional adjudication tools," ECF 96-1, ¶ 15 and "four new training requirements," *id.*, ¶ 16, was made effective across all consular posts as directed and then first implemented, the date the decision to pause all immigrant visa processing across all consular posts pending completion within 60 days of public charge training, *see* ECF 107-6 at 8, ¶¶ 3, 5, was first directed, and then implemented, and the date the decision to establish further review by a "consular manager," and then through "adjudication review" via a centralized app, *see* ECF 107-6, was first directed and then implemented across all consular posts, and documentation of the foregoing actions and decisions.

g. Any documentation implementing the "adjudication review" or "additional adjudication review" referenced in the Armstrong declaration, including criteria used during the review process to "assess" whether to require "additional action . . . including any action to spoil the visa, or, if the visa has been printed and issued," "revocation" of the visa", including any documentation addressing implementation of "additional adjudication review" by nationality and consular post. *See* ECF 107-6, ¶ 9.

h. All relevant government documentation in unredacted form concerning implementation of the Court's order and the public charge training and adjudication framework discussed at the October 14, 2026 hearing, including, but not limited to: (1) the August 15 cable (ECF 107-6) 26 STATE 80666, (2) the September 1 cable (ECF 107-6) 26 STATE 86164, (3) the September 10

cable (ECF 107-4, 107-7) 26 STATE 88862, (4) the September 14 cable (ECF 114-2) 26 STATE 89798, and (5) the September 21 email (ECF 114-3). To the extent the government maintains portions of these documents are subject to privilege, the government shall produce the redacted version on the public docket, and shall submit unredacted versions to the Court and the Plaintiffs subject to a protective order to be negotiated promptly and in good faith by the parties, along with a privilege log so that the Court may determine whether the invocation of privilege is warranted.

3. Defendants' first status report shall report the average number of all immigrant visas adjudicated per week prior to January 14, 2026, from January 14, 2026, to August 21, 2026, and since August 21, 2026, in total, and by nationality and consular post.

4. For all named Plaintiffs, and within 30 days of any organizational Plaintiffs' members and clients' applications brought to the government's attention, the government shall:

   a. Complete all individual Plaintiff adjudications within 30 days of the visa applications being "documentarily qualified," *see* ECF 114-1, ¶ 10, consistent with the status quo ante as it existed prior to implementation of the Policy on January 14, 2026.

   b. If any individual Plaintiff's application is not documentarily qualified, inform Plaintiffs within three days of this order as to what documents are missing or need updating. *See* ECF 96-1 (representing that Defendants will "notify applicant to request missing documents").

5. Defendants' first status report shall address in a declaration signed by an individual

with personal knowledge of the statements in paragraph 7[1] of the October 5, 2026 Armstrong Declaration, as follows:

a. The basis for DOJ counsel's assertions on August 31 that "all or almost all cases" subject to the Court's order will not need to redo a public charge assessment. *See* Tr. as 33:22-23; *see also* Tr. at 21:9-21, 22:3-5, 32:1-4.

b. Whether Defendants knew, on August 31, 2026, that they intended to apply the newly implemented public charge framework to individuals subject to the Court's remand order.

c. If not, on what date Defendants concluded they would apply the newly implemented public charge framework to individuals subject to the Court's remand order.

d. The basis for Mr. Armstrong's assertion that the current public charge framework implemented by Defendants reflects "months long planning and deliberations . . . that began prior to the court's order." ECF 114-1, ¶ 5.

e. Why immigrant visa adjudication interviews were canceled only after the Court's August 21, 2026 order, and not after the Department of State's issuance of the August 15 cable (ECF 107-6 at 11-13) 26 STATE 80666, established a

[1] "When the Court held its August 31, 2026, conference, the Department was still finalizing implementing guidance to U.S. embassies and consulates regarding remanded cases, and to allow time to coordinate that guidance and to account for updated public charge procedures, had rescheduled certain immigrant visa appointments, as detailed in the declaration filed with this Court on August 28, 2026. The Department then clarified that remanded cases would be adjudicated under the same tools as other pending immigrant visa cases, including the public charge worksheet described in paragraph 6. This approach is described in the declaration filed on September 8, 2026, and in the cable guidance contained in 26 STATE 88862. To the extent this procedure differs from the understanding conveyed at the August 31 conference, the difference reflects that later clarification."

new "public charge worksheet." *Id.* at 12.

SO ORDERED.

______________________________

Hon. Judge Jeannette A. Vargas

**CERTIFICATE OF SERVICE**

I, Erez Reuveni, hereby certify that on October 15, 2026, I filed the foregoing Document with the Clerk of the Court for the United States District Court for the Southern District of New York using the CM/ECF system. Notice of this filing is being sent by operation of the Court's electronic filing system to all counsel of record who are registered CM/ECF users. I have also emailed counsel of record for Defendants.

*/s/ Erez Reuveni*
Erez Reuveni